1   Leslie T. Gladstone, Esq.  (SBN 144615)
    Christin A. Batt, Esq.  (SBN 222584)
2   FINANCIAL LAW GROUP
    5656 La Jolla Blvd.
3   La Jolla, CA 92037
    Telephone:  (858) 454-9887
4   Facsimile:  (858) 454-9596
    E-mail:  ChristinB@flgsd.com
5
6   Proposed Attorneys for Leslie T. Gladstone, Chapter 7 Trustee

7               UNITED STATES BANKRUPTCY COURT

8               SOUTHERN DISTRICT OF CALIFORNIA

9

10  In re:                                Case No.:  24-01376-CL7

11  PIRCH, INC.,                          **TRUSTEE'S MOTION TO (1) APPROVE
                                          AUCTION PROCEDURES; AND (2)
12                                        SELL <u>LEASEHOLD INTERESTS</u> AND
            Debtor.                       <u>RELATED PERSONAL PROPERTY</u>
13                                        PURSUANT TO 11 U.S.C. SECTION 363,
                                          FREE AND CLEAR OF LIENS,
14                                        CLAIMS, AND INTERESTS;
                                          MEMORANDUM OF POINTS AND
15                                        AUTHORITIES IN SUPPORT
                                          THEREOF**
16
17                                        Date:        July 1, 2024
                                          Time:        10:30 a.m.
18                                        Dept:        One (1)
                                          Honorable Christopher B. Latham
19

20

21

22

23

24

25

26

27

28

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................1

II.    STATEMENT OF FACTS ......................................................3

     A.     General Background .................................................3

     B.     Lease Locations .......................................................3

         1.     *Costa Mesa Location* ........................................3

         2.     *Mission Viejo Location* .....................................4

         3.     *Rancho Mirage Location* ..................................5

     C.     Prepetition Litigation with Landlords ..................6

         1.     Costa Mesa Landlord Litigation ..................6

         2.     Mission Viejo Landlord Litigation ...............6

         3.     Rancho Mirage Landlord Litigation ...........6

     D.     Relief from Forfeiture of Leases .......................7

     E.     Property to Be Sold and Asset Purchase Agreement ..................................7

     F.     Liens and Claims .....................................................9

     G.     Sale Transaction, Subject to Overbid ...............11

     H.     Proposed Auction Procedures .........................12

     I.     Tax Analysis ...........................................................15

     J.     Status of Estate and Claims .............................15

III.   MEMORANDUM OF POINTS AND AUTHORITIES ......................................16

     A.     An Articulated Business Justification Exists for the Proposed Sale. ..........16

     B.     Accurate and Reasonable Notice of the Sale Has Been Provided. .............16

     C.     The Purchase Pirce Is Fair and Reasonable. ...............................17

     D.     The Break-Up Fee Is in the Best Interests of the Estate. ...........17

     E.     Sale of the Property Free and Clear of Liens and Claims Is Permitted Under Section 363(f) of the Bankruptcy Code. .........18

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

| | | |
|---|---|---|
| F. | Purchaser Is a Good Faith Purchaser. | 18 |
| G. | Assignment and Assumption of the Leases Is Permitted Under Section 365 of the Bankruptcy Code. | 19 |
| H. | Time Is of the Essence in this Transaction. | 21 |
| I. | Other Relief Requested | 21 |
| J. | The Proposed Sale and Auction Procedures Are in the Best Interests of the Estate. | 21 |
| IV. | CONCLUSION | 22 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

# TABLE OF AUTHORITIES

**Cases**                                                                                                           <u>Page</u>

*Agarwal v. Pomona Valley Medical Group, Inc. (In re Pomona Valley*
    *Medical Group, Inc.)*, 476 F.3d 665 (9th Cir. 2007) .................................20

*Cmty. Thrift & Loan v. Suchy (In re Suchy)*,
    786 F.2d 900 (9th Cir. 1985) .....................................................................19

*Durkin v. Benedor (In re G.I. Indus., Inc.)*,
    204 F.3d 1276 (9th Cir. 2000) ............................................................19, 20

*Everex Sys., Inc. v. Cadtrak Corp. (In re CFLC, Inc.)*,
    89 F.3d 673 (9th Cir. 1996) .......................................................................19

*Inst. Creditors v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*,
    780 F.2d 1223 (5th Cir. 1986) ...................................................................16

*Mann v. Alexander Dawson Inc. (In re Mann)*,
    907 F.2d 923 (9th Cir. 1990) .....................................................................18

*Metro. Airports Comm'n v. Northwest Airlines, Inc.*
    *(In re Midway Airlines, Inc.)*, 6 F.3d 492 (7th Cir.1993) ..........................19

*Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.*
    *(In re Integrated Res., Inc.)*, 147 B.R. 650 (S.D.N.Y. 1992)......................17

*Onouli-Kona Land Co. v. Estate of Richards*
    *(In re Onouli-Kona Land Co.)*, 846 F.2d 1170 (9th Cir. 1988) .................19

*Vanderpark Props., Inc. v. Buchbinder (In re Windmill Farms, Inc.)*,
    841 F.2d 1467 (9th Cir. 1988) .....................................................................7

*Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14 (B.A.P. 9th Cir. 1988) ...........16

**Federal Statutes**

11 U.S.C. § 363 ............................................................... *passim*

11 U.S.C. § 365.............................................................7, 11, 12, 19, 20

11 U.S.C. § 704 ...........................................................................16

**Federal Rules**

Fed. R. Bankr. P. 9017 ...............................................................1

Fed. R. Evid. 201 ......................................................................1

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

## California Statutes

Civ. Code § 2938  ....................................................................................9

Civ. Code § 3275  .................................................................................6, 7

Cal. Civ. Proc. Code § 1179 ...................................................................6

IN RE PIRCH, INC.                    v      MOTION TO APPROVE AUCTION PROCEDURES AND SALE
CASE NO. 24-01376-CL77                      OF LEASEHOLD INTERESTS AND PERSONAL PROPERTY

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

LESLIE T. GLADSTONE, chapter 7 trustee (the "**Trustee**") of the bankruptcy estate of Pirch, Inc. ("**Debtor'**), submits the following motion to approve auction procedures and to sell three leasehold interests together with any inventory, fixtures and certain other property located on such leased premises to FERGUSON ENTERPRISES, LLC ("**Purchaser**"), subject to overbid, pursuant to 11 U.S.C. Section 363, free and clear of liens, claims, and interests. This Motion is based on the Memorandum of Points and Authorities cited herein, the Notice of Hearing and Motion and the Declaration of Leslie T. Gladstone ("**Gladstone Declaration**") filed concurrently herewith, the Trustee's Motion to (1) Approve Auction Procedures and (2) Sell Personal Property, filed May 24, 2024 (ECF No. 90) (the "**Personal Property Motion**"), and all pleadings and court documents on file in this case.[1]

In the event that no overbidder satisfies the prequalification requirements described below and no opposition to the Motion is timely filed, the Trustee requests that this Motion be granted and this hearing be removed from the Court's calendar, and the Trustee will submit an Order approving the sale to Purchaser without further hearing.[2]

## I.

## INTRODUCTION

The Trustee seeks to sell leasehold interests in three showroom locations—the Costa Mesa showroom, the Mission Viejo showroom, and the Rancho Mirage showroom—as well as any inventory,[3] fixtures, leasehold improvements and other personal property (all to the extent owned by Debtor) located at these showrooms. The Trustee contends that the vast majority of the value for this sale is represented by the leases themselves as well as the location of the leased spaces. These are desirable leases as to terms, duration and especially geography.

---

[1] The Trustee respectfully requests, pursuant to Rule 201 of the Federal Rules of Evidence, made applicable herein by Rule 9017 of the Federal Rules of Bankruptcy Procedure, that the Court take judicial notice of the case docket for the above-captioned case and each of the pleadings and other documents on file in the case.

[2] Questions regarding whether the hearing will be held should be directed to the Trustee's counsel (Christin Batt at 858-294-0216 or ChristinB@flgsd.com) after the Prequalification Deadline (Noon on June 24, 2024).

[3] The Trustee is informed that there is little or no inventory located at these showrooms.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

1    Significantly, there are no liens against the leases themselves, which is, again, the vast

2    majority of the value.  There is some additional value afforded by virtue of various displays

3    located at these showrooms as well as the tenant improvements/build out previously paid for

4    by Debtor.  As to the displays only, these would constitute personal property sales, potentially

5    subject to various liens.  However, as detailed in the Trustee's Personal Property Motion,[4] any

6    liens or claims on the personal property are disputed and the Trustee must sell all the personal

7    property without delay in order to stop incurring enormous amounts of administrative

8    rent/storage expenses.

9    The Trustee has negotiated an Asset Purchase Agreement with Ferguson Enterprises,

10   LLC for a total purchase price of $5 million plus the amounts necessary to cure all monetary

11   defaults at each of these three lease locations.  This sale is subject to Court approval and

12   overbid by potential buyers willing to offer the Trustee a better price.  The Trustee has

13   therefore allocated the purchase price among the three lease locations and will entertain

14   overbid offers as described below.

15   The Trustee requests Court approval to sell the leasehold interests and other personal

16   property that is property of the bankruptcy estate, with all proceeds to be held in a segregated

17   account and all liens, claims, encumbrances and other interests, including without limitation

18   claims regarding displays ***attaching to the sale proceeds*** with the same validity, scope,

19   priority, and perfection as they had on the personal property immediately prior to the sale.  ***The***

20   ***disputes regarding alleged ownership of any inventory, displays, or other personal property***

21   ***will be decided after the sale, and the result will apply to the funds held by the Trustee in her***

22   ***segregated account.***

23   Time is of the essence with respect to this sale.  The leasehold interests and personal

24   property hold value for the estate, but the monthly administrative rent at these premises is

25   approximately $185,000.00 per month plus other costs of maintaining the premises.

26   / / /

27

---

28   [4] Anyone interested in obtaining a copy of the Trustee's Personal Property Motion should
     contact Christin Batt at ChristinB@flgsd.com and a copy will be provided.

In addition, the three leased showrooms are subject to prepetition unlawful detainer and forfeiture actions, and there exists current monetary defaults. If the leases are not assumed and assigned and the monetary defaults are not cured by Purchaser (or successful overbidder) the landlords could potentially seek relief from the stay to obtain possession of the premises. If such relief were granted, it would destroy significant value that otherwise could accrue to the Estate.

The Trustee continues to advertise sale of the leased premises and related personal property, subject to overbid and Purchaser's right to submit a topping bid.

In this Motion, the Trustee requests Court approval of certain auction procedures, including the requirement that any overbidder prequalify to bid at an auction. If an overbidder prequalifies, an auction will be held at the hearing on this Motion to determine the successful bidder and a back-up bidder. Under those circumstances, the Trustee requests authority to sell the property to the successful bidder and a back-up bidder on the terms described below.

In the event that no overbidder prequalifies, no auction will be held and the Trustee requests authority to sell the property to Purchaser on the terms described below.

**II.**

**STATEMENT OF FACTS**

**A.    General Background**

This bankruptcy case was commenced by Debtor on April 19, 2024 (the "**Petition Date**"), under Chapter 7 of the United States Bankruptcy Code. On April 22, 2024, Leslie T. Gladstone was appointed the chapter 7 trustee of Debtor's bankruptcy estate (the "**Estate**").

Prepetition, Debtor operated a retail appliance and plumbing fixture sales business at several retail locations. The three leased retail showrooms (collectively, "**Lease Locations**") relevant to this Motion are as follows:

**B.    Lease Locations**

**1.    *Costa Mesa Location***

The Costa Mesa showroom is located at 3303 Hyland Avenue, Suite D, Costa Mesa, CA. The Costa Mesa Location is governed by a written commercial Lease dated October __,

2010 *[omission in original]*, as amended by the First Amendment to Lease Agreement entered into as of the ___ day of December 2010 *[omission in original]*, the Second Amendment to Lease Agreement entered into as of the 12th day of July 2011, the Third Amendment to Lease made and entered into as of July ___, 2020 *[omission in original]*, and the Fourth Amendment to Lease made and entered into as of December ___, 2020 *[omission in original]* (collectively, the "**Costa Mesa Lease**"), by and between South Coast Trade Center 1, L.P., a California limited partnership, subsequently assigned to Soco Retail Fee Owner, LLC, a Delaware limited liability company, as landlord (the "**Costa Mesa Landlord**"), and the prepetition Debtor f/k/a Fixtures Living, Inc., a California corporation, as tenant.

The personal property to be sold at the Costa Mesa Location comprises multiple large and small displays of various products that customers could order from Debtor.  The Trustee is informed that little or no inventory was held at this location for immediate sale.

The Trustee is informed that rent and related charges for the Costa Mesa Location is approximately $73,888.00 per month and that the amount to cure all monetary defaults under the Costa Mesa Lease, as of 6/3/2024, is approximately $227,948.00 and continues to increase. The Costa Mesa Landlord is aware that Ferguson Enterprises, LLC is the proposed purchaser of the Costa Mesa Lease, and informed the Trustee that it likely will have no opposition to this purchaser.  In the event of an overbid by an unknown third party, the landlord reserves all rights to evaluate the overbidder in terms of adequate assurance of future performance under the lease.

### 2.  *Mission Viejo Location*

The Mission Viejo showroom is located at 28341 Marguerite Parkway, Mission Viejo, CA.  The Mission Viejo Location is governed by a written commercial Lease dated December 16, 2020 (the "**Mission Viejo Lease**"), by and between MV Town Center Parcels 1 & 3, L.P., a California limited partnership, and TIS Equities X, LLC, a  California limited liability company (as tenants in common), as assigned to BTPROP1, LLC, a California limited liability company (the "**Mission Viejo Landlord**"), on the one hand, and the prepetition Debtor, as tenant, on the other hand.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

The personal property to be sold at the Mission Viejo Location comprises multiple large and small displays of various products that customers could order from Debtor. The Trustee is informed that little or no inventory was held at this location for immediate sale.

The Trustee is informed that rent and related charges for the Mission Viejo Location is approximately $65,637.00 per month and that the amount to cure all monetary defaults under the Mission Viejo Lease, as of 4/19/2024, is approximately $170,075.00. The Mission Viejo Landlord is aware that Ferguson Enterprises, LLC is the proposed purchaser of the Mission Viejo Lease, and informed the Trustee that it likely will have no opposition to this purchaser. In the event of an overbid by an unknown third party, the landlord reserves all rights to evaluate the overbidder in terms of adequate assurance of future performance under the lease.

### 3.    *Rancho Mirage Location*

The Rancho Mirage showroom is located at 71905 Highway 111, Units "B" and "C," Rancho Mirage, CA 92270. The Rancho Mirage Location is governed by a written Standard Multi-Tenant Shopping Center Lease – Net made and entered into on October 12, 2009 (the "**Rancho Mirage Lease**"), by and between White Brothers Investment Company, a California general partnership, as lessor, and Fixtures Living, Inc. n/k/a Pirch, Inc., the prepetition Debtor, as lessee. On February 28, 2023, White Brothers Investment Company executed an Assignment and Assumption of its interest as lessor in the Master Lease, assigning Monterey Shore Holdings, LLC, as the Lessor of the Rancho Mirage Lease ("**Rancho Mirage Landlord**").

The personal property to be sold at the Rancho Mirage Location comprises multiple large and small displays of various products that customers could order from Debtor. The Trustee is informed that little or no inventory was held at this location for immediate sale.

The Trustee is informed that rent and related charges for the Rancho Mirage Location is approximately $44,624.00 per month and that the amount to cure all monetary defaults under the Rancho Mirage Lease, as of 5/1/2024, is approximately $158,761.00. The Rancho Mirage Landlord is aware that Ferguson Enterprises, LLC is the proposed purchaser of the Rancho Mirage Lease, and informed the Trustee that it likely will have no opposition to this purchaser.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

1  In the event of an overbid by an unknown third party, the landlord reserves all rights to

2  evaluate the overbidder in terms of adequate assurance of future performance under the lease.

3  **C.**     **Prepetition Litigation with Landlords**

4          As of the Petition Date, the following separate lawsuits were pending in state court

5  between Debtor and the applicable landlord.

6          ***1.***     ***Costa Mesa Landlord Litigation***

7          On or about March 1, 2024 (prepetition), the Costa Mesa Landlord filed an action for

8  unlawful detainer against Debtor, in which the landlord elected to declare the Costa Mesa

9  Lease forfeited.  The lawsuit, captioned *CRC SOCO, LLC v. Pirch, Inc.,* Case No. 30-2024-

10 01383502-CU-UD-CJC, is pending in Orange County Superior Court.  On April 17, 2024,

11 Debtor filed a motion, pursuant to California Code of Civil Procedure § 1179 and Civil Code

12 § 3275, requesting relief from forfeiture of the Costa Mesa Lease.  This action is stayed by

13 Debtor's bankruptcy filing.

14         ***2.***     ***Mission Viejo Landlord Litigation***

15         The Trustee is informed that, at some point prepetition, the Mission Viejo Landlord

16 filed an action for unlawful detainer against Debtor, although the complaint was not served

17 prepetition.  The action is stayed by Debtor's bankruptcy filing.

18         On April 17, 2024 (prepetition), Debtor filed a separate action against the Mission

19 Viejo Landlord for breach of contract and for relief from forfeiture in *Pirch, Inc v. BTPROP1,*

20 *LLC,* Case No. 30-2024-01394032 pending in Orange County Superior Court (the "**MV State**

21 **Court Action**").  This complaint was not served prepetition.

22         ***3.***     ***Rancho Mirage Landlord Litigation***

23         On or about, on March 29, 2024 (prepetition), the Rancho Mirage Landlord filed an

24 action for unlawful detainer against Debtor, in which the landlord elected to declare the

25 Rancho Mirage Lease forfeited.  The lawsuit, captioned *Monterey Shore Holdings, LLC v.*

26 *Pirch, Inc.*, Case No. UDP82400367, is pending in Riverside Superior Court.  On April 17,

27 2024, Debtor filed a motion, pursuant to California Code of Civil Procedure § 1179 and Civil

28

1  Code § 3275, requesting relief from forfeiture of the Rancho Mirage Lease. The action is

2  stayed by Debtor's bankruptcy filing.

3  **D.**   **Relief from Forfeiture of Leases**

4  By operation of law, each of the Leases was effectively terminated pre-petition in

5  connection with the unlawful detainer actions and the respective landlord's election for

6  forfeiture of lease. The Estate nonetheless holds a right to obtain relief from such forfeiture of

7  the Leases pursuant to California law. "Even though the lease may have been terminated

8  before [debtor] filed its Chapter 7 petition in bankruptcy, the trustee may be entitled to relief

9  from forfeiture of the lease under California law." *Vanderpark Props., Inc. v. Buchbinder (In*

10 *re Windmill Farms, Inc.)*, 841 F.2d 1467, 1471 (9th Cir. 1988). Relief from forfeiture requires

11 the same cure of monetary defaults under the Leases that is required by Bankruptcy Code

12 section 365 for sale and assumption of the Leases. Therefore, the Purchase Agreement

13 requires Purchaser (or a successful overbidder) to pay the Cure Payment (defined below) to the

14 Trustee before closing so that the cure amounts can be delivered to the respective landlords.

15 The Trustee is negotiating with the three Landlords to stipulate to relief from forfeiture

16 and assignment of the Leases. The Trustee expects to have a signed stipulation with the

17 Mission Viejo Landlord (and hopefully also the Costa Mesa and Rancho Mirage Landlords)

18 before the hearing on this Motion.

19 **E.**   **Property to Be Sold and Asset Purchase Agreement**

20 The Trustee intends to sell—by assumption and assignment—all right, title and interest

21 of Debtor and/or the Estate, as tenant under the Leases, together with all fixtures, assignable

22 leasehold improvements, and inventory located at the Lease Locations that is property of the

23 Estate at closing (collectively, the "**Property**").

24 In view of the value of the Leases and related personal property, the Trustee sought

25 expressions of interest from bidders for the Leases together with the related personal property.

26 To best maximize the value of the Property, the Trustee determined that the Lease Locations

27 could be sold as a group or individually, and subject to overbid as detailed in the proposed

28 auction procedures described below.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

1    Before the bankruptcy filing, Debtor engaged in negotiations with Purchaser for sale

2    and assignment of the Lease Locations.  These negotiations were not concluded before the

3    Petition Date.

4    After her appointment in this case in late April 2024, the Trustee conducted an

5    investigation and engaged in discussions with potentially interested buyers, including

6    Purchaser and others.  Purchaser submitted a written offer for the three Lease Locations and

7    related property that the Trustee determined was the highest and best offer *provided that* it be

8    subject to an auction with an opportunity for any third party to overbid.  The Trustee entered

9    into an Asset Purchase Agreement (the "**Purchase Agreement**") with Purchaser for a purchase

10   price of $5,000,000.00, subject to overbid and Court approval.  A copy of the Purchase

11   Agreement is attached as Exhibit A to the Gladstone Declaration and incorporated herein.

12   The Trustee believes that the Purchase Agreement from Purchaser is the highest and

13   best firm offer for the Property, but that an overbid auction among those potential buyers who

14   have shown interest in one or more of the Lease Locations may produce an even higher

15   overbid purchase price.  The Trustee is continuing to solicit bids relating to any of the Lease

16   Locations, severally or collectively, to any interested purchaser and is providing notice of the

17   auction opportunity to everyone who has shown or shows an interest in the Lease Locations up

18   to the Prequalification Deadline (defined below).  Therefore, the Trustee requests approval of

19   the sale of the Property to Purchaser (subject, however, to overbid on any one or more of the

20   Leases and related personal property and causes of action), on the terms suggested below or as

21   otherwise approved by the Court.

22   In addition, notice of the Trustee's proposed sale of the Property and overbid

23   opportunity is being posted at Inforuptcy.com, described as the most comprehensive

24   bankruptcy assets database in the country.  Inforuptcy allows trustees to list estate assets for

25   sale to a nationwide audience at no cost to the estate.  According to the website, Inforuptcy

26   subscribers can search and/or receive alerts for the sale of assets.

27   / / /

28   / / /

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

1    Purchaser is not an insider of Debtor.[5]  This proposed sale has been negotiated at arm's

2    length.

3    The proposed sale of the Property will bring into the Estate about $5,000,000.00 and

4    will cure all monetary defaults under the three subject leases.  As such, the Purchase

5    Agreement or any overbid made at an auction will result in a significant benefit to the Estate.

6    **F.    Liens and Claims**

7    The Property proposed for sale comprises two components:  three leasehold interests;

8    and fixtures, assignable leasehold improvements, and inventory located on the Lease Locations

9    that is property of the Estate at the time of closing.

10    Leasehold Interests.  There are no security interests that have been perfected against the

11    Debtor's leasehold interests.  The Trustee is only aware of one creditor that asserts a blanket

12    lien against all of Debtor's assets:  CP Fixtures Holdings LLC.  However, this creditor did not

13    perfect its interest in the leaseholds.[6] Also, the nature, scope, and validity of this lien is

14    disputed, and the Trustee believes in any event that this *creditor consents to the sale of the*

15    *Property proposed by the Trustee.*

16    There was also a judgment lien creditor, Wells Fargo Vendor Financial Services, LLC,

17    whose judgment lien is no longer owed and actually expired on May 7, 2024.[7]

18    The Trustee is unaware of any creditor that may have a security interest in Debtor's

19    leases.

20    Personal Property.  The personal property located at the three showrooms represents a

21    small portion of the purchase prices and is comprised primarily of multiple large and small

22    displays of various products that customers could order from Debtor.  Little or no inventory

23

24    [5] The Purchaser appears to have a purchase money security interest in all inventory, equipment,
and goods it has sold to the Debtor, the extent of which lien is currently unknown, as the
25    Debtor did not list Purchaser as a creditor in its schedules.

26    [6] *See* Cal. Civil Code § 2938(b) (perfection of security interest in lease by recording in county
recorder's office).  No recordation has been found by the Trustee in any of the respective
counties or identified in Debtor's schedules.

27    [7] Wells Fargo Vendor Financial Services LLC offered to the Trustee to terminate the judgment
lien.  However, it  was reportedly unable to do so because the lien expired by operation of law
28    on May 7, 2024.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

exists at these premises.  The displays range from small mobile displays to large, fixed displays.

The Trustee is aware of the following possible interests in certain displays:[8]

<u>Costa Mesa Location Displays</u>:  Americh, Inc., Sub-Zero Group West, Graff Faucets, and Aranelli Design, LLC.

<u>Mission Viejo Location Displays</u>:  Americh, Inc. and Sub-Zero Group West.

<u>Rancho Mirage Location Displays</u>:  Americh, Inc., Sub-Zero Group West, Graff Faucets, and Sherle Wagner.

These potential interest holders have provided the Trustee with documents, most of which purport to be consignment agreements.  Further analysis is needed to determine whether the agreements constitute true consignments and whether the alleged consignors were required to file a UCC Financing Statement to protect their interests in the event of consignee's bankruptcy filing.

The Trustee is communicating with these third parties regarding such issues.  Importantly, given that purchaser Ferguson Enterprises, LLC (as well as other potential purchasers) is in the same industry as Debtor—selling luxury home appliances to residential and contractor customers—the alleged consignors may actually consent to retention of the displays by Purchaser (or successful overbidder) in order to do business with Purchaser.

To promptly cease accruing enormous administrative rent for the three showrooms, the Trustee requests that the sale be approved now and with all proceeds to be held in a segregated account and all liens, claims, encumbrances and other interests, including without limitation claims regarding the displays ***attaching to the sale proceeds*** with the same validity, scope, priority, and perfection as they had on the personal property immediately prior to the sale.  ***The disputes regarding alleged interests in any displays will***

---

[8] The Galley asserts an interest in displays at five unidentified locations, which could include Costa Mesa, Mission Viejo, or Rancho Mirage.  However, the Galley has provided no written agreement or other support of a legal interest in any displays.  Likewise, Vast Design Studio, Inc. asserts that it has displays at "all showrooms" but has provided no written agreement or other documentation to support a legal interest in any displays.

*be decided after the sale, and the result will apply to the funds held by the Trustee in her segregated account.* Given that the vast majority of the sales prices pertain to the leasehold interests, these possible lien creditors are more than adequately protected even in the event that their liens are valid.

**G.      Sale Transaction, Subject to Overbid**

Below are the suggested terms of the sale transaction.

(1)      Purchase Price:  $5,000,000.00 total (the "**Purchase Price**"), payable as follows:  $100,000.00 deposit due at execution of the Purchase Agreement, and the remaining balance of the Purchase Price due at closing.  Allocation of Purchase Price:

(a)      Costa Mesa Location:  $2,000,000.00

(b)      Mission Viejo Location:  $1,500,000.00

(c)      Rancho Mirage Location:  $1,500,000.00

(2)      Cure Payment:  In connection with Purchaser's assumption and assignment of the Leases, at or before the closing, Purchaser shall pay all cure costs that the Bankruptcy Court, pursuant to a final and unappealable order, orders to be paid in connection with the Trustee's assignment to Purchaser of each Lease, in accordance with section 365 of the Bankruptcy Code (the "**Cure Payment**").

(3)      "As-Is, Where-Is":  The sale is as-is, where-is, no representations, no warranties.

(4)      Closing Date:  15 days after entry of the sale order or as soon thereafter as possible.

(5)      Sale Free-and-Clear:  The Property will be sold to Purchaser free and clear of any and all monetary liens, claims, encumbrances, or other interests.

(6)      Treatment of Liens, Claims, Encumbrances, and Other Interests:  As authorized by Section 363(f) of the Bankruptcy Code, the sale will be free and clear of all monetary liens, claims, encumbrances and other interests ("**Claims**"), with such Claims attaching to the sale proceeds with the same validity, scope, priority, and perfection as they had on the Property

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

immediately prior to the closing. As described in Part II.E above, the Trustee is aware of only a few disputed claims regarding various displays.

(7)    Purchaser Breach: If Purchaser fails to close, Purchaser will forfeit its deposit as liquidated damages and the Trustee will have the right to seek any and all other remedies and damages from Purchaser.

(8)    Overbid Terms: The Trustee seeks approval of the sale of the Property subject to the Proposed Auction Procedures described in the section below.

(9)    Conditions to Close:

(a)    A final, unappealable Court order approving the sale of the Property to Purchaser;

(b)    Purchaser's satisfaction of the conditions for adequate assurance contained in Sections 365(b)(3)(D) and 365(f)(2)(B) of the Bankruptcy Code; and

(c)    Trustee's receipt of Purchaser's Cure Payment five business days before closing.

The proceeds from the proposed sale are estimated to bring into the Estate a minimum of $5,000,000.00 plus close to another $1,000,000.00 in Cure Payments to the Estate, which amount may be increased if there is an overbid. The Purchase Agreement has been negotiated at arm's length. The Trustee believes that the terms contained in the Purchase Agreement are fair and equitable and therefore are in the best interest of the Estate and respectfully requests that the Purchase Agreement be approved.

## H.    **Proposed Auction Procedures**

At the hearing on this Motion (the "**Sale Hearing**"), if a qualified overbidder is present and interested in bidding, the Trustee will hold an auction. The Trustee requests approval of the following suggested terms and proposed auction procedures.

(1)    Initial Overbid: The minimum overbid amount shall be broken out by Lease Location and at least $100,000.00 more than the amount allocated in the Purchase Agreement, or such other amount as is approved by the Court:

(a) Costa Mesa Location: $2,100,000.00 minimum overbid plus Cure Payment

(b) Mission Viejo Location: $1,600,000.00 minimum overbid plus Cure Payment

(c) Rancho Mirage Location: $1,600,000.00 minimum overbid plus Cure Payment

(2)     Subsequent Incremental Bids: Each subsequent incremental bid, per Lease Location, will be at least $20,000.00, or such other increment as is approved by the Court.

(3)     Deposit to Bid: $100,000.00

(4)     Prequalification Deadline: **<u>June 24, 2024, at Noon (PDT)</u>**.

(5)     If one or more of the Lease Locations may become subject to an overbid and sale to a third party, Purchaser's obligation to close with respect to any remaining Lease Locations and to pay the Purchase Price and Cure Payment relating to such Leases under such remaining Lease Location(s) shall not be modified.

(6)     Purchaser will have the opportunity to make a topping bid for any Lease Location(s), subject to the same incremental bid amount as set forth in subparagraph (2) above.

(7)     The auction will continue until the Court determines the highest and best bid (the "**Successful Bid**" from the "**Successful Bidder**") and the second-highest bid (the "**Back-Up Bid**" from the "**Back-Up Bidder**"). The Successful Bid will be irrevocable. The Back-Up Bid will be irrevocable until the later of (i) two days after the order approving the Successful Bid becomes final and (ii) the closing of the sale to the Successful Bidder. Once the Back-Up Bid is no longer irrevocable, the Trustee will promptly refund the Back-Up Bidder's deposit.

(8)     All potential overbidders will be required to attend the Sale Hearing in person, telephonically, or whatever medium the Court requires.

(9)     Prequalification to Overbid: In order to be allowed to overbid, a party must present each of the following to the Trustee, on or before the Prequalification Deadline **<u>(June 24, 2024)</u>** set forth above:

(a)     Good funds (i.e., cashier's check or wire transfer) in the amount of One Hundred Thousand Dollars ($100,000.00), payable to Estate of Pirch, Inc., Leslie T. Gladstone, Trustee, as a deposit, nonrefundable to the Successful Bidder and Back-Up Bidder, except as provided above. These funds will be deposited into the Estate's account and will be promptly refunded to unsuccessful overbidders following the

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

1　conclusion of the Sale Hearing.  The deposit of the successful overbidder shall be

2　applied to the final purchase price ordered by the Court.

3　　　　(b)　Evidence, satisfactory to the Trustee, that the overbidder has the

4　financial wherewithal to close the transaction and to provide the required adequate

5　assurance to assume the Leases under Bankruptcy Code Section 363.  Such evidence

6　must include, at a minimum, financial statements of the overbidder or party responsible

7　for the overbidder's obligations, certified under penalty of perjury as true and correct.

8　　　　(10)　The successful overbidder will be required to execute, at the Sale Hearing, an

9　overbid agreement.  If the Sale Hearing is conducted remotely, the successful overbidder will

10　be required to execute and deliver the overbid agreement to the Trustee within 24 hours after

11　the Sale Hearing.  This overbid agreement will be substantially similar to the Purchase

12　Agreement, broken down by applicable Lease, and is not negotiable.  Interested parties may

13　contact the Trustee to obtain a copy of the overbid agreement.

14　　　　(11)　In the event of a successful overbid by a party other than Purchaser or

15　Purchaser's affiliate or assignee, Purchaser may receive, subject to Court approval, a break-up

16　fee of not more than five percent (5%) of the cash closing price (excluding any Cure Payment

17　component of the consideration) paid by such party for each applicable Lease Location(s)

18　actually acquired by a Successful Bidder or Back-up Bidder (the "**Break-Up Fee**") as

19　reimbursement for actual costs incurred by Purchaser in its investigation of the Property.  The

20　Break-up Fee shall be Purchaser's exclusive remedy and shall be payable solely from the

21　proceeds of an alternative transaction whereby one or more Lease Location is instead sold to a

22　third-party Successful Bidder.  According to the Trustee's suggested overbid terms, the Break-

23　Up Fee shall only be paid in the event of a consummated sale of one or more of the Lease

24　Locations by a party other than Purchaser or Purchaser's affiliate or assignee at or above the

25　following minimum purchase price (*excluding* the Cure Payment component relating to such

26　Lease Location):

27　　　　(a)　Costa Mesa Location:  $2,100,000.00 minimum;

28　　　　(b)　Mission Viejo Location:  $1,600,000.00) minimum; and

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

1         (c)     Rancho Mirage Location: $1,600,000.00 minimum.

2      (12)    Back-Up Bid: If, following entry of the order authorizing this sale, the

3 Successful Bidder fails to consummate the sale because of a breach or failure to perform on the

4 part of the Successful Bidder, the Back-Up Bid will be deemed to be the new Successful Bid

5 and the Trustee will be authorized, but not required, to consummate the sale with the Back-Up

6 Bidder without further order of the Court. In the event of a breach or failure to perform by the

7 Successful Bidder, the Successful Bidder will forfeit its deposit to the Estate and the Trustee

8 will have the right to seek any and all other remedies and damages from the Successful Bidder.

9 **I.**    <u>**Tax Analysis**</u>

10      The sale is not expected to result in an adverse tax impact on the estate.

11 **J.**    <u>**Status of the Estate and Claims**</u>

12      By this Motion, the Trustee seeks to sell leasehold interests in three Leases and the

13 related personal property located at such locations for a minimum of $5 million plus

14 satisfaction of all cure amounts under those leases.

15      In a recently filed related motion, the Trustee seeks to sell approximately 45,000 items

16 of personal property via negotiated sales and an online auction. It is unknown at this time how

17 much money will come into the Estate as a result of these sales/auction.

18      At this time, the creditor matrix for this case lists <u>4,379 creditors</u>. Debtor scheduled

19 total liabilities of $230 million.[9] Until the claims resolution process is completed, it will not be

20 known what benefit may go to priority and general unsecured creditors in this case.

21      The only certain thing is that, if the sale of the Leases and personal property does not

22 proceed immediately, Purchaser may withdraw and the landlords may move for relief from

23 stay to repossess the premises leaving the Estate with huge amounts of postpetition,

24 administrative rent claims.

25 / / /

26 / / /

27 ────────────────

28 [9] Total liabilities comprise just under $88 million in secured claims, $97 million in priority unsecured (customer) claims, and almost $53 million in general unsecured claims.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

**III.**

**MEMORANDUM OF POINTS AND AUTHORITIES**

Section 704 of the Bankruptcy Code requires that a chapter 7 trustee "collect and reduce to money the property of the estate." 11 U.S.C. § 704(a)(1).

**A.     An Articulated Business Justification Exists for the Proposed Sale.**

Section 363(b) of the Bankruptcy Code provides that a trustee, after notice and a hearing may "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The standard for approval of a sale of property of the estate under section 363(b) is whether there exists "some articulated business justification" for the proposed transaction. *Walter v. Sunwest Bank (In re Walter),* 83 B.R. 14, 19 (B.A.P. 9th Cir. 1988) (quoting *Inst. Creditors v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986)).

Ample business justification exists for the proposed sale. The Leases, upon recovery from forfeiture, will be property of the Estate. The minimum Purchase Price will bring into the Estate sale proceeds of about $5,000,000.00. Purchaser is not an insider of Debtor, and the proposed sale has been negotiated at arm's length.

In light of the foregoing, the Trustee believes that the proposed sale to Purchaser is in the best interests of the Estate.

**B.     Accurate and Reasonable Notice of the Sale Has Been Provided.**

As described above, the Lease Locations were marketed for sale prepetition by Debtor and resulted in ongoing—but unconsummated—negotiations with Purchaser. The Trustee has, since her appointment in April 2024, concluded negotiations with Purchaser and entered into the Purchase Agreement. The Trustee has received no other written offer for any of the Lease Locations, but has received expressions of interest for one or more of the Lease Locations. The Trustee has given notice of this motion and the Sale Hearing to each party who expressed an interest in purchasing any portion of the Property.

/ / /

/ / /

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

1     The Trustee has also given notice of the sale to all parties requesting special notice and

2 all entities required to be given notice under the Court-approved notice procedures.  (ECF No.

3 86).  The Trustee will also advertise the sale with Inforuptcy.

4 **C.**     **The Purchase Price Is Fair and Reasonable.**

5     The Purchase Price was negotiated at arm's length.  The Trustee is unaware of any

6 other higher and better firm offer to purchase the Property.

7 **D.**     **The Break-Up Fee Is in the Best Interests of the Estate.**

8     In assessing a break-up fee, courts should consider the following three questions:

9
> (1) is the relationship of the parties who negotiated the break-up
10  fee tainted by self-dealing or manipulation; (2) does the fee
    hamper, rather than encourage, bidding; (3) is the amount of the
11  fee unreasonable relative to the proposed purchase price.

12 *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res.,*

13 *Inc.),* 147 B.R. 650, 657 (S.D.N.Y. 1992).

14     Here, the Purchase Agreement with the Break-Up Fee provision was negotiated at

15 arm's-length, untainted by self-dealing or manipulation.

16     When the Purchase Agreement was being negotiated, the Trustee required that the sale

17 be subject to overbid.  Purchaser requested a modest Break-Up Fee for reimbursement of actual

18 costs of investigating the Property.  Given that the Trustee is aware that there may be buyers

19 for one or more of the Lease Locations, the Trustee agreed to the Break-Up Fee as a means to

20 encourage bidding by offering this relatively small incentive to cover such costs.

21     The amount of the Break-Up Fee is reasonable.  The Break-Up Fee is a small

22 percentage (five percent) of the cash consideration (excluding any Cure Payment component)

23 paid for each Lease Location.  This amount is necessarily equal to or less than the Initial

24 Overbid of $100,000.00 required per Lease Location.

25     In addition, Paragraph 2.05 of the Purchase Agreement provides that the Break-Up Fee

26 shall only be paid in the event that the Property is sold to a buyer other than Purchaser or

27 Purchaser's affiliate or assignee.

28 / / /

The Break-up Fee was a requirement to induce Purchaser to agree to be a stalking horse

for the auction, which is in the best interests of the Estate.

**E.    Sale of the Property Free and Clear of Liens and Claims Is Permitted Under**

**Section 363(f) of the Bankruptcy Code.**

Section 363(f) of the Bankruptcy Code describes the circumstances under which a

trustee may sell property of the estate free and clear of any interest of third parties in such

property:

> The trustee may sell property under subsection (b) … free and clear of any
> interest in such property of an entity other than the estate only if—
> (1)    applicable non-bankruptcy law permits sale of such property free and
>         clear of such interests;
> (2)    such entity consents;
> (3)    such interest is a lien and the price the property is to be sold is greater
>         than the aggregate value of all liens on such property;
> (4)    such interest is in bona fide dispute; or
> (5)    such entity could be compelled, in a legal or equitable proceeding to
>         accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

As explained in detail in the Trustee's Personal Property Motion, which is incorporated

herein, the Trustee seeks approval to sell the personal property assets under Section 363(f)(2),

(4), and (5).  As to the leasehold interests, the Trustee is informed and believes that there are no

validly perfected liens.

**F.    Purchaser Is a Good Faith Purchaser.**

Section 363(m) of the Bankruptcy Code provides that "[t]he reversal or modification on

appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of

property does not affect the validity of a sale or lease under such authorization to an entity that

purchased or leased such property in good faith …".  11 U.S.C. § 363(m).  "Under 11 U.S.C.

§ 363(m), an appeal of a bankruptcy court's ruling on a [sale] generally cannot affect the rights

of a good faith purchaser of the foreclosed property, unless the debtor [or other complaining

party] stays the … sale pending an appeal." *Mann v. Alexander Dawson Inc. (In re Mann),* 907

F.2d 923, 926 (9th Cir. 1990).

/ / /

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

1     "[T]he primary goal of the mootness rule [embodied in section 363(m)] is to protect the

2     interest of a good faith purchaser … of the property, thereby assuring finality of sales."

3     *Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.),* 846 F.2d 1170,

4     1172 (9th Cir. 1988) (internal quotation omitted).  As set forth in the Gladstone Declaration,

5     the protection of Section 363(m) is appropriate in this case because the proposed sale

6     transaction is the product of arm's-length, good-faith negotiations implemented between the

7     Trustee and Purchaser.  *See Onouli-Kona Land Co.,* 846 F.2d at 1173 (lack of good faith

8     within meaning of section 363(m) requires "fraud, collusion, … or an attempt to take grossly

9     unfair advantage of other bidders") (quoting *Cmty. Thrift & Loan v. Suchy (In re Suchy)*, 786

10    F.2d 900, 901-02 (9th Cir. 1985).  Moreover, any successful overbidder will be required to

11    overbid at the Sale Hearing before the Court, at which time the Court may determine whether

12    such successful overbidder is a good-faith purchaser.  As a consequence, the requested finding

13    that Purchaser or the Successful Bidder and Back-Up Bidder is a "good faith" purchaser within

14    the meaning of Section 363(m) of the Bankruptcy Code is appropriate.

15    **G.     Assignment and Assumption of the Leases Is Permitted Under Section 365 of the**

16    **Bankruptcy Code.**

17          Section 365(a) of the Bankruptcy Code provides that the trustee, "subject to the court's

18    approval, may assume or reject any executory contract or unexpired lease."  11 U.S.C.

19    § 365(a).  "Ordinarily, a trustee may take either of these actions without the consent of the

20    other party to the contract or lease and notwithstanding a provision in the applicable agreement

21    that purports to restrict assignment."  *Everex Sys., Inc. v. Cadtrak Corp. (In re CFLC, Inc.)*, 89

22    F.3d 673, 676 (9th Cir. 1996) (citing 11 U.S.C. §§ 365(a) & (f)(1) and quoting *Metro. Airports

23    Comm'n v. Northwest Airlines, Inc. (In re Midway Airlines, Inc.),* 6 F.3d 492, 494 (7th Cir.

24    1993)).

25          Courts routinely approve motions to assume, assume and assign, or reject executory

26    contracts or unexpired leases upon a showing that the trustee's decision to take such action will

27    benefit the estate and is an exercise of sound business judgment.  *See Durkin v. Benedor (In re*

28

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

1   *G.I. Indus., Inc.),* 204 F.3d 1276, 1282 (9th Cir. 2000) ("Specifically, a bankruptcy court

2   applies the business judgment rule to evaluate a trustee's rejection decision ….").

3       Courts generally will not second-guess a trustee's business judgment concerning the

4   assumption or rejection of an executory contract or unexpired lease. *See Agarwal v. Pomona*

5   *Valley Medical Group, Inc. (In re Pomona Valley Medical Group, Inc.)*, 476 F.3d 665, 670

6   (9th Cir. 2007) (stating that a bankruptcy court need engage in only a "cursory review" of a

7   trustee's decision and apply the business judgment rule to evaluate a trustee's decision). "[The

8   court] should approve the rejection of an executory contract under § 365(a) unless it finds that

9   the [trustee]'s conclusion that rejection would be advantageous is so manifestly unreasonable

10  that it could not be based on sound business judgment, but only on bad faith, or whim or

11  caprice." *Id.* (internal quotation omitted).

12      Pursuant to section 365(b)(1) of the Bankruptcy Code, if there has been a default in an

13  unexpired lease, the trustee may not assume such unexpired lease unless, at the time of

14  assumption, the debtor cures, or provides adequate assurance that it will promptly cure, any

15  monetary defaults and actual pecuniary loss resulting from defaults under the lease.  11 U.S.C.

16  § 365(b)(1)(A)-(B).  Here, the Purchase Agreement requires Purchaser to pay the Cure

17  Payment to Trustee at least five days before closing.  The nonnegotiable Overbid Agreement

18  will provide the same.  The Trustee will therefore have the financial wherewithal and

19  responsibility to pay the respective landlords the amount necessary to cure all monetary

20  defaults by the time of closing.

21      The Trustee has determined, in an exercise of her sound business judgment, that with

22  approval of the sale, assumption and assignment of the Leases is in the best interests of the

23  estate.  As set forth above, the assumption and assignment of the Leases through the proposed

24  sale of the Property, will bring into the Estate about $5,000,000.00, value that will not be

25  realized if the Leases are not assumed and assigned.  Further, failure to assume and assign the

26  Leases will expose the Estate to claims for the monetary defaults under each of the Leases.

27  / / /

28  / / /

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

1

**H.**     <u>Time Is of the Essence in this Transaction.</u>

2

Time is of the essence in consummating a sale of the Lease Locations. Given the

3

substantial equity in the Lease Locations and the large amount of claims, it is imperative to

4

promptly monetize the meaningful equity that resides in the Lease Locations. Further, the

5

longer the Estate is required to make payment of monthly rent and other costs, it will further

6

diminish the amount that is available for distribution to creditors. In addition, if action is not

7

taken quickly to monetize the Leases, the landlords for the Lease Locations may seek relief

8

from stay to regain possession of the premises, which, if granted, would destroy significant

9

value to the Estate.

10

A two-step process of first seeking approval of the sale procedures, and only after that

11

motion were approved, to hold an auction, and then, following the auction, filing a motion and

12

holding a hearing to approve the sale, would result in extremely detrimental delay to the Estate,

13

its creditors, as well as to Purchaser. As such, the Trustee respectfully proposes that

14

combining the hearings on the sale and auction procedures is both equitable and will maximize

15

value to the Estate and its creditors.

16

**I.**     <u>Other Relief Requested</u>

17

The Trustee expressly reserves and does not waive her right to surcharge the Property

18

and the proceeds thereof under Section 506(c) of the Bankruptcy Code to the extent the

19

Property secures an allowed secured claim, for reasonable, necessary costs of preserving or

20

disposing of the Property to the extent of any benefit to the holder of such secured claim or

21

claims.

22

**J.**     <u>The Proposed Sale and Auction Procedures Are in the Best Interests of the Estate.</u>

23

In view of the compelling business reasons for the proposed transaction—generating

24

funds to pay creditors and minimizing depletion of Estate resources—the proposed sale and

25

auction procedures are in the best interests of the Estate and should be approved.

26

/ / /

27

/ / /

28

/ / /

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

## IV.

## CONCLUSION

For all the foregoing reasons, the proposed sale of the Property to Purchaser, subject to overbid, is in the best interests of the Estate and should be approved.

WHEREFORE, the Trustee respectfully requests that the Court enter an order:

(1)    approving the proposed auction procedures;

(2)    authorizing the Trustee to consummate the sale of the Property, including assumption and assignment of the Leases, to Purchaser or to Successful Bidder and Back-Up Bidder;

(3)    authorizing the sale free and clear of all liens, claims and interests, with any such liens, claims and interests attaching to the sale proceeds with the same validity, scope, priority, and perfection as they had on the Property immediately prior to the closing[10];

(4)    authorizing the payment of any existing undisputed liens from the proceeds of the sale[11];

(5)    finding that each of Purchaser or Successful Bidder and Back-Up Bidder is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code;

(6)    authorizing payment of the Break-Up Fee out of the proceeds of the sale of the Property, provided that there is a consummated sale of the Property at $100,000.00 or higher for each applicable Lease to a party other than Purchaser or Purchaser's affiliate or assignee; and

(7)    preserving the Trustee's right to surcharge the Property and the proceeds thereof under Section 506(c) of the Bankruptcy Code.

/ / /

---

[10]    In the event the sale is not consummated, the existing liens and claims on the Property shall remain unaffected.

[11]    In the event the Trustee disputes any amount submitted in an updated payoff demand from a lienholder, the undisputed amount shall be promptly paid by the Trustee and the disputed amount of the lien shall be held by the Trustee pending resolution of the dispute by the Bankruptcy Court.

1    The Trustee also requests such other and further relief as this Court deems just and

2    proper.

3                                              Respectfully submitted,

4    Dated:  June 3, 2024                     FINANCIAL LAW GROUP

5

6                                              By:  ___/s/ Christin A. Batt_____

6                                                   Christin A. Batt, Esq.

7                                                   Proposed Attorneys for Leslie T. Gladstone, Trustee

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037