Leslie T. Gladstone, Esq.  (SBN 144615)
Christin A. Batt, Esq.  (SBN 222584)
FINANCIAL LAW GROUP
5656 La Jolla Blvd.
La Jolla, CA 92037
Telephone:  (858) 454-9887
Facsimile:  (858) 454-9596
E-mail:  ChristinB@flgsd.com

Proposed Attorneys for Leslie T. Gladstone, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PIRCH, INC.,<br><br><div align="center">Debtor.</div> | Case No.:  24-01376-CL7<br><br>**DECLARATION OF LESLIE T. GLADSTONE IN SUPPORT OF TRUSTEE'S MOTION TO (1) APPROVE AUCTION PROCEDURES; AND (2) SELL <u>LEASEHOLD INTERESTS</u> AND <u>RELATED PERSONAL PROPERTY</u> PURSUANT TO 11 U.S.C. SECTION 363, FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS**<br><br>Date:     July 1, 2024<br>Time:    10:30 a.m.<br>Dept:    One (1)<br>Honorable Christopher B. Latham |

I, LESLIE T. GLADSTONE, declare:

1.     I am the chapter 7 trustee for the bankruptcy estate of Pirch, Inc. ("**Debtor**"). All the information contained herein is within my personal knowledge, except for those matters alleged on information and belief and as to those matters I believe them to be true.  If called as a witness, I could competently testify thereto.

2.     I offer this Declaration in support of Trustee's Motion to (1) Approve Auction Procedures; and (2) Sell Leasehold Interests and Related Personal Property Pursuant to 11 U.S.C. Section 363 Free and Clear of Liens, Claims, and Interests (the "**Motion**").

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

## INTRODUCTION

3.     I seek to sell leasehold interests in three showroom locations—the Costa Mesa showroom, the Mission Viejo showroom, and the Rancho Mirage showroom—as well as any inventory, fixtures, leasehold improvements and other personal property (all to the extent owned by Debtor) located at these showrooms.

4.     I am informed that there is little or no inventory located at these showrooms.

5.     I contend that the vast majority of the value for this sale is represented by the leases themselves as well as the location of the leased spaces. These are desirable leases as to terms, duration and especially geography.

6.     Significantly, I am unaware of any liens against the leases themselves, which is, again, the vast majority of the value.

7.     There is some additional value afforded by virtue of various displays located at these showrooms as well as the tenant improvements/build out previously paid for by Debtor. As to the displays only, these would constitute personal property sales, potentially subject to various liens. However, as detailed in my Personal Property Motion,[1] any liens or claims on the personal property are disputed and I must sell all the personal property without delay in order to stop incurring enormous amounts of administrative rent/storage expenses.

8.     I have negotiated an Asset Purchase Agreement with Ferguson Enterprises, LLC ("**Purchaser**") for a total purchase price of $5 million plus the amounts necessary to cure all monetary defaults at each of these three lease locations. This sale is subject to Court approval and overbid by potential buyers willing to offer the Estate a better price. I have therefore allocated the purchase price among the three lease locations and will entertain overbid offers as described below.

9.     I request Court approval to sell the leasehold interests and other personal property that is property of the bankruptcy estate, with all proceeds to be held in a segregated account and all liens, claims, encumbrances and other interests, including without limitation

---

[1] Anyone interested in obtaining a copy of my Personal Property Motion should contact Christin Batt at ChristinB@flgsd.com and a copy will be provided.

claims regarding displays ***attaching to the sale proceeds*** with the same validity, scope, priority, and perfection as they had on the personal property immediately prior to the sale. ***The disputes regarding alleged ownership of any inventory, displays, or other personal property will be decided after the sale, and the result will apply to the funds held by me in my segregated account.***

10.     Time is of the essence with respect to this sale.  The leasehold interests and personal property hold value for the estate, but I am informed and believe that the monthly administrative rent at these premises is approximately $185,000.00 per month plus other costs of maintaining the premises.

11.     In addition, the three leased showrooms are subject to prepetition unlawful detainer and forfeiture actions, and there exists current monetary defaults.  If the leases are not assumed and assigned and the monetary defaults are not cured by Purchaser (or successful overbidder) the landlords could potentially seek relief from the stay to obtain possession of the premises.  If such relief were granted, it would destroy significant value that otherwise could accrue to the Estate.

12.     I continue to advertise sale of the leased premises and related personal property, subject to overbid and Purchaser's right to submit a topping bid.

13.     In my Motion, I request Court approval of certain auction procedures, including the requirement that any overbidder prequalify to bid at an auction.  If an overbidder prequalifies, an auction will be held at the hearing on this Motion to determine the successful bidder and a back-up bidder.  Under those circumstances, I request authority to sell the property to the successful bidder and a back-up bidder on the terms described below.

14.     In the event that no overbidder prequalifies, no auction will be held and I request authority to sell the property to Purchaser on the terms described below.

## **General Background**

15.     According to the docket, this bankruptcy case was commenced by Debtor on April 19, 2024 (the "**Petition Date**"), under Chapter 7 of the United States Bankruptcy Code.

/ / /

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

16.     On April 22, 2024, I was appointed the chapter 7 trustee of Debtor's bankruptcy estate (the "**Estate**").

17.     Prepetition, Debtor operated a retail appliance and plumbing fixture sales business at several retail locations.  The three leased retail showrooms (collectively, "**Lease Locations**") relevant to my Motion are as follows:

### Lease Locations

#### *Costa Mesa Location*

18.     The Costa Mesa showroom is located at 3303 Hyland Avenue, Suite D, Costa Mesa, CA.  According to documents provided to me by Debtor, the Costa Mesa Location is governed by a written commercial Lease dated October __, 2010 *[omission in original]*, as amended by the First Amendment to Lease Agreement entered into as of the __ day of December 2010 [*omission in original*], the Second Amendment to Lease Agreement entered into as of the 12th day of July 2011, the Third Amendment to Lease made and entered into as of July __, 2020 [*omission in original*], and the Fourth Amendment to Lease made and entered into as of December __, 2020 [*omission in original*] (collectively, the "**Costa Mesa Lease**"), by and between South Coast Trade Center 1, L.P., a California limited partnership, subsequently assigned to Soco Retail Fee Owner, LLC, a Delaware limited liability company, as landlord (the "**Costa Mesa Landlord**"), and the prepetition Debtor f/k/a Fixtures Living, Inc., a California corporation, as tenant.

19.     I am informed and believe that the personal property to be sold at the Costa Mesa Location comprises multiple large and small displays of various products that customers could order from Debtor.  I am informed and believe that little or no inventory was held at this location for immediate sale.

20.     I am informed and believe that rent and related charges for the Costa Mesa Location is approximately $73,888.00 per month and that the amount to cure all monetary defaults under the Costa Mesa Lease, as of 6/3/2024, is approximately $227,948.00 and continues to increase.  The Costa Mesa Landlord is aware that Ferguson Enterprises, LLC is the proposed purchaser of the Costa Mesa Lease, and the landlord informed me that it likely

Financial Law Group
5656 La Jolla Boulevard
La Jolla, California 92037

will have no opposition to this purchaser. In the event of an overbid by an unknown third party, the landlord reserves all rights to evaluate the overbidder in terms of adequate assurance of future performance under the lease.

### *Mission Viejo Location*

21.     The Mission Viejo showroom is located at 28341 Marguerite Parkway, Mission Viejo, CA. According to documents provided to me by Debtor, the Mission Viejo Location is governed by a written commercial Lease dated December 16, 2020 (the "**Mission Viejo Lease**"), by and between MV Town Center Parcels 1 & 3, L.P., a California limited partnership, and TIS Equities X, LLC, a California limited liability company (as tenants in common), as assigned to BTPROP1, LLC, a California limited liability company (the "**Mission Viejo Landlord**"), on the one hand, and the prepetition Debtor, as tenant, on the other hand.

22.     I am informed and believe that the personal property to be sold at the Mission Viejo Location comprises multiple large and small displays of various products that customers could order from Debtor. I am informed and believe that little or no inventory was held at this location for immediate sale.

23.     I am informed and believe that rent and related charges for the Mission Viejo Location is approximately $65,637.00 per month and that the amount to cure all monetary defaults under the Mission Viejo Lease, as of 4/19/2024, is approximately $170,075.00. The Mission Viejo Landlord is aware that Ferguson Enterprises, LLC is the proposed purchaser of the Mission Viejo Lease, and the landlord informed me that it likely will have no opposition to this purchaser (subject to provision of adequate assurance). In the event of an overbid by an unknown third party, the landlord reserves all rights to evaluate the overbidder in terms of adequate assurance of future performance under the lease.

### *Rancho Mirage Location*

24.     The Rancho Mirage showroom is located at 71905 Highway 111, Units "B" and "C," Rancho Mirage, CA 92270. According to documents provided to me by Debtor, the Rancho Mirage Location is governed by a written Standard Multi-Tenant Shopping Center

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

Lease – Net made and entered into on October 12, 2009 (the "**Rancho Mirage Lease**"), by and between White Brothers Investment Company, a California general partnership, as lessor, and Fixtures Living, Inc. n/k/a Pirch, Inc., the prepetition Debtor, as lessee. On February 28, 2023, White Brothers Investment Company executed an Assignment and Assumption of its interest as lessor in the Master Lease, assigning Monterey Shore Holdings, LLC, as the Lessor of the Rancho Mirage Lease ("**Rancho Mirage Landlord**").

25. I am informed and believe that the personal property to be sold at the Rancho Mirage Location comprises multiple large and small displays of various products that customers could order from Debtor. I am informed and believe that little or no inventory was held at this location for immediate sale.

26. I am informed and believe that rent and related charges for the Rancho Mirage Location is approximately $44,624.00 per month and that the amount to cure all monetary defaults under the Rancho Mirage Lease, as of 5/1/2024, is approximately $158,761.00. The Rancho Mirage Landlord is aware that Ferguson Enterprises, LLC is the proposed purchaser of the Rancho Mirage Lease, and the landlord informed me that it likely will have no opposition to this purchaser. In the event of an overbid by an unknown third party, the landlord reserves all rights to evaluate the overbidder in terms of adequate assurance of future performance under the lease.

### Prepetition Litigation with Landlords

27. I am informed and believe that, as of the Petition Date, the following separate lawsuits were pending in state court between Debtor and the applicable landlord.

### Costa Mesa Landlord Litigation

28. According to documents provided to me by Debtor's litigation counsel, on or about March 1, 2024 (prepetition), the Costa Mesa Landlord filed an action for unlawful detainer against Debtor, in which the landlord elected to declare the Costa Mesa Lease forfeited. The lawsuit, captioned *CRC SOCO, LLC v. Pirch, Inc.,* Case No. 30-2024-01383502-CU-UD-CJC, is pending in Orange County Superior Court. According to such documents, on April 17, 2024, Debtor filed a motion, pursuant to California Code of Civil

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

Procedure § 1179 and Civil Code § 3275, requesting relief from forfeiture of the Costa Mesa Lease. This action is stayed by Debtor's bankruptcy filing.

### *Mission Viejo Landlord Litigation*

29. According to documents provided to me by Debtor's litigation counsel, at some point prepetition, the Mission Viejo Landlord filed an action for unlawful detainer against Debtor, although the complaint was not served prepetition. The action is stayed by Debtor's bankruptcy filing.

30. According to those documents, on April 17, 2024 (prepetition), Debtor filed a separate action against the Mission Viejo Landlord for breach of contract and for relief from forfeiture in *Pirch, Inc v. BTPROP1, LLC*, Case No. 30-2024-01394032 pending in Orange County Superior Court (the "**MV State Court Action**"). I am further informed and believe that this complaint was not served prepetition.

### *Rancho Mirage Landlord Litigation*

31. According to documents provided to me by Debtor's litigation counsel, on or about, on March 29, 2024 (prepetition), the Rancho Mirage Landlord filed an action for unlawful detainer against Debtor, in which the landlord elected to declare the Rancho Mirage Lease forfeited. The lawsuit, captioned *Monterey Shore Holdings, LLC v. Pirch, Inc.*, Case No. UDP82400367, is pending in Riverside Superior Court. On April 17, 2024, Debtor filed a motion, pursuant to California Code of Civil Procedure § 1179 and Civil Code § 3275, requesting relief from forfeiture of the Rancho Mirage Lease. The action is stayed by Debtor's bankruptcy filing.

### **Relief from Forfeiture of Leases**

32. By operation of law, each of the Leases was effectively terminated pre-petition in connection with the unlawful detainer actions and the respective landlord's election for forfeiture of lease. I am informed and believe that, under California law, the Estate nonetheless holds a right to obtain relief from such forfeiture of the Leases pursuant to California law. Relief from forfeiture requires the same cure of monetary defaults under the Leases that is required by Bankruptcy Code section 365 for sale and assumption of the

Leases. Therefore, the Purchase Agreement requires Purchaser (or a successful overbidder) to pay the Cure Payment (defined below) to the Estate before closing so that the cure amounts can be delivered to the respective landlords.

33. I am negotiating with the three Landlords to stipulate to relief from forfeiture and assignment of the Leases. I expect to have a signed stipulation with the Mission Viejo Landlord (and hopefully also the Costa Mesa and Rancho Mirage Landlords) before the hearing on my Motion.

## Property to Be Sold and Asset Purchase Agreement

34. I intend to sell—by assumption and assignment—all right, title and interest of Debtor and/or the Estate, as tenant under the Leases, together with all fixtures, assignable leasehold improvements, and inventory located at the Lease Locations that is property of the Estate at closing (collectively, the "**Property**").

35. In view of the value of the Leases and related personal property, I sought expressions of interest from bidders for the Leases together with the related personal property.

36. To best maximize the value of the Property, I determined that the Lease Locations could be sold as a group or individually, and subject to overbid as detailed in the proposed auction procedures.

37. I am informed and believe that, before the bankruptcy filing, Debtor engaged in negotiations with Purchaser for sale and assignment of the Lease Locations. These negotiations were not concluded before the Petition Date.

38. After my appointment in this case in late April 2024, I conducted an investigation and engaged in discussions with potentially interested buyers, including Purchaser and others.

39. Purchaser submitted a written offer for the three Lease Locations and related property that I determined was the highest and best offer *provided that* it be subject to an auction with an opportunity for any third party to overbid. I entered into an Asset Purchase Agreement (the "**Purchase Agreement**") with Purchaser for a purchase price of

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

1   $5,000,000.00, subject to overbid and Court approval. A true and correct copy of the

2   Purchase Agreement is attached hereto as <u>Exhibit A</u> and incorporated herein.

3       40.     I believe that the Purchase Agreement from Purchaser is the highest and best

4   firm offer for the Property, but that an overbid auction among those potential buyers who

5   have shown interest in one or more of the Lease Locations may produce an even higher

6   overbid purchase price. I am continuing to solicit bids relating to any of the Lease Locations,

7   severally or collectively, to any interested purchaser and am providing notice of the auction

8   opportunity to everyone who has shown or shows an interest in the Lease Locations up to the

9   Prequalification Deadline (June 24, 2024). Therefore, I request approval of the sale of the

10  Property to Purchaser (subject, however, to overbid on any one or more of the Leases and

11  related personal property and causes of action), on the terms suggested in the Motion or as

12  otherwise approved by the Court.

13      41.     In addition, notice of my proposed sale of the Property and overbid

14  opportunity is being posted at Inforuptcy.com, described as the most comprehensive

15  bankruptcy assets database in the country. Inforuptcy allows trustees to list estate assets for

16  sale to a nationwide audience at no cost to the estate. According to the website, Inforuptcy

17  subscribers can search and/or receive alerts for the sale of assets.

18      42.     I am informed and believe that, Purchaser is not an insider of Debtor.

19      43.     The Purchaser appears to have a purchase money security interest in all

20  inventory, equipment, and goods it has sold to Debtor, the extent of which lien is currently

21  unknown, as Debtor did not list Purchaser as a creditor in its schedules.

22      44.     This proposed sale has been negotiated at arm's length.

23      45.     The proposed sale of the Property will bring into the Estate about

24  $5,000,000.00 and will cure all monetary defaults under the three subject leases. As such, the

25  Purchase Agreement or any overbid made at an auction will result in a significant benefit to

26  the Estate.

27  / / /

28  / / /

**Liens and Claims**

46.     The Property proposed for sale comprises two components:  three leasehold interests; and fixtures, assignable leasehold improvements, and inventory located on the Lease Locations that is property of the Estate at the time of closing.

47.     <u>Leasehold Interests</u>.  According to documents obtained by my counsel from the Orange County and Riverside County recorder's offices, there are no security interests that have been perfected against the Debtor's leasehold interests.  I am only aware of one creditor that asserts a blanket lien against all of Debtor's assets:  CP Fixtures Holdings LLC.  However, this creditor did not perfect its interest in the leaseholds.  Also, the nature, scope, and validity of this lien is disputed, and I believe in any event that this ***creditor consents to my proposed sale of the Property.***

48.     I am informed and believe that there was also a judgment lien creditor, Wells Fargo Vendor Financial Services, LLC ("**Wells Fargo**"), whose judgment lien is no longer owed and actually expired on May 7, 2024.  Counsel for Wells Fargo advised my counsel Christin Batt that Wells Fargo would terminate the judgment lien.  However, Wells Fargo's counsel later advised us that they were unable to do so because the lien expired by operation of law on May 7, 2024.

49.     I am unaware of any creditor that may have a security interest in Debtor's leases.

50.     <u>Personal Property</u>.  I am informed and believe that the personal property located at the three showrooms represents a small portion of the purchase prices and is comprised primarily of multiple large and small displays of various products that customers could order from Debtor.  I am further informed and believe that little or no inventory exists at these premises.  The displays range from small mobile displays to large, fixed displays.

51.     I am aware of the following possible interests in certain displays:

(a)     <u>Costa Mesa Location Displays</u>:  Americh, Inc., Sub-Zero Group West, Graff Faucets, and Aranelli Design, LLC.

/ / /

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

(b)    <u>Mission Viejo Location Displays</u>:  Americh, Inc. and Sub-Zero Group West.

(c)    <u>Rancho Mirage Location Displays</u>:  Americh, Inc., Sub-Zero Group West, Graff Faucets, and Sherle Wagner.

52.    I am informed and believe that the Galley asserts an interest in displays at five unidentified locations, which could include Costa Mesa, Mission Viejo, or Rancho Mirage. However, the Galley has provided no written agreement or other support of a legal interest in any displays.  Likewise, Vast Design Studio, Inc. asserts that it has displays at "all showrooms" but has provided no written agreement or other documentation to support a legal interest in any displays.

53.    The potential interest holders have provided my counsel with documents, most of which purport to be consignment agreements.  Further analysis is needed to determine whether the agreements constitute true consignments and whether the alleged consignors were required to file a UCC Financing Statement to protect their interests in the event of consignee's bankruptcy filing.

54.    My counsel is communicating with these third parties regarding such issues. Importantly, given that purchaser Ferguson Enterprises, LLC (as well as other potential purchasers) is in the same industry as Debtor—selling luxury home appliances to residential and contractor customers—the alleged consignors may actually consent to retention of the displays by Purchaser (or successful overbidder) in order to do business with Purchaser.

55.    To promptly cease accruing enormous administrative rent for the three showrooms, I request that the sale be approved now and with all proceeds to be held in a segregated account and all liens, claims, encumbrances and other interests, including without limitation claims regarding the displays ***attaching to the sale proceeds*** with the same validity, scope, priority, and perfection as they had on the personal property immediately prior to the sale. ***The disputes regarding alleged interests in any displays will be decided after the sale, and the result will apply to the funds held by me in my segregated account.*** Given that the vast majority of the sales prices pertain to the leasehold interests, these

possible lien creditors are more than adequately protected even in the event that their liens are

valid.

### Tax Analysis

56.     I am informed and believe that the sale is not expected to result in an adverse

tax impact on the estate.

### Status of the Estate and Claims

57.     By my Motion, I seek to sell leasehold interests in three Leases and the related

personal property located at such locations for a minimum of $5 million plus satisfaction of

all cure amounts under those leases.

58.     In a recently filed related motion, I seek to sell approximately 45,000 items of

personal property via negotiated sales and an online auction.  It is unknown at this time how

much money will come into the Estate as a result of these sales/auction.

59.     At this time, the creditor matrix for this case lists 4,379 creditors.  Debtor

scheduled total liabilities of $230 million.[2]  Until the claims resolution process is completed,

it will not be known what benefit may go to priority and general unsecured creditors in this

case.

60.     The only certain thing is that, if the sale of the Leases and personal property

does not proceed immediately, Purchaser may withdraw and the landlords may move for

relief from stay to repossess the premises leaving the Estate with huge amounts of

postpetition, administrative rent claims.

### Notice

61.     I have, since my appointment in April 2024, concluded negotiations with

Purchaser and entered into the Purchase Agreement.  I received no other written offer for any

of the Lease Locations, but have received expressions of interest for one or more of the Lease

Locations.  I have given notice of the Motion and the sale hearing to each party who

expressed an interest in purchasing any portion of the Property.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

---

[2]  Total liabilities comprise just under $88 million in secured claims, $97 million in priority
unsecured (customer) claims, and almost $53 million in general unsecured claims.

62.     I have also given notice of the sale to all parties requesting special notice and all entities required to be given notice under the Court-approved notice procedures. (ECF No. 86). I will also advertise the sale with Inforuptcy.

### Purchase Price

63.     The Purchase Price was negotiated at arm's length. I am unaware of any other higher and better firm offer to purchase the Property.

### Break-Up Fee

64.     The Purchase Agreement with the Break-Up Fee provision was negotiated at arm's-length, untainted by self-dealing or manipulation.

65.     When the Purchase Agreement was being negotiated, I required that the sale be subject to overbid. Purchaser requested a modest Break-Up Fee for reimbursement of actual costs of investigating the Property. Given that I am aware that there may be buyers for one or more of the Lease Locations, I agreed to the Break-Up Fee as a means to encourage bidding by offering this relatively small incentive to cover such costs.

66.     In my business judgment, the amount of the Break-Up Fee is reasonable. The Break-Up Fee is a small percentage (five percent) of the cash consideration (excluding any Cure Payment component) paid for each Lease Location. This amount is necessarily equal to or less than the Initial Overbid of $100,000.00 required per Lease Location.

67.     In addition, Paragraph 2.05 of the Purchase Agreement provides that the Break-Up Fee shall only be paid in the event that the Property is sold to a buyer other than Purchaser or Purchaser's affiliate or assignee.

68.     The Break-up Fee was a requirement to induce Purchaser to agree to be a stalking horse for the auction, which is in the best interests of the Estate.

### Assumption and Assignment

69.     In my business judgment, with approval of the sale, assumption and assignment of the Leases is in the best interests of the estate. As set forth above, the assumption and assignment of the Leases through the proposed sale of the Property, will bring into the Estate about $5,000,000.00, value that will not be realized if the Leases are not

1 assumed and assigned.  Further, failure to assume and assign the Leases will expose the

2 Estate to claims for the monetary defaults under each of the Leases.

3 <u>**Time Is of the Essence**</u>

4 70.     Time is of the essence in consummating a sale of the Lease Locations.  Given

5 the substantial equity in the Lease Locations and the large amount of claims, it is imperative

6 to promptly monetize the meaningful equity that resides in the Lease Locations.  Further, the

7 longer the Estate is required to make payment of monthly rent and other costs, it will further

8 diminish the amount that is available for distribution to creditors.  In addition, if action is not

9 taken quickly to monetize the Leases, the landlords for the Lease Locations may seek relief

10 from stay to regain possession of the premises, which, if granted, would destroy significant

11 value to the Estate.

12 71.     A two-step process of first seeking approval of the sale procedures, and only

13 after that motion were approved, to hold an auction, and then, following the auction, filing a

14 motion and holding a hearing to approve the sale, would result in extremely detrimental delay

15 to the Estate, its creditors, as well as to Purchaser.  As such, I respectfully propose that

16 combining the hearings on the sale and auction procedures is both equitable and will

17 maximize value to the Estate and its creditors.

18 I declare under penalty of perjury that the foregoing is true and correct.

19 Executed on June 3, 2024, at La Jolla, California.

20

21    /s/ Leslie T. Gladstone
Leslie T. Gladstone

22

23

24

25

26

27

28

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California  92037

# Exhibit A

# Exhibit A

ASSET PURCHASE AGREEMENT

dated as of May 28, 2024

by and between

Ferguson Enterprises, LLC, a Delaware limited liability company, or its assignee,

as the "Purchaser"

and

LESLIE T. GLADSTONE,

as the Chapter 7 Trustee of the Estate of

PIRCH, INC., debtor,

as the "Seller"

76575675;2

# ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (the "**Agreement**") is made and entered into as of May 28, 2024, by and between Ferguson Enterprises, LLC, a Delaware limited liability company, or its assignee as provided herein (the "**Purchaser**"), and LESLIE T. GLADSTONE (the "**Seller**"), solely in her role as the chapter 7 trustee of the estate of PIRCH, INC. (the "**Debtor**"). Each of the Seller and the Purchaser is a "**Party**" and collectively they are the "**Parties**" to this Agreement.

## W I T N E S S E T H :

WHEREAS, on April 19, 2024, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of California, Case No. Case 24-01376-CL7 (the "**Bankruptcy Case**"). The Seller was appointed as chapter 7 trustee of the Debtor's estate by Order entered on April 22, 2024.

WHEREAS, the Debtor previously operated a retail appliance sales business with stores located at, among others, the Lease Locations (defined below).

WHEREAS, operation of the Costa Mesa Lease Location is governed by a written commercial Lease dated October __, 2010, [*omission in original*] as amended by the First Amendment to Lease Agreement entered into as of the __ day of December 2010 [*omission in original*], the Second Amendment to Lease Agreement entered into as of the 12th day of July 2011, the Third Amendment to Lease made and entered into as of July __,2020 [*omission in original*], and the Fourth Amendment to Lease made and entered into as of December __, 2020 [*omission in original*] (collectively, the "**Costa Mesa Lease**"), by and between South Coast Trade Center 1, L.P., a California limited partnership, subsequently assigned to Soco Retail Fee Owner, LLC, a Delaware limited liability company (the "**Costa Mesa Landlord**") and the Debtor F/K/A "Fixtures Living, Inc., a California Corporation, as tenant, regarding the premises at the Costa Mesa Lease Location.

WHEREAS, on March 1, 2024, the Costa Mesa Landlord filed an action for unlawful detainer against Pirch, Inc., pre-petition and also electing to declare the lease forfeited, in *CRC SOCO, LLC vs. Pirch, Inc.*, 30-2024-01383502-CU-UD-CJC (Orange County Superior Court). On April 17, 2024, Pirch, Inc. filed a motion Pursuant to California Code of Civil Procedure § 1179 and Civil Code § 3275, requesting relief forfeiture of the Costa Mesa Lease. The action was stayed by the Debtor's bankruptcy filing.

WHEREAS, operation of the Mission Viejo Lease Location is governed by a written commercial Lease dated December 16, 2020 (the "**Mission Viejo Lease**"), by and between MV Town Center Parcels 1 & 3, L.P., a California limited partnership, and TIS Equities X, LLC, a California limited liability company (as tenants in common, as assigned to BTPROP1, LLC, a California limited liability company (the "**Mission Viejo Landlord**"), on the one hand, and the Debtor, as tenant, on the other hand, regarding the premises at the Mission Viejo Lease Location.

Whereas, the Mission Viejo Landlord filed an action for unlawful detainer against Pirch, Inc., pre-petition [and also electing to declare the lease forfeited] in [INSERT CASE NAME

1

AND NUMBER] although the complaint was not served prepetition. The action is stayed by the Debtor's bankruptcy filing. On April 17, 2024, Pirch, Inc. filed a separate prepetition action for breach of contract and for relief from forfeiture, in *Pirch v BTPROP1, LLC* 30-2024-01394032 (Orange County Superior Court) although the complaint was not served prepetition.

WHEREAS, operation of the Rancho Mirage Lease Location is governed by a written Standard Multi-Tenant Shopping Center Lease – Net made and entered into on October 12, 2009 (the "**Rancho Mirage Lease**"), by and between White Brothers Investment Company, a California general partnership, as lessor and Fixtures Living, Inc. n/k/a Pirch, Inc., as lessee relating to the premises at the Rancho Mirage Lease Location. Whereas on February 28, 2023, White Brothers Investment Company executed an Assignment and Assumption of its interest as lessor, assigning Monterey Shore Holdings, LLC, as the Lessor of the Rancho Mirage Lease ("**Rancho Mirage Landlord**").

WHEREAS, on March 29, 2024, the Rancho Mirage Landlord filed an action for unlawful detainer against Pirch, Inc., pre-petition and also electing to declare the Rancho Mirage Lease forfeited, in *Monterey Shore Holdings, LLC v. Pirch, Inc.*, Case No. UDP82400367 (Riverside Superior Court). On April 17, 2024, Pirch, Inc. filed a motion Pursuant to California Code of Civil Procedure § 1179 and Civil Code § 3275, requesting relief forfeiture of the Rancho Mirage Lease. The action was stayed by the Debtor's bankruptcy filing.

WHEREAS, the Trustee intends to assume and assign each of the Leases and, together with that, in connection with the payment of the cure payments provided for under 11 U.S.C. §365, to seek relief from the forfeiture of the Leases pursuant to *In re Windmill Farms, Inc.*, 841 F.2d 1467, 1471 (9th Cir. 1988) ("Even though the lease may have been terminated before WFI filed its Chapter 7 petition in bankruptcy, the trustee may be entitled to relief from forfeiture of the lease under California law.)

WHEREAS, on the terms and subject to the conditions set forth in this Agreement, the Seller desires to sell, transfer, and assign to the Purchaser, and the Purchaser desires to purchase, acquire, and assume from the Seller, pursuant to Sections 363 of the Bankruptcy Code, certain assets of the Debtor (more specifically described below) free and clear of all Interests, Liens and Claims, all as more specifically provided herein.

WHEREAS, the Purchaser understands that this Agreement may be one of multiple agreements being provided by the Seller to various potential purchasers of the assets of the Debtor's estate.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter contained, the Parties hereby agree as follows:

ARTICLE I.

DEFINITIONS

Section 1.01     Certain Definitions. For purposes of this Agreement, the following terms shall have the meanings specified in this Section 1.01.

76575675;2

"**Bankruptcy Code**" means Title 11 of the United States Code.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of California or such other court having jurisdiction over the Bankruptcy Case originally administered in the United States Bankruptcy Court for the Southern District of California.

"**Business Day**" means any day other than a Saturday, a Sunday, any day which is a legal holiday under the laws of the State of California, or any day on which banking institutions located in the State of California are required by law or other governmental action to close.

"**Claims**" means any and all claims as defined in Section 101(5) of the Bankruptcy Code.

"**Closing**" means the date upon which the purchase and sale of the Purchased Assets is consummated and after which possession is turned over to the Purchaser.

"**Costa Mesa Lease Location**" means the leased premises located at 3303 Hyland Avenue, Suite D, as more particularly described in Exhibit B to the Costa Mesa Lease.

"**Interest**" means any shareholder interest in the Debtor.

"**Inventory**" means as such term as defined in the California Commercial Code.

"**Law**" means any federal, state, local or foreign law, statute, code, ordinance, rule or regulation.

"**Lease Locations**" means, collectively, the Costa Mesa Lease Location, the Mission Viejo Lease Location and the Rancho Mirage Lease Location.

"**Leases**" means, collectively, the Costa Mesa Lease, the Mission Viejo Lease and the Rancho Mirage Lease.

"**Lien**" means any encumbrance, lien, Claim, charge, pledge, mortgage, deed of trust, security interest, license, option, right of first refusal, proxy, voting trust or agreement or transfer restriction under any shareholder or similar agreement regarding the Debtor's right, title, and interest in the Purchased Assets (defined below).

"**Mission Viejo Lease Location**" means the leased premises located at 28341 Marguerite Parkway, Mission Viejo, as more particularly described in Exhibit B to the Mission Viejo Lease.

"**Person**" means any individual, corporation, limited liability company, partnership, firm, joint venture, association, joint stock company, trust, trustee, unincorporated organization, Governmental Body, or other entity.

"**Rancho Mirage Lease Location**" means the leased premises located at 71905 Highway 111, Units "B" and "C", Rancho Mirage, California 92270, as more particularly described in the Rancho Mirage Lease.

76575675;2

"**Seller's Knowledge**" means, with respect to any particular matter, the Seller's actual knowledge.

## ARTICLE II.

## PURCHASE AND SALE OF ASSETS

Section 2.01    Purchase and Sale of Assets.  On the terms and subject to the conditions set forth in this Agreement, at the Closing, the Purchaser shall purchase, acquire, and accept from the Seller free and clear of all Interests, Liens and Claims, and the Seller shall sell, transfer, assign, convey, and deliver to the Purchaser all of the Debtor's right, title, and interest in, to and under the Purchased Assets free and clear of all Interests, Liens and Claims.  "**Purchased Assets**" shall mean all rights, title, and interests of the Debtor in the following:

(a)    fixtures, assignable leasehold improvements, and any Inventory located on the Lease Location premises at the Closing that is property of the Debtor's bankruptcy estate at the Closing; and

(b)    all right, title and interest of the Debtor as tenant under the Leases, together with all claims and causes of action of the Debtor arising under the Leases, including the Debtor's action filed against the landlord in the Mission Viejo Lease Location, entitled, *Pirch v BTPROP1, LLC* 30-2024-01394032 (Orange County Superior Court).

Section 2.02    Excluded Assets.  The Purchaser shall not acquire any right, title, or interest in any other assets or properties of the Seller (the "**Excluded Assets**"), including, but not limited to, the following assets and properties:

(a)    fixtures, leasehold improvements, and any Inventory located on the premises at the Closing that is not property of the Debtor's bankruptcy estate at the Closing

(b)    the Debtor's business as a going concern and all goodwill associated thereto, including but not limited to rights to payment of money for services rendered;

(c)    all accounts receivable of the Debtor and/or contracts with customers, together with all rights of collection with respect thereto;

(d)    all cash, cash equivalents, deposits, notes, prepaid expenses of the Seller relating to the Lease Locations;

(e)    any claims the Seller may have against any of the Debtor's current or former officers, directors, advisors and/or agents, including but not limited to any intercompany accounts receivable;

(f)    avoidance claims against third parties under chapter 5 of the Bankruptcy Code;

(g)     any books, records, files, customer lists, and credit records of customers if and to the extent the Seller is required by law to retain such books, records, files or lists, or if and to the extent that such records, files or lists are reasonably necessary to the administration of the estate of the Debtor;

(h)     all contracts of insurance held by the Seller;

(i)     any deposits paid by the Debtor, including but not limited to such amount as is held by the Landlord as security deposit under the Leases; and

(j)     any rights to the name Pirch, and any trademarks, logos, or other intellectual property in connection therewith.

Section 2.03     <u>Assumption of Liabilities</u>.  The Purchaser shall not be liable for and is not assuming any liabilities of the Seller whatsoever, whether related or unrelated to the Leased Locations, other than liabilities of the Seller accruing or arising from and after the Closing and related to the Leased Locations.

Section 2.04     <u>Overbid Possibility</u>.

(a)     The Seller has authority to execute this Agreement and sell the Purchased Assets only pursuant to Bankruptcy Court approval.  The approval of the sale may be subject to overbid at the sale hearing on the Bankruptcy Court's approval of this Agreement, with such minimum overbid amount being broken out by Lease Location, as follows (or such other price as is approved by the Bankruptcy Court):

(i)     Rancho Mirage Lease Location: One Million Six Hundred Thousand Dollars ($1,600,000.00) minimum

(ii)    Costa Mesa Lease Location Two Million One Hundred Thousand Dollars ($2,100,000.00) minimum; and

(iii)   Mission Viejo Lease Location: One Million Six Hundred Thousand Dollars ($1,600,000.00) minimum.

(b)     Subsequent incremental bids will be at least Twenty Thousand Dollars ($20,000.00), or such other increment as is approved by the Bankruptcy Court.

(c)     Purchaser acknowledges and agrees that one or more of the Lease Locations may become subject to an overbid and potential sale to a third-party, in which case, the Purchaser's obligation to close with respect to any remaining Lease Locations and to pay the Purchase Price and Cure Payment relating to such Leases under such remaining Lease Location(s) shall not be modified.

Section 2.05     <u>Break-Up Fee</u>.  In the event an overbid is accepted by the Seller as to any Lease Location(s) and are sold to any party other than the Purchaser or the Purchaser's affiliate or assignee, then the Seller shall pay to the Purchaser a break-up fee in the amount of not more than five percent (5%) of the cash closing price (excluding any Cure Payment component of the consideration)

5

paid by such third party for the applicable Lease Location(s) (the "**Break-up Fee**"). The Break-up Fee is in addition to the Initial Deposit as defined below, and shall only be paid in the event of a consummated sale of any Lease Locations to a party other than the Purchaser or the Purchaser's affiliate or assignee. In the event an overbid is accepted by the Seller and one or more Lease Location is sold to any party other than the Purchaser or the Purchaser's affiliate or assignee, this Agreement shall terminate with respect to such Lease Location. The Break-up Fee shall be Purchaser's exclusive remedy and shall be payable solely from the proceeds of an alternative transaction whereby a Lease Location is instead sold to a third-party bidder. The Purchaser acknowledges and agrees that the Break-up Fee remains subject to Bankruptcy Court approval.

ARTICLE III.

CONSIDERATION

Section 3.01     Purchase Price. The total consideration for the Purchased Assets shall be as follows for each Lease Location:

- Rancho Mirage Lease Location: One Million Five Hundred Thousand Dollars (**$1,500,000.00**)
- Costa Mesa Lease Location : Two Million Dollars (**$2,000,000.00**)
- Mission Viejo Lease Location: One Million Five Hundred Thousand Dollars (**$1,500,000.00**)

**Total** : Five Million Dollars (**$5,000,000.00**) (the "**Purchase Price**").

Section 3.02     Initial Deposit. An initial deposit in the amount of One Hundred Thousand Dollars ($100,000.00) (the "**Initial Deposit**"), payable to Estate of Pirch, Inc., Leslie T. Gladstone, Trustee, shall be delivered to the Seller upon execution of this Agreement by the Purchaser, and on or before May 25, 2024.

Section 3.03     Cure Payment. In connection with Purchaser's assumption and assignment of the Leases, at or before the Closing, the Purchaser shall pay all cure costs which the Bankruptcy Court, pursuant to a final and unappealable order, orders to be paid in connection with the Sellers' assignment to Purchaser of each Lease, in accordance with section 365 of the Bankruptcy Code (the "Cure Payment").

Section 3.04     Payment of the Consideration. the Purchaser shall pay:

(a)     At the Closing, to the Seller, by wire transfer of immediately available funds into an account designated by the Seller, the amount of the Purchase Price less the Initial Deposit actually received by the Seller; and

(b)     Five (5) business days prior to the Closing, to the Bankruptcy Estate the Cure Payment relating to each Lease.

6

# ARTICLE IV.

## PURCHASER INSPECTION; RIGHT OF ACCESS

Section 4.01

    (a)   <u>Purchaser's Inspection.</u> Purchaser shall have a right of inspection of each of the Lease Locations, which inspection will be completed as soon as reasonably possible following Purchaser's execution of this Agreement, but in no event more than five (5) business days following the execution of this Agreement. During such inspection, the Parties shall record photographic evidence of the condition of each Lease Location ("Condition of Premises"), and shall prepare and agree upon a detailed listing of all Inventory, fixtures and tenant improvements that will transfer to Purchaser under this Agreement (the "Inventory List.").

    (b)   Purchaser recognizes that the Debtor's business conducted at the Lease Locations has been shut down and no business is currently being conducted. Seller agrees that no sales of Inventory located at the Lease Locations shall occur following the Parties' execution of this Agreement and up through the Closing, except as specifically ordered by the Bankruptcy Court on notice to all Parties herein.

    (c)   Prior to the Closing, Purchaser shall be permitted access to each Lease Location to perform a final inspection to confirm that the condition of each Lease Location is in a similar condition to the Condition of Premises found at the time of the inspection, as well as to confirm the presence of all of the personal property that is property of the Debtor's estate listed on the Inventory List. In the event of any discrepancy found by Purchaser, the sole remedy of Purchaser should there be any discrepancy in either the Condition of the Premises or the Inventory List shall be a mutually agreed adjustment to the Purchase Price. To the extent the Parties cannot agree on the amount of any adjustment to the Purchase Price, they shall submit the issue to the Bankruptcy Court for determination, which shall be final and binding on the Parties.

    (d)   Purchaser acknowledges that, concurrently with the filing of the Sale Motion, the Seller is filing a motion with the Bankruptcy Court to determine the manner and guidelines for the sale of the Debtor's Inventory and other property and to obtain Bankruptcy Court approval regarding the rights of holders of asserted competing claims in such Inventory. The Purchaser agrees that the Inventory List shall be subject in all respects to orders that may be entered by the Bankruptcy Court including, without limitation, orders determining that any specific Inventory and/or fixtures are not property of the Debtor's estate and therefore are Excluded Assets under Section 2.02 hereunder. For the avoidance of doubt, there shall be no adjustment to the Purchase Price for any assets contained on the Inventory List that are determined to be Excluded Assets.

    (e)   <u>Purchaser's Right of Access.</u> Prior to the Closing, Seller will afford the Purchaser full and free access to and inspection of each Lease Location, subject to the Seller's receipt of reasonable advance notice from Purchaser (which in no event shall be

less than 24-hours prior written notice) regarding the date, time and Lease Location and names of persons for which access is desired.

<div align="center">ARTICLE V.</div>

<div align="center">CLOSING AND TERMINATION</div>

Section 5.01    Closing.  Subject to the satisfaction of the conditions set forth in Section 9.01 and Section 9.02 hereof (or the waiver thereof by the Party entitled to waive that condition), the Closing shall occur on or before fifteen (15) days after entry of the Sale Order (as hereinafter defined) by the Bankruptcy Court or as soon as is reasonably possible thereafter.

Section 5.02    Deliveries by the Seller.  At the Closing, the Seller shall deliver to the Purchaser:

(a)    an assignment and assumption agreement in substantially the same form as shown on Exhibit A hereto, duly executed by the Seller in recordable form;

(b)    a bill of sale and assignment in substantially the same form as shown on Exhibit B hereto, duly executed by the Seller;

(c)    all other instruments of conveyance and transfer as may be necessary to convey the Purchased Assets to the Purchaser;

(d)    Certified copy of the Sale Order, and

(e)    Such other documents, instruments, and certificates as the Purchaser may reasonably request.

Section 5.03    Deliveries by the Purchaser.  At the Closing, the Purchaser shall deliver to the Seller:

(a)    the balance of the Purchase Price in immediately available funds as set forth in Section 3.04;

(b)    an assignment and assumption agreement in substantially the same form as shown on Exhibit A hereto, duly executed by the Purchaser in recordable form;

(c)    such documents as may be reasonably requested by the Seller or the Landlord to support the financial requirements contained in Section 365 of the Bankruptcy Code; and

(d)    such other documents, instruments, and certificates as the Seller may reasonably request.

Section 5.04    Prorations.  There shall be prorated between the Seller and the Purchaser as of the Closing any personal property taxes for the current year against the Purchased Assets, any prepaid deposits (excluding the security deposit under the Leases, which shall remain property of

<div align="center">8</div>

Seller unless the security deposit is agreed to be transferred to Purchaser by Seller and the landlord for the applicable Lease Location in connection with the cure amounts payable by Purchaser, and in which case, the full amount of the deposit shall be reimbursed to Seller from Purchaser at the Closing), utilities, and any other prorated expenses. Any sales tax payable as a result of this sale shall be paid by the Purchaser. The provisions of this Section 5.04 shall survive Closing.

Section 5.05    No-Shop Provisions

(a)    Except as may be ordered by the Bankruptcy Court, including in any order on the Sale Procedures Motion entered by the Bankruptcy Court, the Seller will not, directly or indirectly, through any representative or otherwise, accept any proposal of any other person relating to the acquisition of any Lease, in whole or in part, whether directly or indirectly, through purchase, merger, consolidation, or otherwise, without offering Purchaser an opportunity to make a competing (topping) bid, in the manner set forth in the order entered by the Bankruptcy Court on the Sale Procedures Motion.

(b)    The Seller will promptly notify Purchaser regarding the existence of any offer or proposal received in writing by the Seller or its respective representatives and any other person regarding a Lease.

(c)    The Seller's obligations in this Section 5.05 shall be subject, in all respects to (x) the Seller's fiduciary duties, (y) the limited cash resources of the bankruptcy estate, and (z) orders of the Bankruptcy Court.

Section 5.06    Termination of Agreement. This Agreement may be terminated prior to the Closing by mutual written consent of the Seller and the Purchaser and/or by Order of the Bankruptcy Court. In the event of termination, under Section 2.05 or this Section 5.06, the Initial Deposit shall be fully refunded to the Purchaser within five (5) business days, and in the event of the Seller's acceptance of an overbid and consummation of a sale pursuant thereon, the Break-up Fee shall be paid to the Purchaser; provided, however, that in the event that Section 10.01 of this Agreement (Liquidated Damages) applies, neither the Initial Deposit nor the Break-Up Fee will be paid to the Purchaser.

ARTICLE VI.

REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller hereby represents and warrants to the Purchaser (in each case qualified by the Seller's Knowledge):

Section 6.01    Title to Purchased Assets. The Debtor has a valid ownership interest or leasehold interest in the Purchased Assets, which interest is property of the bankruptcy estate. Subject to the entry of the Sale Order (defined in Section 8.01), at the Closing, the Purchaser will acquire all of the Seller's right, title, and interest in the Purchased Assets, free and clear of all Interests, Liens and Claims, to the fullest extent permissible under Section 363(f) of the Bankruptcy Code.

9

Section 6.02    As Is, Where Is.

(a)    IT IS UNDERSTOOD AND AGREED THAT, UNLESS EXPRESSLY STATED HEREIN, THE SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PURCHASED ASSETS, INCLUDING BUT NOT LIMITED TO ANY WARRANTIES OR REPRESENTATIONS AS TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

(b)    THE PURCHASER ACKNOWLEDGES AND AGREES THAT UPON CLOSING THE SELLER SHALL SELL AND CONVEY TO THE PURCHASER AND THE PURCHASER SHALL ACCEPT THE PURCHASED ASSETS "AS IS, WHERE IS, WITH ALL FAULTS." THE PURCHASER HAS NOT RELIED AND WILL NOT RELY ON, AND THE SELLER IS NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTEES, STATEMENTS, REPRESENTATION OR INFORMATION PERTAINING TO THE PURCHASED ASSETS OR RELATING THERETO MADE OR FURNISHED BY THE SELLER OR ITS REPRESENTATIVES, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, EXCEPT AS EXPRESSLY STATED HEREIN. THE PURCHASER ALSO ACKNOWLEDGES THAT THE PURCHASE PRICE REFLECTS AND TAKES INTO ACCOUNT THAT THE PURCHASED ASSETS ARE BEING SOLD "AS IS, WHERE IS, WITH ALL FAULTS."

(c)    THE PURCHASER ACKNOWLEDGES TO THE SELLER THAT THE PURCHASER HAS HAD THE OPPORTUNITY TO CONDUCT PRIOR TO CLOSING SUCH INSPECTIONS AND INVESTIGATIONS OF THE PURCHASED ASSETS AS THE PURCHASER DEEMS NECESSARY OR DESIRABLE TO SATISFY ITSELF AS TO THE PURCHASED ASSETS AND ITS ACQUISITION THEREOF. THE PURCHASER HEREBY ASSUMES THE RISK THAT ADVERSE MATTERS INCLUDING, BUT NOT LIMITED TO, LATENT OR PATENT DEFECTS, ADVERSE PHYSICAL OR OTHER ADVERSE MATTERS, MAY NOT HAVE BEEN REVEALED BY THE PURCHASER'S REVIEW AND INSPECTIONS AND INVESTIGATIONS.

ARTICLE VII.

REPRESENTATIONS AND WARRANTIES OF THE PURCHASER

The Purchaser hereby represents and warrants to the Seller that:

Section 7.01    Organization and Good Standing.  The Purchaser is a limited liability company, duly organized, validly existing, and in good standing under the laws of the State of Delaware and has all requisite corporate power and authority to own, lease, and operate its properties, to carry on its business as now conducted, and to perform its obligations under this Agreement.

10

## ARTICLE VIII.

## BANKRUPTCY COURT MATTERS

Section 8.01    Bankruptcy Court Actions.  As soon as reasonably possible following the execution of this Agreement, the Seller will file with the Bankruptcy Court a motion (the "**Sale Motion**") seeking, among other things, authority to sell the Purchased Assets pursuant to certain bidding procedures.  The bidding procedures require entry of an order approving this Agreement and the transactions contemplated hereby (including the sale of the Purchased Assets to the Purchaser free and clear of all Interests, Liens and Claims, subject to overbid, and the requisite findings with respect to the Break-up Fee) should the purchase offer made by this Agreement constitute the best offer for the Purchased Assets (the "**Sale Order**").  The Seller will provide the Purchaser with an advance draft copy of the Sale Motion and proposed Sale Order prior to filing.

## ARTICLE IX.

## CONDITIONS TO CLOSING

Section 9.01    Conditions Precedent to Obligations of the Purchaser.  The obligation of the Purchaser to consummate the transactions contemplated by this Agreement is subject to the satisfaction, on or prior to the Closing, for each of the following conditions (any or all of which may be waived by the Purchaser in whole or in part to the extent permitted by applicable Law):

(a)    Each of the representations and warranties of the Seller set forth in this Agreement shall be materially true and correct;

(b)    The Seller shall have materially performed and complied with all obligations and agreements required in this Agreement to be performed or complied with by it prior to the Closing;

(c)    The Seller shall have delivered, or caused to be delivered, to the Purchaser all of the items set forth in Section 5.02; and

(d)    The Sale Order providing for the sale of the Purchased Assets to the Purchaser shall have been approved by the Bankruptcy Court and such Sale Order has not been stayed on account of any pending appeal.

Section 9.02    Conditions Precedent to Obligations of the Seller.  The obligations of the Seller to consummate the transactions contemplated by this Agreement are subject to the satisfaction, prior to or on the Closing, of each of the following conditions (any or all of which may be waived by the Seller in whole or in part to the extent permitted by applicable Law):

(a)    Each of the representations and warranties of the Purchaser set forth in this Agreement shall be true and correct in all material respects, at and as of the Closing;

76575675;2

(b) The Purchaser shall have performed and complied in all material respects with all material obligations and material agreements required by this Agreement to be performed or complied with by the Purchaser on or prior to the Closing;

(c) The Purchaser shall have delivered, or caused to be delivered, to the Seller all of the items set forth in <u>Section 5.03;</u>

(d) The Purchaser is and will be capable of satisfying the conditions contained in Section 365(f)(2)(B) of the Bankruptcy Code; and

(e) The Purchaser is and will be capable of providing adequate assurance of future performance of a lease of real property in a shopping center as required under Section 365(b)(3)(D) of the Bankruptcy Code.

ARTICLE X.

MISCELLANEOUS

Section 10.01 <u>Liquidated Damages</u>. **If the Purchaser fails to complete this purchase because of the Purchaser's default, the Seller shall retain, as liquidated damages, the Initial Deposit actually paid. The Purchaser and the Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish an amount of damages that would actually be suffered by the Seller in the event the Purchaser were to breach this Agreement. In addition, if the Purchaser fails to complete this purchase because of the Purchaser's default, the Seller shall have the option, but not the requirement, to bring an action for specific performance and thereby require performance in full of this Agreement.**

Purchaser's Initials: __EA__    Seller's Initials: _‌_

Section 10.02 <u>Further Assurances; Cooperation in Disposition of Pending Lease Forfeiture Actions</u>.

(a) Each Party hereto shall do and perform, or cause to be done and performed, all such further acts and things, and shall execute and deliver all such other agreements, certificates, instruments and documents, as any other party may reasonably request in order to carry out the intent and accomplish the purposes of this Agreement and the consummation of the transactions contemplated hereby.

(b) Without limiting Section 10.02(a), the Parties agree to cooperate and give further assurances in connection with the resolution and ultimate disposition (following the landlord's receipt of the cure payment) of the following pending proceedings relating to forfeiture of the Debtor's tenancy under the applicable Lease, each of which is stayed by the automatic stay in bankruptcy: (i) a motion for forfeiture filed by the landlord for the Costa Mesa Lease Location in an unlawful detainer action, *CRC SOCO, LLC vs. Pirch, Inc.*, 30-2024-01383502-CU-UD-CJC (Orange County Superior Court); (ii) a motion for forfeiture filed by the landlord for the Rancho Mirage Lease Location in an unlawful detainer action, *Monterey Shores Holdings, LLC vs. Pirch, Inc.*, UDPS2400367

(Riverside Superior Court); and (iii) the Debtor's complaint for *inter alia*, relief from forfeiture, *Pirch v BTPROP1, LLC* 30-2024-01394032 (Orange County Superior Court).

Section 10.03    Expenses.  Except as otherwise provided in this Agreement, the Seller and the Purchaser shall bear their own expenses, including attorney's fees incurred in connection with the negotiation, execution, and approval of this Agreement and each other agreement, document, and instrument contemplated by this Agreement and the consummation of the transactions contemplated hereby and thereby.

Section 10.04    Submission to Jurisdiction; Consent to Service of Process.  Without limiting any Party's right to appeal any order of the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any Claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby.

Section 10.05    Entire Agreement; Amendments and Waivers.  This Agreement (including the schedules and exhibits hereto) represent the entire understanding and agreement between the Parties with respect to the subject matter hereof.  This Agreement can be amended, supplemented, or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the Party against whom enforcement of any such amendment, supplement, modification, or waiver is sought.  The waiver by any Party of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach.  No failure on the part of any Party to exercise, and no delay in exercising, any right, power, or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power, or remedy by such Party preclude any other or further exercise thereof or the exercise of any other right, power, or remedy.

Section 10.06    Governing Law.  This Agreement shall be governed by and construed in accordance with the Bankruptcy Code and, to the extent not inconsistent with the Bankruptcy Code, the laws of the State of California applicable to contracts made and performed in such State.

Section 10.07    Notices.  All notices, consents, waivers, and communications hereunder given by any party to the other shall be in writing (including facsimile transmission and electronic mail) and delivered personally, by facsimile, by electronic mail, by a recognized overnight courier, or by dispatching the same by certified or registered mail, return receipt requested, with postage prepaid, in each case addressed:

If to the Purchaser to:     Ferguson Enterprises, LLC
                            Attn: Eric Ancarrow
                            751 Lakefront Commons
                            Newport News, VA 23606
                            Facsimile No.:
                            E-mail:  eric.ancarrow@ferguson.com

<table>
<tr><td>with a copy to:</td><td>John H. Thompson<br>Akerman LLP<br>750 9th Street, NW, Suite 750<br>Washington, DC 20001<br>Facsimile No.: 202-393-5959<br>E-mail: john.thompson@akerman.com</td></tr>
<tr><td>If to the Seller to:</td><td>Leslie T. Gladstone, Trustee<br>FINANCIAL LAW GROUP<br>5656 La Jolla Boulevard<br>La Jolla, CA 92037<br>Facsimile No.: (858) 454-9596<br>E-mail: leslieg@flgsd.com</td></tr>
</table>

with a copy to: John H. Thompson
Akerman LLP
750 9th Street, NW, Suite 750
Washington, DC 20001
Facsimile No.: 202-393-5959
E-mail: john.thompson@akerman.com

If to the Seller to: Leslie T. Gladstone, Trustee
FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, CA 92037
Facsimile No.: (858) 454-9596
E-mail: leslieg@flgsd.com

or such other address or addresses as the Purchaser or the Seller may from time to time designate by notice as provided herein, except that notices of changes of address shall be effective only upon receipt. All such notices, consents, waivers, and communications shall: (a) when posted by certified or registered mail, postage prepaid, return receipt requested, be effective three (3) Business Days after dispatch, (b) when facsimiled or sent by electronic mail, be effective one (1) Business Day after transmission, or (c) when delivered by a recognized overnight courier or in person, be effective upon receipt when hand delivered.

Section 10.08    Severability.  If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any law or public policy, all other terms or provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any matter materially adverse to any Party.

Section 10.09    Binding Effect.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.  Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any Person or entity not a Party to this Agreement.  Nothing in this Agreement is intended to relieve or discharge the obligations or liability of any third persons to the Seller or the Purchaser.

Section 10.10    Assignment.  The Purchaser shall have the right to assign the Purchaser's rights hereunder to an affiliate under common control with Purchaser, but any such assignment shall not relieve the Purchaser of the Purchaser's obligations herein unless the Seller expressly releases the Purchaser.

Section 10.11    Counterparts.  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.

*[Remainder of page intentionally left blank]*

76575675;2

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed, as of the date first written above.

**PURCHASER**

*Eric Ancarrow*
Ferguson Enterprises, LLC, a Delaware
limited liability company


**SELLER**

Leslie T. Gladstone, Chapter 7 Trustee
Estate of Pirch, Inc.
Case No. 24-01376-CL7

# EXHIBIT A

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT ("**Agreement**") is made and entered into this _____ day of April, 2024, by and between <u>Ferguson Enterprises, LLC, a Delaware limited liability company</u> (the "**Purchaser**"), and LESLIE T. GLADSTONE (the "**Seller**"), solely in her role as the chapter 7 trustee of the estate of PIRCH, INC. (the "**Debtor**"), with respect to the following facts. Any capitalized terms used but not defined herein are as defined in the Asset Purchase Agreement (defined below):

    A.    WHEREAS, on April 19, 2024, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of California, Case No. Case 24-01376-CL7 (the "**Bankruptcy Case**"). The Seller was appointed as chapter 7 trustee of the Debtor's estate by Order entered on April 22, 2024.

WHEREAS, the Debtor previously operated retail appliance sales business with stores located at, among others, the Lease Locations.

WHEREAS, operation of the Costa Mesa Lease Location is governed by a written commercial Lease dated October __, 2010, [*omission in original*] as amended by the First Amendment to Lease Agreement entered into as of the __ day of December 2010 [*omission in original*], the Second Amendment to Lease Agreement entered into as of the 12th day of July 2011, the Third Amendment to Lease made and entered into as of July __,2020 [*omission in original*], and the Fourth Amendment to Lease made and entered into as of December __, 2020 [*omission in original*] (collectively, the "**Costa Mesa Lease**"), by and between South Coast Trade Center 1, L.P., a California limited partnership, subsequently assigned to Soco Retail Fee Owner, LLC, a Delaware limited liability company (the "**Landlord**") and the Debtor F/K/A "Fixtures Living, Inc., a California Corporation, as tenant, regarding the premises at the Costa Mesa Lease Location.

WHEREAS, operation of the Mission Viejo Lease Location is governed by a written commercial Lease dated December 16, 2020 (the "**Mission Viejo Lease**"), by and between MV Town Center Parcels 1 & 3, L.P., a California limited partnership, and TIS Equities X, LLC, a California limited liability company (as tenants in common, as assigned to BTPROP1, LLC, a California limited liability company (the "**Landlord**"), on the one hand, and the Debtor, as tenant, on the other hand, regarding the premises at the Mission Viejo Lease Location.

WHEREAS, operation of the Rancho Mirage Lease Location is governed by a written Standard Multi-Tenant Shopping Center Lease – Net made and entered into on October 12, 2009 (the "**Rancho Mirage Lease**"), by and between White Brothers Investment Company, a California general partnership, as lessor and Fixtures Living, Inc. n/k/a Pirch, Inc., as lessee relating to the premises at the Rancho Mirage Lease Location. Whereas on February 28, 2023, White Brothers Investment Company executed an Assignment and Assumption of its interest as lessor, assigning Monterey Shore Holdings, LLC, as the Lessor of the Rancho Mirage Lease ("**Rancho Mirage Lessor**").

16

D.     The Seller and the Purchaser are parties to an Asset Purchase Agreement dated May ___, 2024 (the "**Asset Purchase Agreement**"), pursuant to which the Seller is transferring and conveying to the Purchaser all rights, title, and interests of the Debtor, as lessee, in the Leases.

THEREFORE, FOR VALUABLE CONSIDERATION, IT IS AGREED:

1.     The Seller hereby assigns to the Purchaser all of its respective right, title, and interest in and to the Leases.

2.     The Purchaser hereby accepts and assumes on and after the Closing, and agrees to discharge, pay, perform, and satisfy on and after the Closing all of the duties, liabilities, and obligations of the Debtor and/or the Seller under the Leases assigned hereby, including without limitation all amounts coming due under and all performance obligations thereunder.

3.     The Purchaser agrees to defend, indemnify, and hold the Seller and its successors, officers, directors, shareholders, employees, and assigns harmless against any and all losses or damages, actually and reasonably incurred, arising out of or in connection with the Purchaser's material failure to perform the obligations of the Debtor and/or the Seller to be performed under the Leases assigned hereby. The indemnification provisions of this <u>Section 3</u> shall survive the Closing.

4.     This Agreement is entered into pursuant to the Asset Purchase Agreement. The assignments made hereunder are made without any representations or warranties of any kind or nature.

5.     Whenever an attorney is used to obtain payment under, or to otherwise enforce, this Agreement or to enforce, declare, or adjudicate any right or obligations under this Agreement, whether by suit or by any other means whatsoever, the costs and expenses thereof, including reasonable attorneys' fees and expenses, shall be payable to the other by the non-prevailing party.

6.     This Agreement shall be governed by and construed in accordance with the laws of the State of California as an agreement made and to be performed entirely within such state.

7.     All notices to be given by any party to this Agreement shall be in writing, and shall be given by certified or registered mail, return receipt requested, postage prepaid, to the other, sent by facsimile transmission, electronic mail, or personally delivered, at the addresses set forth below (or at such other address a party has specified by like notice) and shall be deemed given when received if sent by facsimile transmission, electronic mail, or personally delivered, or if mailed as provided herein, on the third day after it is so placed in the mail.

The addresses referred to above are:

| If to the Purchaser to: | Ferguson Enterprises, LLC |
| | Attn: Eric Ancarrow |
| | 751 Lakefront Commons |
| | Newport News, VA 23606 |
| | Facsimile No.: |
| | E-mail: eric.ancarrow@ferguson.com |

with a copy to:

John H. Thompson
Akerman LLP
750 9th Street, NW, Suite 750
Washington, DC 20001
Facsimile No.: 202-393-5959
E-mail: john.thompson@akerman.com

If to the Seller to:

Leslie T. Gladstone, Trustee
FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, CA 92037
Facsimile No.: (858) 454-9596
E-mail: leslieg@flgsd.com

Any party at any time may give notice of another address in accordance with the provisions of this Section 7.

IN WITNESS WHEREOF, the parties have caused this Assignment and Assumption Agreement to be duly executed, as of the date first written above.

**PURCHASER**

Ferguson Enterprises, LLC, a Delaware
limited liability company

By: _____
Name: _____
Title: _____

**SELLER**

_____
Leslie T. Gladstone, Chapter 7 Trustee

76575675;2

(Notary Pages to be attached hereto)

## EXHIBIT B

## BILL OF SALE AND ASSIGNMENT

FOR VALUE RECEIVED, Leslie T. Gladstone (the "**Seller**"), the chapter 7 trustee of the estate of PIRCH, INC. (the "**Debtor**"), Case No. Case 24-01376-CL7, pending in the United States Bankruptcy Court for the Southern District of California, hereby sells, assigns and transfers unto Ferguson Enterprises, LLC, a Delaware limited liability company (the "**Purchaser**"), effective as of _____, 2024, and pursuant to an order of said Bankruptcy Court entered on _____, 2024, a copy of which is attached hereto as Exhibit A, all right, title, and interest of the Seller and the Debtor in and to the following assets:

      (a)      fixtures, assignable leasehold improvements, and any Inventory located on the Lease Location premises at the Closing that is property of the Debtor's bankruptcy estate at the Closing.

This Bill of Sale and Assignment is made without any representations or warranties of any kind, either express or implied.

IN WITNESS WHEREOF, I have hereunto set my hand this ____ day of _____, 2024.

 

 

_____
Leslie T. Gladstone, Chapter 7 Trustee
Estate of Pirch, Inc.
Case No. 24-01376-CL7

76575675;2