# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 24-01376-CL7 |
| PIRCH, Inc. | Chapter 7 |
| Debtor. | AWF-1 |
| | **DECLARATION OF HIROSHI KOBAYASHI IN SUPPORT OF FIRST FINANCIAL HOLDINGS, LLC'S OMNIBUS LIMITED OBJECTION TO THE TRUSTEE'S MOTIONS TO: (1) APPROVE AUCTION PROCEDURES; AND (2) SELL PERSONAL PROPERTY PURSUANT TO 11 U.S.C. § 363, FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS; AND (1) APPROVE AUCTION PROCEDURES; AND (2) SELL LEASEHOLD INTERESTS AND RELATED PERSONAL PROPERTY PURSUANT TO 11 U.S.C. § 363, FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS** |

I, HIROSHI KOBAYASHI, declare as follows:

1.  I am over the age of eighteen (18) and believe in the obligations of an oath.

2.  I am employed by First Financial Holdings, LLC dba First Financial Equipment Leasing ("First Financial") as a Chief Financial Officer ("CFO").

3.  In my capacity as a CFO, I am one of the custodians of the books, records, and files of First Financial that relate to, among other things, First Financial's business relationship with PIRCH, Inc. (the "Debtor"). I have personally worked on those books, records and files, and as to the facts below, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of First Financial, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of First Financial's business at or near the time of the acts, conditions or events to which they relate.

1  Any such document was prepared in the ordinary course of First Financial's business by a

2  person who had personal knowledge of the event being recorded and had or has a business

3  duty to record accurately such event. I make this declaration based on my personal knowledge

4  and based on the information contained in the foregoing books and records.

5      4.    I submit this declaration in support of First Financial's *Limited Objection to (A)*

6  *Trustee's Motion to (1) Approve Auction Procedures; and (2) Sell Personal Property Pursuant*

7  *to 11 U.S.C. Section 363, Free and Clear of Liens, Claims, and Interests and (B) Trustee's*

8  *Motion to (1) Approve Auction Procedures; and (2) Sell Leasehold Interests and Related*

9  *Personal Property Pursuant to 11 U.S.C. Section 363, Free and Clear of Liens, Claims, and*

10  *Interests*.

11      5.    First Financial and the Debtor entered into that certain Master Lease Agreement

12  No. 10807 dated May 25, 2022 (the "Master Lease"), by which First Financial leased various

13  pieces of equipment (hereinafter, the "Forklifts") to the Debtor under the following equipment

14  schedule (collectively, with the Master Lease, the "Lease"):  Equipment Schedule No. 10807-

15  001 dated May 25, 2022, as amended by Amendment No. 1 to Equipment Schedule No. 10807-

16  001 effective June 8, 2022 ("Schedule 1").  A true and accurate copy of the relevant portions

17  of the Lease is attached hereto as **Exhibit 1**.

18      6.    On May 31, 2022, First Financial caused a Uniform Commercial Code ("UCC")

19  Financing Statement as to the Forklifts to be filed with the California Secretary of State (the

20  "UCC-1 Filing").  Then, on June 10, 2022, First Financial filed a UCC Amendment to update

21  the UCC-1 Filing (the "UCC-3 Filing Amendment", and together with the UCC-1 Filing, the

22  "UCC Filings").  A true and accurate copy of the UCC Filings is annexed hereto as **Exhibit 2**.

23      7.    Debtor owes pre- and post-petition rent on the Lease.

24                           *[remainder of page is intentionally left blank]*

25

26

27

28

2

1      I declare under the penalty of perjury under the laws of the United States of America

2  that the foregoing is true and correct.

3      Executed this 7th day of June 2024.

4  Hiroshi Kobayashi

5  Chief Financial Officer

6  First Financial Holdings, LLC dba First Financial
Equipment Leasing

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# EXHIBIT 1

This is a copy view of the Authoritative Copy h by the designated custodian

**FIRST FINANCIAL**
EQUIPMENT LEASING

# MASTER LEASE AGREEMENT
# NO. 10807

**MASTER LEASE AGREEMENT** dated May 25, 2022 by and between First Financial Holdings, LLC dba First Financial Equipment Leasing ("Lessor"), a Delaware limited liability company, with an office located at 750 The City Drive S., Orange, CA 92868 and Pirch, Inc. ("Lessee"), a California corporation. In consideration of the mutual promises and covenants described below, the parties agree as follows (capitalized terms not otherwise defined herein are defined in Section 16.11):

## 1. LEASE

Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, the hardware, software and/or other equipment (the "Equipment") described in the Equipment Schedule(s), substantially in the form attached hereto as Exhibit A, ("Schedule(s)"), referencing this Master Lease Agreement ("Agreement"), which shall be deemed incorporated by such reference into and a part of such Schedule. Each Schedule identified as being part of this Agreement incorporates the terms of this Agreement and constitutes a separate lease agreement. The Agreement and a Schedule taken together may be referred to herein as the "Lease". In the event of a conflict between this Agreement and any Schedule, the terms of the Schedule shall prevail. This Agreement and any related Schedule(s) shall be in force and binding upon Lessee and Lessor only after being duly executed by authorized signers of both Lessee and Lessor. Neither this Agreement nor any Schedule hereto may be cancelled or terminated except as expressly provided herein or therein. The Lease may not be terminated by Lessee prior to the expiration of the Initial Term, unless otherwise provided in any Schedule.

### 1.1 EQUIPMENT PROCUREMENT

Lessee has ordered or shall order the Equipment pursuant to one or more purchase orders or purchase contracts placed by Lessee or Lessor together ("Purchase Order"), with the Supplier, which Purchase Order if provided by Lessee shall be promptly delivered to Lessor. Subject to Lessor's approval of such Equipment, as evidenced by its preparation and delivery to Lessee for signature of a Schedule relating to such Equipment, Lessee shall be deemed to have assigned to Lessor all Lessee's right, title and interest in and to the Equipment and the Purchase Order; provided that Lessor shall have no obligations under the Purchase Order. Lessee shall execute and return to Lessor (a) each Schedule within five (5) days of receipt of same, and (b) if the Equipment is accepted after inspection, each Commencement Certificate, in the form attached hereto as Exhibit B, within five (5) days of receipt of the applicable Equipment. If within ten (10) days of receipt of the Equipment, Lessee has failed to either notify Lessor of Lessee's rejection of the Equipment or deliver to Lessor a Commencement Certificate, Lessor may, in its discretion, deem the Equipment accepted by Lessee, which date shall be deemed the Acceptance Date. If the Lessee rejects the Equipment or if for any other reason the lease transaction in respect of the Equipment is not consummated within ten (10) days of Lessee's receipt of Equipment or such longer period as Lessor shall in its sole discretion approve, (i) Lessee shall remain solely liable to pay Supplier in accordance with the Purchase Order issued to Supplier by Lessee or Lessor, and (ii) upon receipt of satisfactory evidence of such payment by Lessee, Lessor shall assign to Lessee, without warranty, its right, title and interest in and to the Equipment and the Purchase Order.

## 2. TERM

A Schedule commences and Lessee's obligation to pay Rent begins on the Acceptance Date. Unless and until Lessee provides Lessor with an executed Commencement Certificate reflecting the Acceptance Date, or the Equipment is deemed accepted as provided in Section 1.1, above, Lessor will not be obligated to disburse payment to Supplier(s). The Initial Term of each Schedule is reflected on the Schedule and begins on the first day of the first Rent Interval (either a calendar quarter or a calendar month as specified in the Schedule) following the Acceptance Date.
Each Schedule is effective from the date thereof and shall remain in force until terminated pursuant to the terms set forth herein. The Initial Term extends for ninety (90) days (the "Extended Term") at the rental rate stated in the Schedule unless Lessee provides Lessor with written notice of Lessee's election not to extend the Initial Term at least ninety (90) days, but not more than one hundred eighty (180) days, prior to the expiration of the Initial Term.

## 3. RENT AND PAYMENT

The Rent payable is shown on the Schedule(s). Rent is due and payable in advance, in immediately available funds, on the first day of each Rent Interval to Lessor or other designated payee and at the location specified in Lessor's invoice. Pro-Rata Rent is due and payable when invoiced. If any payment required by the Lease is not made when due, Lessee will pay a late charge equal to the lesser of five percent (5%) of such delinquent amount or the maximum permitted by law. If Lessor shall at any time accept Rent after it shall become due or shall accept less than the total amount due, such acceptance shall not constitute a release or an accord and satisfaction of any greater sum due, nor shall such acceptance be construed as a waiver of any or all of Lessor's rights hereunder.

## 4. END OF TERM

At the expiration of the Initial Term, or if extended, at the expiration of the Extended Term, Lessee shall, upon not less than ninety (90) nor more than one hundred eighty (180) days written notice sent via certified mail, return receipt requested to Lessor elect to: (a) return all but not less than all of the Equipment pursuant to the terms of the Lease and Lessee will pay to Lessor any remaining rents and other amounts due on a Schedule, at which time the Lease will be terminated ("Return Option"); or (b) purchase all but not less than all of the Equipment from Lessor for its Fair Market Value at which time the Lease will be terminated ("Purchase Option"); or (c) continue leasing all but not less than all of the Equipment on a Renewal basis at the rental rate set forth in the Schedule ("Renewal Option"). If Lessee has not elected the Return Option or Purchase Option by the date notice is required, Lessee will be deemed to have elected the Renewal Option. If an Event of Default or an event that with notice or passage of time or both would become an Event of Default has occurred and is continuing, Lessee will be deemed to have elected the Renewal Option, subject to Lessor's rights and remedies under the Master Lease Agreement with respect to the occurrence of an Event of Default, which shall supersede any option described in this paragraph. If the Renewal Option is elected or deemed elected, the term of the Lease will continue subject to termination by either Lessor or Lessee at the end of any month, provided at least ninety (90) days prior written notice is delivered to the other party. Notwithstanding delivery of proper notice of termination or timely election of the Return Option, rent shall continue to accrue and be payable at the rate set forth in any Schedule until all of the Equipment has been properly returned by Lessee in accordance with the terms of the Master Lease Agreement.

DocuSign Envelope ID: FEAB4FE8-87CB-409D-B2FF-27BF2BDC6E79

This is a copy view of the Authoritative Copy h by the designated custodian

## 5. SELECTION, WARRANTIES, AND UCC ACKNOWLEDGMENT

### 5.1 SELECTION

Lessee represents and acknowledges that (a) the Equipment is of a size, design, capacity and provided by Supplier(s) selected by it, and that it is satisfied that the Equipment is suitable for its purposes and (B) Lessor is not obligated or bound by any promises, representations or warranties, oral or written made by such Supplier. The Equipment is being leased for commercial or business purposes only, and will not be used for consumer, personal, home, or family purposes. **LESSEE LEASES THE EQUIPMENT AS IS, AND, NOT BEING THE SUPPLIER OF THE EQUIPMENT, THE SUPPLIER''S AGENT, CO-VENTURER, PARTNER OR PRINCIPAL OR THE SUPPLIER'S AGENT, LESSOR SHALL NOT BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM THE INSTALLATION, OPERATION OR OTHER USE, OR DEINSTALLATION OF THE EQUIPMENT, INCLUDING ANY DIRECT, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OR LOSS.**

### 5.2 INTELLECTUAL PROPERTY

Lessee acknowledges that neither this Agreement nor any Lease conveys any explicit or implicit license for the use of software or other intellectual property of the Supplier(s) or its affiliates relating to the Equipment and that such license rights, to the extent they exist, are contained in separate documentation entered into between Lessee and Supplier(s) or other persons. **LESSOR MAKES NO WARRANTIES OR REPRESENTATIONS WHATSOEVER WITH RESPECT TO THE INTELLECTUAL PROPERTY RIGHTS, INCLUDING ANY PATENT, COPYRIGHT AND TRADEMARK RIGHTS, OF ANY THIRD PARTY WITH RESPECT TO THE EQUIPMENT, WHETHER RELATING TO INFRINGEMENT OR OTHERWISE.** Lessor shall, when reasonably requested in writing by Lessee, provided there exists no Event of Default or event that, with passage of time, notice or both would become an Event of Default and an indemnity satisfactory to Lessor is delivered by Lessee, and at Lessee's sole cost and expense, enforce rights of indemnification, if any, for patent, copyright or other intellectual property infringement obtained from the Supplier of the Software under any agreement for purchase of the Equipment. If notified promptly in writing of any action brought against Lessee based on a claim that the Equipment infringes a United States patent, copyright or other intellectual property right, Lessor shall promptly notify the Supplier thereof for purposes of exercising, for the benefit of Lessee, Lessor's rights with respect to such claim under any such agreement.

### 5.3 LESSOR COVENANT

If no Event of Default has occurred, Lessee's quiet enjoyment and peaceful possession of the Equipment shall not be interrupted by Lessor, its Assignee or Secured Party.

### 5.4 DISCLAIMER OF WARRANTIES

**THE AFFIRMATIVE WARRANTIES SET FORTH ABOVE ARE IN LIEU OF ALL OTHER WARRANTIES OF LESSOR. LESSOR MAKES NO OTHER WARRANTIES, EXPRESSED OR IMPLIED, *AND DISCLAIMS ALL WARRANTIES* AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE DESIGN OR THE CONDITION OF THE EQUIPMENT, ITS *MERCHANTABILITY, FITNESS, CAPACITY, OR SUITABILITY FOR ANY PARTICULAR PURPOSE,* THE QUALITY OF THE MATERIAL OR WORKMANSHIP OF THE EQUIPMENT, OR CONFORMITY OF THE EQUIPMENT TO THE PROVISIONS AND SPECIFICATIONS OF ANY PURCHASE ORDER OR ORDERS RELATING THERETO. THE EQUIPMENT IS LEASED "AS IS" AND ALL RISKS WITH RESPECT TO THE EQUIPMENT ARE TO BE BORNE BY LESSEE. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, LESSOR SHALL NOT BE LIABLE TO LESSEE FOR ANY LIABILITY, CLAIM, LOSS, DAMAGE OR EXPENSE OF ANY KIND OR NATURE (INCLUDING STRICT LIABILITY IN TORT) CAUSED DIRECTLY OR INDIRECTLY BY THE EQUIPMENT, ANY INADEQUACY THEREOF FOR ANY PURPOSE, ANY DEFICIENCY OR DEFECT THEREIN, WHETHER KNOWN OR UNKNOWN TO LESSOR. IN ANY EVENT, LESSOR SHALL NOT BE LIABLE TO LESSEE FOR ANY LOSS OF BUSINESS OR ANY OTHER INCIDENTAL OR CONSEQUENTIAL LOSS OR DAMAGE RESULTING FROM ANY CAUSE WHATSOEVER. LESSEE ACKNOWLEDGES THAT LESSEE HAS SELECTED THE SUPPLIER OF THE EQUIPMENT AND THAT LESSOR HAS NOT RECOMMENDED SUPPLIER. LESSOR MAKES NO WARRANTY AS TO TREATMENT OF THIS LEASE FOR TAX OR ACCOUNTING PURPOSES.**

### 5.5 ASSIGNMENT OF WARRANTIES

Lessor hereby assigns to Lessee any and all Supplier's warranties, to the extent such are assignable, and any other rights that are assignable as Lessor may have against the Supplier of the Equipment. Lessee acknowledges that if it has any claims regarding the Equipment or any other matter arising from Lessee's relationship with the Supplier, Lessee must assert them against the Supplier and not Lessor, at Lessee's sole expense.

### 5.6 UCC ACKNOWLEDGMENT

Lessee acknowledges that it has received and approved any written "Supply Contract" covering the Equipment purchased from the Supplier for lease and Lessor has informed or advised Lessee, either previously or by this Lease, of the following: (a) the identity of the Supplier; (b) that Lessee may have rights under the Supply Contract; and (c) that Lessee may contact the Supplier for a description of any such rights. This Lease is a "Finance Lease." The terms "Finance Lease," "Supplier" and "Supply Contract" as used in this Lease shall have the meanings ascribed to them in Article 2A of the UCC and shall have no effect on any tax or accounting treatment of the Lease. This provision survives termination of the Lease. In the event any Lease is determined by a court of competent jurisdiction to be a secured loan or transaction other than a true lease, Lessee grants to Lessor a first priority security interest in the Equipment.

## 6. OWNERSHIP, RELOCATION, SUBLEASE, ASSIGNMENT AND QUIET ENJOYMENT

### 6.1 OWNERSHIP

Unless the Lease otherwise expressly provides, Lessor shall retain sole ownership and title of the Equipment. Lessee holds the Equipment subject and subordinate to the rights of the Lessor, any Assignee and any Secured Party. Except as provided in Sections 6.3 and 8.2, Lessee will, at its expense, keep the Equipment free and clear of any liens, claims or encumbrances of any kind (other than those voluntarily created by Lessor or resulting solely from claims unrelated to this Lease against Lessor) and will indemnify and hold harmless Lessor, any Assignee and Secured Party from and against any loss caused by Lessee's failure to do so. To the extent that Software subject to this Lease may also be the subject of a license agreement between the Supplier and Lessee, Lessee acknowledges that the license to use the Software is being provided to Lessee solely because of payments made by Lessor to the Supplier and, accordingly, Lessee agrees that Lessor has an interest in the license. Lessee agrees that it will not surrender, terminate, transfer or modify the license agreement without obtaining the prior written consent of Lessor.

This is a copy view of the Authoritative Copy h
by the designated custodian

## 6.2 SOFTWARE, SOFTWARE LICENSE FEES, PROFESSIONAL AND IMPLEMENTATION SERVICES

In the event that Lessor agrees to finance the cost of professional services ("Services") and software license fees ("License Fees") for software ("Software") as described in the Schedule and Commencement Certificate(s). Lessee acknowledges that the Software is licensed to Lessee from, and Services are being provided directly to Lessee by the Equipment supplier or other third party entity ("Suppliers") pursuant to the terms and conditions of separate software and services agreements between the Suppliers and Lessee ("Agreements").  Lessor is not a party to nor has any obligation under the Agreements and has no interest in the Services or Software, except as described in the Schedule. Lessee's obligation to pay the periodic Rent hereunder will not be affected by any representation made by Suppliers, or by any discontinuance or failure of the Suppliers to provide Services or supply Software in accordance with the terms of the Agreements.  If the Services or the Software are unsatisfactory for any reason, Lessee will make any claims solely against the Suppliers, as applicable, and will continue to pay Lessor all amounts payable under the Schedule.  Upon an Event of Default, or upon the expiration or termination of the Schedule, Lessee will assign to Lessor, all of Lessee's rights and interests in the Software, subject  to the prior consent of the Suppliers if required by the License Agreement.

## 6.3 ASSIGNMENT, RELOCATION AND SUBLEASE BY LESSEE

Upon at least sixty (60) days prior written notice to Lessor, Lessee may assign or sublease the Equipment to any party, or relocate the Equipment to any location within the continental United States, provided that Lessor, Assignee, and Secured party, in such parties' sole discretion, have approved in writing such assignment, sublease, or relocation, and provided further that  (a) all costs of any nature whatsoever (including, without limitation, any additional taxes, fees, insurance costs, and expenses associated with filing new precautionary UCC financing statements) resulting from any relocation, assignment, or sublease shall be borne solely by Lessee; (b) any assignment or sublease shall be made expressly subject and subordinate to the terms of this Agreement and the applicable schedule; and (c) Lessee shall assign its rights under such assignment or sublease to Lessor, Assignee, or Secured Party as additional collateral and security for Lessee's obligations hereunder.  In connection with any relocation, assignment, or sublease, Lessee and its assigns or sublessee shall cooperate with Lessor in taking all action necessary to protect the title of Lessor or Assignee and the interest of any Secured Party to and in the Equipment. Any assignment, sublease, pledge, hypothecation or transfer relating to the Lease or Equipment made by Lessee without Lessor's written consent shall be void. No relocation, assignment, or sublease shall modify or release any of Lessee's obligations under the relevant Schedule and this Agreement.  Subject to the foregoing, this Lease inures to the benefit of and is binding upon, the successors and assigns of the parties hereto.

## 6.4 ASSIGNMENT BY LESSOR

LESSOR MAY ASSIGN, SELL OR OTHERWISE TRANSFER ANY OF ITS RIGHTS IN THIS AGREEMENT, ANY SCHEDULE AND/OR THE EQUIPMENT TO AN ASSIGNEE OR SECURED PARTY.  LESSEE HEREBY CONSENTS TO SUCH ASSIGNMENT, SALE OR OTHER TRANSFER**. In the event of such an assignment, sale or other transfer, the term "Lessor" as used in the Lease will mean the Assignee and/or any Secured Party; however, any sale, assignment or other transfer by Lessor will not, without Lessee's consent relieve Lessor of its obligation under section 5.3, above or impose on Lessee any duties other than those set forth in this Lease. Lessee acknowledges that any assignment complying with this section, will not materially change Lessee's duties or materially increase the burdens or risks imposed on Lessee.  Lessee also agrees that: (a) The Secured Party or Assignee will be entitled to exercise all of Lessor's rights, but will not be obligated to perform any of the obligations of Lessor.  The Secured Party or Assignee will not disturb Lessee's quiet enjoyment of the Equipment so long as no Event of Default has occurred and is continuing and the Secured Party or Assignee continues to receive all Rent payable under the Schedule; (b) Lessee will pay unconditionally all Rent and all other amounts payable to the Secured Party or Assignee without set-off, abatement or reduction, despite any defense or claim against Lessor.  Lessee reserves its right to have recourse directly against Lessor for any defense or claim; (c) Lessee will provide Lessor with a copy of any notices sent by Lessee to the Secured Party or Assignee; (d) Subject to and without impairment of Lessee's leasehold rights in the Equipment, Lessee holds the Equipment for the Secured Party or Assignee to the extent of the Secured Party's or Assignee's right in that Equipment; and (e) Lessee shall at Lessor's request, execute and deliver to Lessor, Assignee or Secured Party, a Notice and Acknowledgement of Assignment, substantially in the form attached hereto as Exhibit C, reciting Lessee's obligations under the Lease.

## 7. NET LEASE, TAXES AND FEES, AND INSURANCE

### 7.1  NET LEASE

Each Schedule constitutes a net lease, with Lessee solely responsible for the payment of all applicable taxes, fees and assessments, and costs of maintaining and insuring the Equipment.  Lessee shall be solely responsible for all costs and expenses of every nature arising out of the possession, use, and operation of the Equipment.  **UPON LESSOR'S RECEIPT OF AN EXECUTED COMMENCEMENT CERTIFICATE OR IF THE EQUIPMENT IS DEEMED ACCEPTED AS PROVIDED IN SECTION 1.1, ABOVE, LESSEE'S OBLIGATION TO PAY RENT AND ALL OTHER SUMS DUE HEREUNDER SHALL BE ABSOLUTE AND UNCONDITIONAL AND SHALL NOT BE SUBJECT TO ANY SETOFF, ABATEMENT, COUNTERCLAIM, RECOUPMENT, DEFENSE, OR ANY OTHER RIGHT OR CLAIM THAT LESSEE MAY HAVE AGAINST LESSOR.  TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES THE FOLLOWING RIGHTS: (A) RIGHT TO CANCEL OR TERMINATE THE LEASE, (B) RIGHT TO REJECT THE EQUIPMENT, UNLESS EXPRESSLY PROVIDED HEREIN, (C) RIGHT TO REVOKE ACCEPTANCE OF THE EQUIPMENT, (D) RIGHT TO RECOVER DAMAGES FROM LESSOR FOR ANY BREACH OF WARRANTY, (E) RIGHT TO RECOVER ANY CONSEQUENTIAL DAMAGES AND ALL RIGHTS UNDER UCC SECTIONS 2A 508-522.**  Except as expressly provided herein, neither this Agreement, nor any Schedule, shall terminate nor shall the obligations of Lessee be affected by reason of any defect in, or any loss or destruction of the Equipment or any portion of the Equipment from any cause whatsoever, or the interference with the use thereof by any private person, corporation, other business entity or governmental authority or as a result of any war, riot, insurrection or Act of God.  It is the express intention of Lessor and Lessee that all Rent payable by Lessee under each Schedule shall be, and continue to be payable in all events throughout the term of the Schedule.

### 7.2  TAXES AND FEES

All fees, assessments, penalties, interest, and taxes, except those taxes based on Lessor's taxable income, which may now or hereafter become due or are imposed upon the ownership, sale, lease, possession and/or use of the Equipment are to be paid by Lessee, subject to this section.  Unless otherwise agreed in writing or otherwise required by law, Lessor will file all personal property tax returns for the Equipment and Lessee will reimburse Lessor for property taxes within thirty (30) days of receipt of an invoice.  Lessor is not responsible for contesting any valuation of, or tax imposed on, the Equipment and will not be liable or accountable to Lessee with regard thereto.  Lessee's obligations in this Section 7.2 shall survive the termination and/or expiration of the Lease. Lessee shall indemnify and hold harmless Lessor and its Assignees from and against any fees, assessments, penalties, interest and taxes which Lessee is required to pay hereunder.

DocuSign Envelope ID: FEAD4F123-97CB-409D-B2F1-277DF2DDC8E79

This is a copy view of the Authoritative Copy h
by the designated custodian

## 7.3 INSURANCE

While the Equipment is in transit and throughout the duration of the Lease, Lessee at its own expense shall maintain (a) comprehensive public liability insurance (naming Lessor and any Assignee or Secured Party as additional insured) for bodily injury and property damage resulting from the maintenance, use or transport of the Equipment and (b) liability insurance (naming Lessor and any Assignee or Secured Party as additional insured) effective upon delivery of the Equipment. Lessee will, at its own expense, carry and maintain comprehensive general liability insurance including products/completed operations liability insurance with regard to each item of Equipment against risks customarily insured against in the Lessee's normal course of business. Such risks will include, without limitation, the risks of death, bodily injury and property damage associated with the Equipment. The amount of such general liability insurance will not be less than **$1,000,000** per occurrence and (c) property and casualty insurance (naming Lessor and any Assignee or Secured Party as loss payee) covering all risks of loss or damage to the Equipment for any cause whatsoever including, without limitation, fire and theft. All insurance will be from an insurer(s) and in a form and amount satisfactory to Lessor. Lessee shall deliver to Lessor the original policies or certificates of such insurance (and each renewal or replacement thereof) and evidence of the payment of the premiums of such insurance policies. All policies will provide that no cancellation, expiration or material modification of such insurance shall be effective without at least thirty (30) days prior written notice to Lessor and unless otherwise agree by Lessor shall be on form ACORD 23. Such insurance obligations of Lessee will survive the expiration or other termination of the Schedule with regard to claims which relate back to events occurring during the lease term of the Schedule. All policies for such insurance will name the Lessor and Lessor's Assignee as additional insureds as their interests may appear, and will provide Lessor with not less than thirty (30) days prior written notice of cancellation or material alteration. In the event Lessee fails to provide adequate insurance as described above, Lessor may obtain property coverage to insure Lessor's interest in the Equipment, and Lessee shall pay Lessor additional amounts as invoiced by Lessor in addition to Rent and all additional amounts due under a Schedule. Such insurance will not cover the Lessee's interests, will not include liability coverage, and may be more expensive than a policy placed by Lessee. Additionally, the payment for coverage placed by Lessor may result in additional profit to Lessor. Lessee may cancel the coverage placed by Lessor, and Lessee's obligation to pay for same, by providing evidence of insurance as provided above.

# 8. CARE, USE AND MAINTENANCE, ATTACHMENTS AND RECONFIGURATIONS, AND INSPECTION BY LESSOR

## 8.1 CARE, USE AND MAINTENANCE

Lessee will maintain the Equipment in good operating order and appearance, protect the Equipment from deterioration, other than normal wear and tear, and will not use the Equipment for any purpose other than that for which it was designed. If commercially available, Lessee will maintain in force, at Lessee's expense, a standard maintenance contract with the Supplier of the Equipment, or another party acceptable to Lessor and, upon Lessor's request, will provide Lessor with a complete copy of that contract. If Lessee has the Equipment maintained by a party other than the Supplier, Lessee agrees to pay any costs necessary for the Supplier to bring the Equipment to then current release, revision, and engineering change levels, and to re-certify the Equipment as eligible for Supplier's maintenance upon expiration or termination of the Lease. In the event that the Lease term would have otherwise expired or terminated, Lessee's obligation to pay Rent will continue on a month-to-month basis at the rate set forth in the Schedule until the Equipment is placed in the condition in which it is required to be maintained hereunder and is certified as eligible for Supplier's maintenance. Lessee warrants that the Equipment will be kept by Lessee in its sole possession and control, will be used only by qualified personnel who are covered by professional liability insurance in amounts and against risks customarily insured against in the application and use of the Equipment, and will be in compliance with: (a) all applicable laws, statutes, regulations, and orders of any governmental body having the power to regulate the Equipment or its use, and (b) the Manufacturer's express warranties, specifications, established operating procedures, and anticipated use of the Equipment. Lessee will obtain such licensing and registration of the Equipment as required by federal, state or local law or regulation. Any costs of such compliance, licensing and registration will be borne by Lessee. Maintenance: Lessee's obligation regarding the maintenance of the Equipment will include, without limitation, all maintenance and repair recommended or advised either by the manufacturer, government agencies, or regulatory bodies and those commonly performed by prudent business and/or professional practice.

## 8.2 ATTACHMENT AND RECONFIGURATION

Lessee shall not make any additions, attachments, alterations or improvements to the Equipment without the prior written consent of Lessor, which shall not be unreasonably withheld. Any addition, attachment, alteration or improvement to any item of Equipment shall belong to and become the property of Lessor unless, at the request of Lessor, it is removed prior to the return of such item of Equipment by Lessee. Lessee shall be responsible for all costs relating to such removal and shall restore such item of Equipment to the condition and value required by the Lease. Otherwise, upon obtaining prior written consent of Lessor, Lessee may perform a Reconfiguration and install Attachments on the Equipment. In the event of such a Reconfiguration or Attachment, Lessee shall, upon return of the Equipment, at its expense, restore the Equipment to the original configuration specified on the Schedule in accordance with the Supplier's specifications and in the same operating order, repair and appearance as when installed (normal wear and tear excluded). If any parts are removed from the Equipment during the Reconfiguration or Attachment, the restoration will include, at Lessee's option, the installation of either the original removed parts or Like Parts. Alternatively, with Lessor's prior written consent, Lessee may return the Equipment with any Attachment or upgrade. If any parts of the Equipment are removed during Reconfiguration or Attachment, Lessor may require Lessee to provide additional security, satisfactory to Lessor, in order to ensure performance of Lessee's obligations set forth in this Subsection. Neither Attachments nor parts installed on Equipment in the course of Reconfiguration shall be accessions to the Equipment.

Lessee acknowledges that, among other reasons, Lessor may withhold its consent to a proposed Reconfiguration or Attachment, and such withholding of consent shall be reasonable, if any of the following are true: (a) the Reconfiguration or Attachment adversely effects Lessor's tax benefits relating to the Equipment; (b) the Reconfiguration or Attachment is not capable of being removed without causing damage to the Equipment, or (c) if the Supplier does not offer at the time of the Reconfiguration or Attachment, on a commercial basis, a means for the removal of the additional items.

## 8.3 INSPECTION BY LESSOR

Upon Lessor's request, Lessee, during reasonable business hours and subject to Lessee's reasonable security requirements, will make the Equipment and its related log and maintenance records available to Lessor for inspection at Lessee's cost.

DocuSign Envelope ID: 4FAB4FE6307Gd-09D-B2F42-70F16D0c6e79   Entered 06/07/24 12:14:17   Doc 173-1   Pg. 9 of
29
Case 24-01376-CL   Doc 09D-Filed 06/07/24

This is a copy view of the Authoritative Copy h
by the designated custodian

## 9. REPRESENTATIONS AND WARRANTIES OF LESSEE

Lessee represents and warrants that for the Agreement and each Schedule: (a) The execution, delivery and performance of Lessee have been duly authorized by all necessary corporate action; (b) The individual executing such documents and all related documents was duly authorized to do so; (c) The Agreement and each Schedule constitute legal, valid and binding agreements of Lessee enforceable in accordance with their terms; (d) The Equipment is personal property and when installed and used by Lessee will not be or become fixtures under applicable law; and (e) The information provided by Lessee to Lessor regarding Lessee's financial condition and business operations is complete, truthful and accurate.

## 10. DELIVERY AND RETURN OF EQUIPMENT

Lessee is solely responsible for all costs of transportation to Lessee's premises, in-transit insurance and installation of the Equipment. If Lessee elects to return the Equipment as provided for in the Lease, Lessee will, at Lessor's instructions and at Lessee's expense (including the cost of transportation, rigging and in-transit insurance), have the Equipment de-installed, audited by a Supplier as authorized by Lessor, packed and shipped in accordance with the Supplier's specifications and returned to Lessor in the same operating order, repair and appearance as when installed (normal wear and tear excluded), and with all engineering changes to the Equipment prescribed by the Supplier prior to the termination of Lessee's right of possession. The Equipment will be shipped to a location within the continental United States as directed by Lessor. All items returned to Lessor in addition to the Equipment become the property of Lessor. Lessee, at its expense, shall make any repairs necessary for the Supplier to certify the Equipment as eligible for the Supplier's standard maintenance contract upon its return and shall have the Equipment certified as eligible for the same. At the time the Equipment is returned, Lessee shall provide to Lessor a letter from the Supplier certifying such maintenance eligibility, provided that a maintenance contract is available for such Equipment.

## 11. LABELING

Upon Lessor's request, and at Lessee's expense, Lessee will mark the Equipment indicating Lessor's interest therein. Lessee will keep all Equipment free from any other marking or labeling which might be interpreted as a claim of ownership by anyone other than Lessor.

## 12. INDEMNITY

Lessee assumes liability for and will indemnify, hold harmless and defend Lessor, any Assignee and any Secured Party (including any officers, directors, members or employees of such entities) from and against any and all claims, losses, costs, expenses, damages and liabilities, including attorneys' fees, of every kind or nature (including, without limitation, claims based upon strict liability) arising out of this Lease, any Schedule or the ownership (including, without limitation, any claim for patent, trademark or copyright infringement), selection, possession, leasing, operation, control, use, condition (including latent and other defects, whether or not discoverable by Lessee or Lessor), maintenance, delivery, return or other disposition of the Equipment or for any interruptions of service, loss of business or special, incidental or consequential damages. Lessee's assumptions and obligations under this Section 12 shall survive the expiration, cancellation or termination of the Lease.

### 12.1 TAX INDEMNITY

This Lease has been entered into, and the Equipment has been acquired by the Lessor, on the basis that Lessor and/or any persons, firms, corporations or other entities to which Lessor transfers or has transferred title to all or any portion of the Equipment (the "Owner") shall be entitled to such deductions, credits and other benefits as are provided to an owner of property (the "Tax Benefits"), including, without limitation, the accelerated cost recovery or depreciation deduction on the Equipment under various Sections of Internal Revenue Code of 1986 as amended from time to time (the "Code") based upon such depreciable lives, averaging conventions, methods of depreciation and other accounting methods as the Owner elects for tax purposes, and the deduction under Section 163 of the Code in the full amount of any interest paid or accrued by the Owner in accordance with the Owner's method of accounting for tax purposes with respect to any indebtedness incurred by the Owner in financing its purchase of the Equipment. (As used herein the term "Owner" includes Lessor in the event Lessor has not transferred title to all of the Equipment.) If as a result of any act or failure to act of Lessee or any physical damage to or loss, governmental taking or destruction of the Equipment, the Owner (a)shall lose, have recaptured or disallowed, or not be entitled to the full use of the Tax Benefits, or (b)shall have its tax increased or accelerated on account of re-computation or recapture of such Tax Benefits in any year or years pursuant to the provisions of the Code (each of the events referred to in (a) and (b) above being referred to as a "Loss"), then Lessee shall pay to the Owner, upon demand, a sum which, after deduction therefrom for all federal, state and local income taxes payable by the Owner with respect to the receipt of such sum, shall be sufficient to restore the Owner to substantially the same position the Owner would have been in had such Loss not been incurred after taking into account all relevant factors, including, without limitation, (i)the amount of the Tax Benefits so lost, recaptured, disallowed, recomputed or not so utilized, (ii)the increase or acceleration in the Owner's tax on account thereof, (iii) penalties, interest or other charges imposed on the Owner, (iv) differences in tax years involved, and (v) the Tax Benefits, if any, available to the Owner with respect to any replacement Equipment transferred to Lessor pursuant to Section 13(a) hereof. The provisions of this Section 12.1 shall survive the expiration or earlier termination of this Lease. For the purposes of this Section 12.1, a Loss shall occur upon the earliest of (1) the happening of any event which may cause such Loss, (2) the payment by the Owner to the Internal Revenue Service of the tax increase resulting from such Loss, or (3) the adjustment of the tax return of the Owner to reflect such Loss.

## 13. RISK OF LOSS

While the Equipment is in transit, throughout the duration of the Lease and until the Equipment is returned to Lessor, Lessee assumes all responsibility for damage to or loss or destruction of the Equipment or other Casualty Loss and relieves Lessor of responsibility for all risks of such damage, loss or destruction. Lessee shall promptly notify Lessor of any damage to any of the Equipment and Lessee will promptly repair, at its own expense, any damaged item of Equipment unless such Equipment has suffered a Casualty Loss. Within fifteen (15) days of a Casualty Loss, Lessee will provide written notice of that loss to Lessor and Lessee will, at Lessor's option, either (a) replace the item(s) of Equipment with Like Equipment, transfer to Lessor good and marketable title to the Like Equipment and continue to pay Rent as it comes due without interruption, or (b) pay all past due Rent and other amounts then due and owing plus an amount equal to the Casualty Value. Upon Lessor's receipt of this payment, Lessee's obligation to pay further Rent for the item(s) of Equipment that suffered a Casualty Loss will cease. Insurance proceeds received by Lessor as a result of a Casualty Loss will be applied to reduce Lessee's obligation to pay the Casualty Value.

## 14. RECORDS

Lessee and Lessor agree that all instruction manuals, published statements of capabilities and technical specifications, service, maintenance and repair records, installation, qualification, certification and calibration reports and other printed material supplied by the manufacturer and related to the installation and operation of the Equipment will be deemed a part of the Equipment and Lessee agrees to provide such to Lessor upon request.

DocuSign Envelope ID: FEAD4FE8-87CB-409D-B21F-27DF2D0C6E79

This is a copy view of the Authoritative Copy h by the designated custodian

## 15. DEFAULT, REMEDIES AND DISPOSITION OF REPOSSESSED EQUIPMENT

### 15.1 DEFAULT

The occurrence of any one or more of the following constitutes an Event of Default: (a) Lessee's failure to pay Rent or other amounts payable by Lessee when due and such failure continues for ten (10) days; (b) Lessee's failure to perform or observe any other term or condition of the Lease or the material inaccuracy of any representation or warranty made by Lessee in the Lease or any related document furnished to Lessor hereunder and such failure or inaccuracy continues for fifteen (15) days after written notice thereof; (c) An assignment by Lessee or any Guarantor for the benefit of its creditors, the failure by Lessee or any Guarantor to pay its debts when due, the insolvency of Lessee or any Guarantor, the filing by Lessee or any Guarantor or the filing against Lessee or any Guarantor of any petition under any bankruptcy, reorganization or insolvency law or for the appointment of a trustee, receiver, custodian or other officer with similar powers, the adjudication of Lessee or any Guarantor as insolvent, Lessee's or any Guarantor's ceasing to do business as a going concern, the death of any Guarantor and/or the dissolution or liquidation of Lessee or any Guarantor; (d) The occurrence of an Event of Default under any Schedule or other agreement between Lessee and Lessor or its Assignee or Secured Party; or (e) Lessee or any Guarantor undergoes a sale, buyout, change in control, or change in ownership of any type, form or manner, as judged solely by Lessor.

### 15.2 REMEDIES

If an Event of Default exists, Lessor may exercise any one or more of the following remedies, in addition to those arising under applicable law: (a) proceed, by appropriate court action, to enforce performance by Lessee of the applicable covenants of any or all of the Leases; (b) terminate or cancel any or all Leases by notice to Lessee and take possession of any or all of the Equipment and, for such purpose, enter upon any premises where the Equipment is located with or without notice or process of law and free from all claims by Lessee or any other person, or require Lessee to assemble the Equipment and deliver it to Lessor in accordance with Section 10; (c) recover any and all direct, incidental and consequential damages, including all accrued and unpaid Rent and other amounts owing under any Lease, and (i) for any Lease that is an FMV Lease, as to any Equipment which has not been returned to Lessor in the condition required hereunder, an amount equal to the Casualty Value thereof; or (ii) for any Lease that is an FMV Lease, as to any Equipment which has been so returned to Lessor, such amounts as are provided for the lessee breach of a personal property lease under the UCC; or (iii) for any Lease that is not an FMV Lease, an amount equal to the sum of all Rent and other payments remaining to be paid under such Lease through the Lease Term plus the applicable purchase option amount quoted by Lessor in the form of a quote requested by Lessee; and (d) sell or re-lease any or all of the Equipment, through public or private sale or lease transactions, and apply the proceeds thereof to Lessee's obligations under such Leases or otherwise seek recovery in accordance with applicable provisions of the UCC. Lessee shall remain liable for any resulting deficiency and Lessor may retain any surplus it may realize in connection with an FMV Lease. Lessee shall pay all costs and expenses (including reasonable attorneys' fees) incurred by Lessor in retaking possession of, and removing, storing, repairing, refurbishing and selling or leasing such Equipment and enforcing any obligations of Lessee pursuant to any Lease.

### 15.3 DISPOSITION OF REPOSSESSED EQUIPMENT

If Lessor repossesses the Equipment, Lessor may rent or sell the Equipment in such a manner and at such times as Lessor may determine and without notice to Lessee. In the event Lessor rents the Equipment to a third party, any rentals received by Lessor for the period of the remaining Initial Term of the Lease shall be applied to the payment first to (i) all costs and expenses (including Default Costs) incurred by Lessor in enforcing its remedies under this Lease, and then to (ii) the accelerated Rent balance, for the remainder of the Initial Term and any Extended Term and all other sums then remaining unpaid under this Lease. All rentals received by Lessor for the period commencing after the remaining Initial Term shall be retained by Lessor. Lessee will remain liable to Lessor to the extent that the aggregate amount of the sums referred to in clauses (i) and (ii) above exceed the aggregate rentals received by Lessor under such agreements for the period of the remaining Initial Term applicable to the Equipment covered by such agreements. In the event that Lessor sells the Equipment, the proceeds will be applied first to the sum of: (1) all costs and expenses (including Default Costs) incurred by Lessor in enforcing its remedies under this Lease and in disposing of the Equipment, then to (2) the rentals accrued under the Lease, but unpaid up to the time of such disposition, (3) any and all other sums other than rentals then owing to Lessor by Lessee under the Lease, and (4) the Casualty Value as would be determined in the event of a Casualty Loss on the date of the Equipment's disposition. The remaining balance of such proceeds, if any, will be applied first to reimburse Lessee for any sums previously paid by Lessee as liquidated damages pursuant to Subsection 15.2(c), and any remaining amounts will be retained by Lessor. Lessee will remain liable to Lessor to the extent that the aggregate amount of the sums referred to in clauses (1) through (4) above exceeds the proceeds received by Lessor in connection with the disposition of the Equipment.

## 16. ADDITIONAL PROVISIONS

### 16.1 ENTIRE AGREEMENT

This Agreement, together with the other Lease Documents, constitutes the entire agreement between Lessor and Lessee with respect to the lease of the Equipment and superseded all previous oral and written agreements or proposals as well as any representations any party. No waiver or amendment of, or any consent with respect to, any provision of any Lease Document shall bind either party unless set forth in a writing, specifying such waiver, consent, or amendment, signed by both parties. TO THE EXTENT PERMITTED BY APPLICABLE LAW AND NOT OTHERWISE SPECIFICALLY GRANTED TO LESSEE IN ANY LEASE DOCUMENT, LESSEE HEREBY WAIVES ANY AND ALL RIGHTS OR REMEDIES CONFERRED UPON A LESSEE UNDER THE UCC OR ANY OTHER APPLICABLE LAW OR STATUTE, WITH RESPECT TO ANY NONMATERIAL DEFAULT BY LESSOR UNDER THIS AGREEMENT OR ANY LEASE. Each Lease that provides a purchase option to Lessee of the Fair Market Value of the Equipment is intended by the parties as a "finance lease" under the UCC.

### 16.2 FURTHER ASSURANCES

Lessee agrees to promptly sign and deliver, at its expense, any documents and assurances which Lessor deems prudent in order to establish and/or protect the rights, interests and remedies of Lessor and any Assignee or Secured Party, and for confirmation, assignment and assurance of performance by Lessee of its obligation under the Lease or for perfection of this Agreement, any Schedule and the Equipment. Such documents and assurances include, but are not limited to, UCC Financing Statements, a secretary's certificate of incumbency and authority, resolutions authorizing this Agreement and any Schedule; delivery and acceptance certificate(s), Commencement Certificate(s), Casualty Table(s), subordination agreements, and landlord/mortgagee waivers of rights and interests in the Equipment. Lessee authorizes Lessor to insert information on any Schedule or other related documents commonly determined after execution by Lessee such as: serial numbers and other Equipment identification information, Equipment locations and Acceptance Dates. Lessee authorizes Lessor, as Lessee's agent, to prepare, execute and file in Lessee's name UCC Financing Statements showing the interest of, Lessor, and any Assignee or Secured Party in the Equipment. Until duly executed by an authorized signer of Lessor, Lessee agrees that this Agreement and any Schedule executed by Lessee shall constitute an offer by Lessee to enter into the Lease with Lessor. Lessee will furnish Lessor (1) within

DocuSign Envelope ID: R4AD4F8547C8447BD-B2TE2TTD90C062479

This is a copy view of the Authoritative Copy h
by the designated custodian

one hundred twenty (120) days after the end of each fiscal year of Lessee, a balance sheet of Lessee as at the end of such year, and the related statement of income and statement of cash flows of Lessee for such fiscal year, prepared in accordance with GAAP, all in reasonable detail and including all notes thereto and certified by independent certified public accountants of recognized standing selected by Lessee; and within forty-five (45) days after the end of each quarter, a balance sheet of Lessee as at the end of such quarter, and the related statement of income and statement of cash flows of Lessee for such quarter, prepared in accordance with GAAP and including all notes thereto; or (2) if Lessee is then a public company within thirty (30) days after Lessee is required to file the same with the Securities and Exchange Commission (the "SEC") or any successor agency, a copy of each annual report and any amendment to an annual report (currently Form 10-K), filed by Lessee with the SEC pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, as the same may be amended from time to time, and all financial statement reports, notices, proxy statements or other documents that are sent or made generally available by Lessee to holders of its registered securities and all regular and periodic reports filed by Lessee with the SEC or any comparable reports.

**16.3 SURVIVAL OF OBLIGATIONS**
All representations, warranties, indemnities, and covenants contained in this Agreement and in any Schedule, which by their nature would continue beyond the termination, cancellation or expiration of the Lease, including by way of illustration only and not limitation, those in Sections 7.2, 7.3, 12 and 15.3, shall continue in full force and effect and shall survive notwithstanding the full payment of all amounts due hereunder or the termination of Lessee's right to possession of any Equipment or purchase thereof by Lessee.

**16.4 NOTICES**
Any notices hereunder or any requests to Lessor by Lessee hereunder must be in writing and sent by personal delivery, reputable overnight courier service or certified mail, return receipt requested, to the address of the party shown in the applicable Schedule or such other address as to which the sender has been notified in writing. Any notice or request to Lessor shall be addressed to the attention of "Lease Administrator." Notices and requests shall be deemed received, in the case of personal or overnight delivery, upon actual receipt, and in the case of certified mail, upon the earlier of the date of actual receipt or three days after mailing.

**16.5 GOVERNING LAW**
**THIS AGREEMENT AND ALL EQUIPMENT SCHEDULES AND ANY OTHER INSTRUMENT EXECUTED IN CONNECTION HEREWITH SHALL BE GOVERNED BY, DETERMINED UNDER, AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT GIVING EFFECT TO CONFLICT OF LAW PRINCIPLES. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS OR REMEDIES CONFERRED UPON A LESSEE IN ARTICLE 2A OF THE UCC, UNLESS EXPRESSLY GRANTED IN THIS AGREEMENT OR A SCHEDULE.** Time is of the essence of this Lease and each provision thereof.

**16.6 ENFORCEMENT EXPENSES**
If any party to the Lease brings any action to enforce any of the terms, or to recover for any breach, then the prevailing party is entitled to recover from the other party reasonable attorneys' fees and costs, including court costs, dispute resolution costs and costs of collection (including judgment enforcement costs).

**16.7 SEVERABILITY**
If any one or more of the provisions of this Agreement or any Schedule is for any reason held by a competent authority to be unenforceable, such determination shall not invalidate the remaining provisions of the Lease, and the unenforceable provision shall be replaced by a mutually acceptable valid and enforceable provision that is closest to the original intention of the parties. To the extent permitted by applicable law, Lessee waives any provision of law which renders any provision of this Agreement or any Schedule prohibited or unenforceable. Section headings are for convenience and shall not affect the meaning of the text. Wherever "including" or like terms are used, they are intended to reference an example and not in limitation , whether or not so specified. Any consent, approval or other action by Lessor herein shall, unless expressly limited, be at Lessor's sole and absolute discretion exercised in a subjective manner and all such consents, approvals or other actions may be taken or withheld for any reason whatsoever, which Lessor is not required to disclose or specify.

**16.8 COUNTERPARTS AND ELECTRONIC DOCUMENTS**
This Agreement and any Schedule may be executed in counterparts, each of which will be deemed an original, but all such counterparts together constitute one and the same instrument. If Lessor grants a security interest in all or any part of a Schedule, the Equipment or Rent payable thereunder, only those counterparts of a Schedule marked "Original" can transfer Lessor's rights and all other counterparts will be marked "Duplicate".

Documents executed and transmitted electronically and electronic signatures shall be deemed original signatures for purposes of this Agreement and all matters related thereto, with such electronic signatures having the same legal effect as original signatures. The validity, enforceability and authenticity of an electronically signed document will not be contested on the basis that it has been originated, executed, delivered and stored in an electronic rather than a manual/physical form. This Agreement, and any other document necessary for the consummation of the transaction contemplated by this Agreement may be accepted, executed or agreed to through the use of an electronic signature in accordance with the Electronic Signatures in Global and National Commerce Act ("E-Sign Act"), Title 15, United States Code, Sections 7001 et seq., the Uniform Electronic Transaction Act ("UETA") and any applicable state law. Any document accepted, executed or agreed to in conformity with such laws will be binding on each party as if it were physically executed.

If a paper copy of an electronic document constitutes "chattel paper" (as such term is defined in Article 9 of the Uniform Commercial Code), it will be marked as the sole original and authoritative copy of such electronic document, and will constitute "electronic chattel paper" in the sole custody and control of Lessor or its designated document manager.

**16.9 LESSOR'S RIGHT TO OFFER**
Lessee's ability, upon obtaining Lessor's consent, to sublease under Section 6.3 and perform a Reconfiguration or install an Attachment under Section 8.2 is expressly subject to and conditioned on Lessor's right to provide a competitive offering in writing for the same and Lessor will have five (5) business days to provide a proposed offer.

**16.10 CONSENT OR APPROVAL**
With respect to any provision herein except for the provisions of Section 6.3 contained herein, which calls for the consent or approval of a party, such consent or approval shall not be unreasonably withheld.

DocuSign Envelope ID: FEADD4F28-67C8-409D-B2V-E3F0F5D9C8E79

This is a copy view of the Authoritative Copy h
by the designated custodian

**16.11 DEFINITIONS**

**"Acceptance Date"** means the date on which Lessee has certified in writing to Lessor, in the form of the Commencement Certificate, that all of the Equipment has been received and accepted by Lessee as installed, tested and ready for use, or in the alternative, the date on which Lessor has deemed the Equipment accepted by Lessee as provided in Section 1.1, above.

**"Acquisition Cost"** means the amount paid by Lessor to purchase or otherwise acquire the Equipment.

**"Affiliate"** means an entity in which Lessor or its shareholders own a controlling interest including, without limitation, all affiliates listed in Exhibit A hereto, if applicable.

**"Assignee"** means an entity to which Lessor has sold or assigned some or all of its rights, title and interest in or to the Agreement, a Schedule, the Equipment and any Rent or other amounts payable under the Agreement and a Schedule.

**"Attachment"** means any accessory, equipment or device that (a) does not impair the original function or use of the hardware Equipment when installed thereon, (b) is capable of being removed without causing damage to the Equipment and (c) is not an accession to the Equipment.

**"Casualty Loss"** means any of the following have occurred: the Equipment, in whole or in part, is lost, stolen, requisitioned, taken, confiscated, destroyed, disposed of by Lessee, or irreparably damaged.

**"Casualty Value"** the means the stipulated value of the Equipment that has undergone a Casualty Loss as determined from the Casualty Table or, in the absence of a Casualty Table, the aggregate of the remaining monthly payments from the last payment received by Lessor or its Assignee plus the current Fair Market Value of the Equipment.

**"Commencement Certificate"** means a certificate which must be signed by Lessee within ten days of the Acceptance Date, as requested by Lessor, in which Lessee certifies that all of the Equipment has been received and accepted by Lessee as installed, tested and ready for use as of the Acceptance Date, and authorizes Lessor to disburse payment to the Supplier(s). Lessee shall be obligated to deliver Lessor such certificate even if the Equipment is deemed accepted as provided in Section 1.1, above.

**"Default Costs"** means Lessor's reasonable attorneys' fees and costs incurred as a result of an Event of Default and/or Lessor's enforcement of its remedies including all court costs, dispute resolution service costs, collection and judgment enforcement costs, and Equipment remarketing costs.

**"Equipment"** means the property (including, without limitation, any hardware, software or other licensed products or equipment) described on a Schedule and any replacement for that property required or permitted by this Agreement or a Schedule but not including any Attachment.

"**Event of Default**" means the events described in Subsection 15.1.

**"Fair Market Value"** Fair Market Value is defined as the total cost(s) to replace the Equipment with like Equipment on an in-place, installed basis, including all current cost(s) and expenses(s) for the purchase, assembly, installation, delivery, freight, consulting, training, site preparation and any other services that would be required to render such Equipment fully installed, ready and acceptable for use by an end user as of the termination of the term.

**"Initial Term"** means the period of time beginning on the first day of the first full Rent Interval following the Acceptance Date and continuing for the number of Rent Intervals indicated on a Schedule.

**"Pro-Rata Rent"** means the pro-rata portion of Rent due for the period from the Acceptance Date through but not including the first day of the first full Rent Interval of the Initial Term.

**"Like Equipment"** means replacement Equipment which is free of any liens, claims or encumbrances, of the same model, type, configuration and manufacture as the Equipment being replaced and which is eligible for maintenance coverage by the Supplier.

**"Like Part"** means a substituted part which is free of any liens, claims or encumbrances, and of the same manufacturer and part number as the part removed from the Equipment, and which when installed on the Equipment, will be eligible for maintenance coverage with the Supplier.

**"Reconfiguration"** means any change to Equipment that would upgrade or downgrade the performance capabilities of the Equipment in any way but which change is capable of being undone so as to return the Equipment to its original condition, if necessary.

**"Rent"** means the rental amounts (including, without limitation, Pro-Rata Rent and rentals for the Initial Term, any extension term or month-to-month period) Lessee is required to pay Lessor for Equipment pursuant to a Schedule plus all other amounts due to Lessor under this Agreement or a Schedule; the rental amount set forth in a Schedule will either be stated as a specific amount payable on a monthly or quarterly basis, or is calculated by multiplying the lease rate factor stated in the Schedule by the amount which Lessor paid the Supplier for the Equipment**.**

**"Rent Interval"** means a full calendar month or calendar quarter as indicated on a Schedule.

**"Schedule"** means an Equipment Schedule which incorporates all of the terms and conditions of this Agreement and its associated Commencement Certificate(s).

Master Lease Agreement.doc

DocuSign Envelope ID: FEAD4FE8-67CB-409D-B21F-27DF2D9C6E79

This is a copy view of the Authoritative Copy h
by the designated custodian

"**Secured Party**" means an entity to whom Lessor has granted a security interest in a Schedule and related Equipment for the purpose of securing a loan.

"**Software**" means any Equipment described in a Schedule that is software or any other licensed product and includes all updates, revisions, upgrades, new versions, enhancements, modifications, derivative works, maintenance fixes, translations, adaptations, and copies of the foregoing or the original version of the software or other licensed product.

"**Supplier**" shall have the meaning given to that term in Article 2A of the Uniform Commercial Code and shall include, without limitation, a vendor, distributor, developer, publisher, licensor, seller and/or manufacturer of Equipment and the licensor of any software.

"**UCC" means the Uniform Commercial Code as adopted and in effect in the state specified in Section 16.5.**

**16.12 INFORMATION SHARING**
Notwithstanding any previous nondisclosure obligations of and between the parties, Lessee agrees that Lessor may retain any and all financial information provided by Lessee, and share such information with prospective lenders and/or Assignees in the normal course of Lessor's business, regardless of any restrictions on same set forth in any previously executed nondisclosure agreements.

**16.13 FORUM SELECTION**
ALL DISPUTES, WHETHER BASED IN TORT, CONTRACT OR OTHERWISE, RELATING TO OR ARISING OUT OF THIS AGREEMENT AND ANY SCHEDULE (COLLECTIVELY, "LEASE DISPUTES") WILL BE FILED AND LITIGATED EXCLUSIVELY IN THE UNITED STATES DISTRICT COURT FOR, OR STATE COURT LOCATED IN, ORANGE COUNTY, CALIFORNIA, PROVIDED, HOWEVER, THAT ANY SUIT SEEKING ENFORCEMENT OF LESSOR'S RIGHTS OR REMEDIES AS TO ANY EQUIPMENT OR OTHER PROPERTY MAY BE BROUGHT, AT LESSOR'S OPTION, IN THE FEDERAL OR STATE COURTS OF ANY JURISDICTION WHERE SUCH EQUIPMENT OR OTHER PROPERTY IS LOCATED. THE PARTIES EACH WAIVE ANY RIGHTS TO DISPUTE SUCH JURISDICTION OR VENUE ON ANY BASIS WHATSOEVER, INCLUDING WITHOUT LIMIATION INCONVENIENT FORUM.

**16.14 JURY TRIAL WAIVER**
LESSEE AND LESSOR HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION RELATING TO OR ARISING OUT OF THIS AGREEMENT AND ANY SCHEDULE. LESSEE AND LESSOR REPRESENT THAT EACH HAS REVIEWED THIS WAIVER AND EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.

BY SIGNING BELOW, THE SIGNER CERTIFIES THAT HE OR SHE HAS READ THIS MASTER LEASE AGREEMENT AND IS AUTHORIZED TO SIGN ON BEHALF OF LESSEE.

IN WITNESS WHEREOF, the parties hereto have executed this Master Lease Agreement on or as of the day and year first above written

**LESSEE:**

Pirch, Inc.

By: _Jenni Perry_
Name: Jenni Perry

Title: Director - Logistics

Federal Tax ID#: 26-0565897

**LESSOR:**

First Financial Holdings, LLC,
a Delaware limited liability company
dba First Financial Equipment Leasing

By: _Hiroshi Kobayashi_
Name: Hiroshi Kobayashi

Title: Chief Financial Officer

This is a copy view of the Authoritative Copy h by the designated custodian

## Exhibit A

EQUIPMENT SCHEDULE NO.
Dated
TO MASTER LEASE AGREEMENT NO.
Dated

LESSEE:

A.    Financial Terms:

| 1. | Acquisition Cost: | $ |
|---|---|---|
| 2. | Monthly Rent: | $ |
| 3. | Initial Term: | Months |
| 4. | Monthly Lease Rate Factor ("LRF"): | |
| 5. | Initial Term Date: | |
| 6. | End of Term Option: | Fair Market Value as defined in section 4 of the Master Lease Agreement |
| 7. | Equipment Description: | |
| 8. | Equipment Location: | |

B.    The Monthly Rent is due and payable in advance. The first Monthly Rent payment is due on the Initial Term date and on the first day of each calendar month thereafter for the duration of this Schedule. The Schedule commences and Lessee's rental obligations for each item of Equipment begin on the Acceptance Date, which is the date on which Lessee has certified in writing to Lessor that all of the Equipment has been received and accepted by Lessee, tested and ready for use or such date the Equipment has been deemed accepted pursuant to Section 1.1 of the Master Lease Agreement. Lessee shall pay Pro Rata Rent equal to 1/30th of the Monthly Rent multiplied by the number of days which have elapsed from the Acceptance Date up to, but not including, the Initial Term date set forth herein. Pro Rata Rent shall be paid by Lessee with the first Monthly Rent payment.

Since the Monthly Rent is based on the Acquisition Cost, any changes in the Acquisition Cost following execution of this Schedule will result in a change in the Monthly Rent and will be reflected in an amendment to this Schedule. The Monthly Rent is calculated by multiplying the Acquisition Cost for each item of Equipment by the applicable Monthly Lease Rate Factor. The Monthly Lease Rate Factor described in this Schedule has been calculated using an interest rate based on the like term swap rate as of the date of this Schedule as published by InterContinental Exchange, Inc. The Monthly Lease Rate Factor is subject to change in the event such interest rate swap increases prior to the lease commencement at which time the lease rate factor will remain fixed during the Initial Term.

C.    Adverse Change:  If there is an adverse change in Lessee's financial or credit worthiness, as determined solely by Lessor, upon Lessor's written notice to Lessee of such determination, Lessor shall have no obligation to pay Suppliers for any Equipment even if Lessor has previously received invoices.

D.    This Schedule constitutes a separate lease agreement and all of the terms and conditions of the Master Lease Agreement are hereby incorporated in this Schedule as if such terms and conditions were fully set forth herein.  All capitalized terms in this Schedule that are not separately defined herein shall have the meanings given to them in the Master Lease Agreement. If this Schedule is deemed to be a lease intended as security, (i) Lessee grants Lessor a first priority purchase money security interest in the Equipment to secure its obligations under this Schedule; and (ii) this Schedule, if determined by a court of competent jurisdiction to be other than a true lease, shall be construed so that any interest payable by Lessee shall not exceed the maximum time, price, differential, rate, interest or amount allowed by applicable law and any excess payment will be applied first to prepay principal hereunder and then as a refund to Lessee. In the event any terms or conditions set forth in this Schedule conflict with those set forth in the Master Lease Agreement, then the terms and conditions of this Schedule shall control.

E.    Additional Return Provisions:

F.    Documents executed and transmitted electronically and electronic signatures shall be deemed original signatures for purposes of the Lease and all matters related thereto, with such scanned and electronic signatures having the same legal effect as original signatures. The validity, enforceability and authenticity of an electronically signed document will not be contested on the basis that it has been originated, executed, delivered and stored in an electronic rather than a manual/physical form. The Lease, and any other document necessary for the consummation of the transaction contemplated by this Schedule may be accepted, executed or agreed to through the use of an electronic signature in accordance with the Electronic Signatures in Global and National Commerce Act ("E-Sign Act"), Title 15, United States Code, Sections 7001 et seq., the Uniform Electronic Transaction Act ("UETA") and any applicable state law. Any document accepted, executed or agreed to in conformity with such laws will be binding on each party as if it were physically executed.

If a paper copy of an electronic document constitutes "chattel paper" (as such term is defined in Article 9 of the Uniform Commercial Code), it will be marked as the sole original and authoritative copy of such electronic document, and will constitute "electronic chattel paper" in the sole custody and control of Lessor or its designated document manager.

THE INDIVIDUAL SIGNING BELOW CERTIFIES THAT HE OR SHE HAS READ THIS SCHEDULE AND THE MASTER LEASE AGREEMENT, AND IS AUTHORIZED TO SIGN THIS SCHEDULE ON BEHALF OF LESSEE.

THIS SCHEDULE ALONG WITH THE MASTER LEASE AGREEMENT CONTAIN THE ENTIRE AGREEMENT BETWEEN LESSOR AND LESSEE WITH RESPECT TO THE SUBJECT MATTER HEREOF. THIS LEASE CAN BE MODIFIED ONLY IN A WRITING SIGNED BY A PERSON AUTHORIZED TO SIGN LEASE AGREEMENTS ON BEHALF OF LESSOR AND LESSEE. NO ORAL OR OTHER WRITTEN AGREEMENTS, REPRESENTATIONS OR PROMISES SHALL BE RELIED UPON BY, OR BE BINDING ON, THE PARTIES UNLESS MADE A PART OF THIS LEASE BY A WRITTEN MODIFICATION SIGNED BY AN AUTHORIZED SIGNER OF LESSOR AND LESSEE.

LESSEE:

LESSOR:
First Financial Holdings, LLC,
a Delaware limited liability company
dba First Financial Equipment Leasing

By:_____

By:_____

Name:

Name:

Title:
Federal Tax ID#:_____

Title:

Master Lease Agreement.doc

This is a copy view of the Authoritative Copy h
by the designated custodian

**Exhibit B**

## COMMENCEMENT CERTIFICATE

Pursuant to Equipment Schedule No. _____, (the "Schedule"), to Master Lease Agreement No. _____ dated _____, (the "Lease"), between First Financial Holdings, LLC dba First Financial Equipment Leasing, ("Lessor") and the undersigned ("Lessee"), Lessee hereby certifies (i) that the items of Equipment described in the Schedule have been delivered to the location of Lessee described in the Schedule, have been inspected by authorized representatives of Lessee, have been duly and finally accepted by Lessee under the Lease, have been found to be in good repair, condition and working order and (ii) that the Acceptance Date for said Equipment is:

**Acceptance Date:**_____

*(fill in date above)*

LESSEE ACKNOWLEDGES THAT UPON ITS EXECUTION OF THIS CERTIFICATE, THE SCHEDULE WILL BE ABSOLUTE, UNCONDITIONAL AND NOT SUBJECT TO ANY SET-OFF, WITHHOLDING OF RENT FOR ANY REASON OR CANCELLATION OR TERMINATION BY LESSEE, ALL AS PROVIDED IN THE LEASE.

**LESSEE:**

By: _____

Name: _____

Title: _____

This is a copy view of the Authoritative Copy h
by the designated custodian

**Exhibit C**

NOTICE AND ACKNOWLEDGMENT OF ASSIGNMENT
Dated:        , 201

Reference is hereby made to Master Lease Agreement No.        dated        , (the "Lease Agreement") between First Financial Holdings, LLC, dba First Financial Equipment Leasing, as the lessor (the "Lessor"), and        as the lessee (the "Lessee") and Equipment Schedule No.        (the "Schedule") between Lessor and Lessee, together with the Lease Agreement, to the extent that it relates thereto, is referred to herein as the "Lease".

Lessor hereby gives Lessee notice and Lessee hereby acknowledges receipt of notice that Lessor has assigned to        (the "Assignee"), all of its rights in the Schedule and the Equipment, including all rights to receive the **monthly/quarterly** lease payments of $        each, payable by Lessee in advance commencing        , 201        and continuing up to and including        , 201        and all other sums which may become due and payable from Lessee to Lessor under the Schedule. From and after the date of this notice Lessee agrees to remit all payments due and to become due under the Lease using one of the following ways:

<table>
<tr><td>

**Preferred Method:**
**ACH and Wire transfer payments:**
**Fifth Third Bank, N.A.**
**38 Fountain Square Plaza**
**Cincinnati, OH 45263**
**Account No.: 7029086704**
**ACH/Wire ABA Routing No.: 042000314**
**For Credit to: First Financial Holdings, LLC**

</td><td>

**Mailing Address:**
**First Financial Holdings, LLC**
**PO Box 631222**
**Cincinnati, OH 45263-1222**

</td></tr>
</table>

In recognition of Assignee's reliance upon this Notice and Acknowledgment of Assignment by agreeing to lend to Lessor the substantial portion of the purchase price of the Equipment, and in consideration of Assignee's and Lessor's agreement not to interfere with Lessee's quiet possession of the Equipment subject to the terms of the Lease, Lessee certifies, confirms and agrees as follows:

1. Lessee will not assert against Assignee any defense, claim, counterclaim, recoupment, setoff or right to cancel or terminate the Schedule which Lessee may have against Lessor, whether arising out of the Lease or otherwise. Lessee agrees that it will pay to Assignee all monies due or to become due under the Schedule without regard to any such defense, claim, counterclaim, recoupment, setoff or right and will not seek to recover any part of this sum from Assignee, provided that Lessee retains the right to assert in good faith any claim, including a claim of defense against, or for setoff, counterclaim, or recoupment, against Assignee if, when no Event of Default shall have occurred and be continuing, Assignee interferes with Lessee's right to quiet enjoyment of the Equipment. Notwithstanding the foregoing, nothing herein shall be deemed to relieve Lessor of any of its obligations to Lessee under the Lease.

2. The Equipment is in Lessee's possession at each address specified in the Schedule, that the Equipment has been inspected by duly authorized representatives of Lessee as Equipment under the Schedule and found to be in good working order and suitable for the Lessee's purposes in all respects.

3. The Master Lease Agreement and Schedule are in full force and effect and, no modification, amendment or supplement has been made, and all of Lessee's representations and warranties made in the Master Lease Agreement and Schedule are true and correct and shall have the effect as if made on the date hereof. Any future modification, termination, amendment or supplement to the Master Lease Agreement or Schedule or settlement of amounts due thereunder shall be ineffective without Assignee's prior written consent, which will not be unreasonably withheld or delayed. The remit to address will remain the same unless Lessee has been notified by Lessor or Assignee.

4. Neither Lessee nor, to the Lessee's knowledge, Lessor has breached the Master Lease Agreement or Schedule in any respect and that payments of any and all monies due under the Lease have been and will continue to be paid in strict accordance with the terms thereof.

5. Lessee acknowledges that Assignee has not assumed any of the obligations of Lessor, other than the obligation of quiet and peaceful possession, under the terms of the Master Lease Agreement and Schedule, and Assignee shall not be responsible in any way for the performance by Lessor or any other party of the terms and conditions of the Master Lease Agreement and Schedule. Further, Lessor hereby notifies Lessee and Lessee acknowledges that Assignee is entitled to the benefits of each and every right accorded Lessor in the Master Lease Agreement and Schedule, including but not limited to remedies, inspection rights, indemnity rights, right to give consent, right to receive payment of costs and expenses incurred in exercising rights and remedies and right to receive notices and other documents required to be furnished by Lessee.

6. The Master Lease Agreement and Schedule represent the sole agreement between Lessor and Lessee respecting the Equipment, the monthly rentals and all other payments due under the Lease and Lessee has received no notice of a prior sale, transfer, assignment, hypothecation or pledge of the Lease, the rents reserved thereunder or the Equipment.

7. Lessee is aware of no claim of any kind or nature in or to the Equipment, or of any lien thereon other than Assignee's security interest and Lessee's rights thereto under the Lease and that Lessee will keep the Schedule and Equipment free and clear of all liens and encumbrances.

This is a copy view of the Authoritative Copy held by the designated custodian

8. All representations and duties of Lessor intended to induce Lessee to enter into the Master Lease Agreement and Schedule whether required by the Lease or otherwise and which were to have been performed by the date hereof have been so performed or fulfilled.

9. Notwithstanding any provision to the contrary contained in Section 15 of the Master Lease Agreement the parties hereto agree that if the Equipment becomes available to Assignee as a result of the cancellation or termination of the Lease due to the occurrence of an Event of Default there under, Assignee shall have the right to sell, lease or otherwise dispose of the same.

10. Notwithstanding any contrary provision of Section 15.2(c) of the Master Lease Agreement, Lessee agrees that both (i) any obligation of the Lessee to indemnify Assignee, and (ii) Assignee's right to collect from Lessee any and all reasonable costs, fees or expenses incurred by Assignee in connection with the enforcement of remedies, shall survive the payment by Lessee of liquidated damages as described in that Section.

11. Lessee agrees that Lessor shall have marketable title to any Like Part or Like Equipment, in addition to any other requirements thereof.

12. As between Lessee and Assignee, the Lease and this Notice and Acknowledgement of Assignment constitute their entire agreement.

ACCEPTED AND AGREED TO ON THE DATE FIRST WRITTEN ABOVE.

**LESSEE:**

**LESSOR:**

First Financial Holdings, LLC,
a Delaware limited liability company
dba First Financial Equipment Leasing

By:_____

By:_____

Name:

Name:

Title:

Title:

DocuSign Envelope ID: 774D43F73B854556-BE5DC88D92A7A184

This is a copy view of the Authoritative Copy h
by the designated custodian



**FIRST FINANCIAL**
EQUIPMENT LEASING

Amendment No. 01
to Equipment Schedule No. 10807-001
to Master Lease Agreement No. 10807 dated May 25, 2022 (the "Lease')
between
First Financial Holdings, LLC dba First Financial Equipment Leasing (the "Lessor")
and Pirch, Inc. (the "Lessee")

WHEREAS, Lessor and Lessee executed Equipment Schedule No. 10807-001 dated May 25, 2022; and

WHEREAS, Lessor and Lessee desire to amend Equipment Schedule No. in accordance with the following;

| 1. | Acquisition Cost: | $499,750.00 |
| 2. | Monthly Rent: | $10,065.94 |
| 3. | Equipment Description: | See Exhibit A for full description of Equipment |
| 4. | Equipment Location: | See Exhibit A |

This Amendment No. 01 shall not alter any obligation of Lessee under the Lease unless otherwise expressly set forth herein. Capitalized terms not defined herein shall have the meaning set forth in the Lease. Any conflict between the terms and conditions of this Amendment No. 01 and those of the Lease shall be governed by this Amendment No. 01 to the extent of such conflict.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment No. 01 to Equipment Schedule No. 10807-001 and have

made it effective on the 8th day of June, 2022.

**LESSEE:**

Pirch, Inc.

By: _Jenni Perry_
555E014E0298403...
Name: Jenni Perry

Title: Director – Logistics

**LESSOR:**

First Financial Holdings, LLC,
a Delaware limited liability company
dba First Financial Equipment Leasing

By: _Hiroshi Kobayashi_
B7C200B07BAC4EE...
Name: Hiroshi Kobayashi

Title: Chief Financial Officer

This is a copy view of the Authoritative Copy h by the designated custodian

Exhibit A
to Amendment No. 01
to Equipment Schedule 10807-001



| Equipment Location | Qty | Vendor | Mfr. | Model | Equipment Descripton | Serial No. | Acquisition Cost | LRF | Monthly Rent |
|---|---|---|---|---|---|---|---|---|---|
| 2701 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | LINDE | V15P 5215 | Order Pickers | C25215Y00323 | $ 35,900.00 | 0.0201420 | $ 723.10 |
| 2702 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | LINDE | V15P 5215 | Order Pickers | C25215Y00357 | $ 35,900.00 | 0.0201420 | $ 723.10 |
| 2703 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | LINDE | V15P 5215 | Order Pickers | C25215Y00506 | $ 35,900.00 | 0.0201420 | $ 723.10 |
| 2704 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100352 | $ 39,850.00 | 0.0201420 | $ 802.66 |
| 2705 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100353 | $ 39,850.00 | 0.0201420 | $ 802.66 |
| 2706 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100354 | $ 39,850.00 | 0.0201420 | $ 802.66 |
| 2707 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100618 | $ 39,850.00 | 0.0201420 | $ 802.66 |
| 2708 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100356 | $ 39,850.00 | 0.0201420 | $ 802.66 |
| 2709 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 231110359 | $ 39,850.00 | 0.0201420 | $ 802.66 |
| 77588 El Duna Court, STE  E, Palm Desert, CA 92211 | 1 | Total Warehouse | LINDE | V15P 5215 | Order Pickers | C25215Y00246 | $ 35,900.00 | 0.0201420 | $ 723.10 |
| 77588 El Duna Court, STE  E, Palm Desert, CA 92211 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100915 | $ 37,350.00 | 0.0201420 | $ 752.30 |
| 77588 El Duna Court, STE  E, Palm Desert, CA 92211 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100916 | $ 39,850.00 | 0.0201420 | $ 802.66 |
| 77588 El Duna Court, STE  E, Palm Desert, CA 92211 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100357 | $ 39,850.00 | 0.0201420 | $ 802.66 |
|  |  |  |  |  | Total |  | $ 499,750.00 |  | $ 10,065.94 |

DocuSign Envelope ID: 7476F947-DB5-4566-BE5D-59BD92A2A2BE

This is a copy view of the Authoritative Copy h
by the designated custodian



**FIRST FINANCIAL**
EQUIPMENT LEASING

## COMMENCEMENT CERTIFICATE

Pursuant to Equipment Schedule No. 10807-001, (the "Schedule"), to Master Lease Agreement No. 10807 dated May 25, 2022, (the "Lease"), between First Financial Holdings, LLC dba First Financial Equipment Leasing ("Lessor") and the undersigned ("Lessee"), Lessee hereby certifies (i) that the items of Equipment described in the Schedule have been delivered to the location of Lessee described in the Schedule, have been inspected by authorized representatives of Lessee, have been duly and finally accepted by Lessee under the Lease, have been found to be in good repair, condition and working order and (ii) that the Acceptance Date for said Equipment is:

Acceptance Date:  June 3, 2022

LESSEE ACKNOWLEDGES THAT UPON ITS EXECUTION OF THIS CERTIFICATE, THE SCHEDULE WILL BE ABSOLUTE, UNCONDITIONAL AND NOT SUBJECT TO ANY SET-OFF, WITHHOLDING OF RENT FOR ANY REASON OR CANCELLATION OR TERMINATION BY LESSEE, ALL AS PROVIDED IN THE LEASE.

**LESSEE:**
Pirch, Inc.

By: _____ *Jenni Perry* _____
    ⎣ 555E014E0298403...
Name:  Jenni Perry

Title:  Director - Logistics

This is a copy view of the Authoritative Copy h
by the designated custodian

Exhibit A
to Commencement Certificate
to Equipment Schedule 10807-001

| Equipment Location | Qty | Vendor | Mfr. | Model | Equipment Descripton | Serial No. | Acquisition Cost | LRF | Monthly Rent |
|---|---|---|---|---|---|---|---|---|---|
| 2701 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | LINDE | V15P 5215 | Order Pickers | C25215Y00323 | $ 35,900.00 | 0.0201420 | $ 723.10 |
| 2702 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | LINDE | V15P 5215 | Order Pickers | C25215Y00357 | $ 35,900.00 | 0.0201420 | $ 723.10 |
| 2703 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | LINDE | V15P 5215 | Order Pickers | C25215Y00506 | $ 35,900.00 | 0.0201420 | $ 723.10 |
| 2704 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100352 | $ 39,850.00 | 0.0201420 | $ 802.66 |
| 2705 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100353 | $ 39,850.00 | 0.0201420 | $ 802.66 |
| 2706 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100354 | $ 39,850.00 | 0.0201420 | $ 802.66 |
| 2707 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100518 | $ 39,850.00 | 0.0201420 | $ 802.66 |
| 2708 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100356 | $ 39,850.00 | 0.0201420 | $ 802.66 |
| 2709 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 231110359 | $ 39,850.00 | 0.0201420 | $ 802.66 |
| 77588 El Duna Court, STE  E, Palm Desert, CA 92211 | 1 | Total Warehouse | LINDE | V15P 5215 | Order Pickers | C25215Y00246 | $ 35,900.00 | 0.0201420 | $ 723.10 |
| 77588 El Duna Court, STE  E, Palm Desert, CA 92211 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100915 | $ 37,350.00 | 0.0201420 | $ 752.30 |
| 77588 El Duna Court, STE  E, Palm Desert, CA 92211 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100916 | $ 39,850.00 | 0.0201420 | $ 802.66 |
| 77588 El Duna Court, STE  E, Palm Desert, CA 92211 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100357 | $ 39,850.00 | 0.0201420 | $ 802.66 |
|  |  |  |  |  | Total |  | $ 499,750.00 |  | $ 10,065.94 |



This is a copy view of the Authoritative Copy h by the designated custodian

**FIRST FINANCIAL**
EQUIPMENT LEASING

EQUIPMENT SCHEDULE NO. 10807-001
Dated May 25, 2022
TO MASTER LEASE AGREEMENT NO. 10807
Dated May 25, 2022

LESSEE:
Pirch, Inc.
2714 Loker Avenue
Carlsbad, CA 92010

A.    Financial Terms:

| | | |
|---|---|---|
| 1. | **Acquisition Cost:** | $499,990.00 |
| 2. | **Monthly Rent:** | $10,030.98 |
| 3. | **Initial Term:** | 60 Months |
| 4. | **Monthly Lease Rate Factor ("LRF"):** | 0.02006236 |
| 5. | **Initial Term Date:** | The first of the month following the final Acceptance Date |
| 6. | **End of Term Option:** | Purchase for $1.00 pursuant to the End of Term Option section as referenced below |
| 7. | **Equipment Description:** | See Exhibit A for full description of Equipment |
| 8. | **Equipment Location:** | See Exhibit A |

B.    The Monthly Rent is due and payable in advance. The first Monthly Rent payment is due on the Initial Term date and on the first day of each calendar month thereafter for the duration of this Schedule. The Schedule commences and Lessee's rental obligations for each item of Equipment begin on the Acceptance Date, which is the date on which Lessee has certified in writing to Lessor that all of the Equipment has been received and accepted by Lessee, tested and ready for use or such date the Equipment has been deemed accepted pursuant to Section 1.1 of the Master Lease Agreement. Lessee shall pay Pro Rata Rent equal to 1/30th of the Monthly Rent multiplied by the number of days which have elapsed from the Acceptance Date up to, but not including, the Initial Term date set forth herein. Pro Rata Rent shall be paid by Lessee with the first Monthly Rent payment.

Since the Monthly Rent is based on the Acquisition Cost, any changes in the Acquisition Cost following execution of this Schedule will result in a change in the Monthly Rent and will be reflected in an amendment to this Schedule. The Monthly Rent is calculated by multiplying the Acquisition Cost for each item of Equipment by the applicable Monthly Lease Rate Factor. The Monthly Lease Rate Factor described in this Schedule has been calculated using an interest rate based on the like term swap rate as of the date of this Schedule as published by InterContinental Exchange, Inc. The Monthly Lease Rate Factor is subject to change in the event such interest rate swap increases prior to the lease commencement at which time the lease rate factor will remain fixed during the Initial Term.

C.    Adverse Change: If there is an adverse change in Lessee's financial or credit worthiness, as determined solely by Lessor, upon Lessor's written notice to Lessee of such determination, Lessor shall have no obligation to pay Suppliers for any Equipment even if Lessor has previously received invoices.

D.    This Schedule constitutes a separate lease agreement and all of the terms and conditions of the Master Lease Agreement are hereby incorporated in this Schedule as if such terms and conditions were fully set forth herein. All capitalized terms in this Schedule that are not separately defined herein shall have the meanings given to them in the Master Lease Agreement. If this Schedule is deemed to be a lease intended as security, (i) Lessee grants Lessor a first priority purchase money security interest in the Equipment to secure its obligations under this Schedule; and (ii) this Schedule, if determined by a court of competent jurisdiction to be other than a true lease, shall be construed so that any interest payable by Lessee shall not exceed the maximum time, price, differential, rate, interest or amount allowed by applicable law and any excess payment will be applied first to prepay principal hereunder and then as a refund to Lessee. In the event any terms or conditions set forth in this Schedule conflict with those set forth in the Master Lease Agreement, then the terms and conditions of this Schedule shall control.

E.    End of Term Option: At the end of the Initial Term, the Lessee will purchase the Equipment on the attached Exhibit A for $1.00 and pay any outstanding balance due hereunder, all accrued but unpaid interest thereon and all other amounts owing hereunder.

F.    Documents executed and transmitted electronically and electronic signatures shall be deemed original signatures for purposes of the Lease and all matters related thereto, with such scanned and electronic signatures having the same legal effect as original signatures. The validity, enforceability and authenticity of an electronically signed document will not be contested on the basis that it has been originated, executed, delivered and stored in an electronic rather than a manual/physical form. The Lease, and any other document necessary for the consummation of the transaction contemplated by this Schedule may be accepted, executed or agreed to through the use of an electronic signature in accordance with the Electronic Signatures in Global and National Commerce Act ("E-Sign Act"), Title 15, United States Code, Sections 7001 et seq., the Uniform Electronic Transaction Act ("UETA") and any applicable state law. Any document accepted, executed or agreed to in conformity with such laws will be binding on each party as if it were physically executed.

If a paper copy of an electronic document constitutes "chattel paper" (as such term is defined in Article 9 of the Uniform Commercial Code), it will be marked as the sole original and authoritative copy of such electronic document, and will constitute "electronic chattel paper" in the sole custody and control of Lessor or its designated document manager.

THE INDIVIDUAL SIGNING BELOW CERTIFIES THAT HE OR SHE HAS READ THIS SCHEDULE AND THE MASTER LEASE AGREEMENT, AND IS AUTHORIZED TO SIGN THIS SCHEDULE ON BEHALF OF LESSEE.

THIS SCHEDULE ALONG WITH THE MASTER LEASE AGREEMENT CONTAIN THE ENTIRE AGREEMENT BETWEEN LESSOR AND LESSEE WITH RESPECT TO THE SUBJECT MATTER HEREOF. THIS LEASE CAN BE MODIFIED ONLY IN A WRITING SIGNED BY A PERSON AUTHORIZED TO SIGN LEASE AGREEMENTS ON BEHALF OF LESSOR AND LESSEE. NO ORAL OR OTHER WRITTEN AGREEMENTS, REPRESENTATIONS OR PROMISES SHALL BE RELIED UPON BY, OR BE BINDING ON, THE PARTIES UNLESS MADE A PART OF THIS LEASE BY A WRITTEN MODIFICATION SIGNED BY AN AUTHORIZED SIGNER OF LESSOR AND LESSEE.

**LESSEE:**

Pirch, Inc.

DocuSigned by:

By: _Jenni Perry_
555E014E0298403...

Name: Jenni Perry

Title: Driector - Logistics

Federal Tax ID#: 26-0565897

**LESSOR:**

First Financial Holdings, LLC,
a Delaware limited liability company
dba First Financial Equipment Leasing

DocuSigned by:

By: _Hiroshi Kobayashi_
B7C200B07BAC4EE...

Name: Hiroshi Kobayashi

Title: Chief Financial Officer

Exhibit A
to Equipment Schedule 10807-001

| Equipment Location | Qty | Vendor | Mfr. | Model | Equipment Descripton | Acquisition Cost | LRF | Monthly Rent |
|---|---|---|---|---|---|---|---|---|
| 3303 Hyland Avenue, STE D, Costa Mesa, CA 92626 | 1 | Total Warehouse | LINDE | V15P 5215 | Order Pickers | $ 35,335.00 | 0.0200624 | $ 708.90 |
| 3303 Hyland Avenue, STE D, Costa Mesa, CA 92626 | 1 | Total Warehouse | LINDE | V15P 5215 | Order Pickers | $ 35,335.00 | 0.0200624 | $ 708.90 |
| 3303 Hyland Avenue, STE D, Costa Mesa, CA 92626 | 1 | Total Warehouse | LINDE | V15P 5215 | Order Pickers | $ 35,335.00 | 0.0200624 | $ 708.90 |
| 3303 Hyland Avenue, STE D, Costa Mesa, CA 92626 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | $ 39,850.00 | 0.0200624 | $ 799.49 |
| 3303 Hyland Avenue, STE D, Costa Mesa, CA 92626 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | $ 39,850.00 | 0.0200624 | $ 799.49 |
| 3303 Hyland Avenue, STE D, Costa Mesa, CA 92626 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | $ 39,850.00 | 0.0200624 | $ 799.49 |
| 3303 Hyland Avenue, STE D, Costa Mesa, CA 92626 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | $ 39,850.00 | 0.0200624 | $ 799.49 |
| 3303 Hyland Avenue, STE D, Costa Mesa, CA 92626 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | $ 39,850.00 | 0.0200624 | $ 799.49 |
| 71905 Highway 111, STE B, Rancho Mirage, CA 92270 | 1 | Total Warehouse | LINDE | V15P 5215 | Order Pickers | $ 35,335.00 | 0.0200624 | $ 708.90 |
| 71905 Highway 111, STE B, Rancho Mirage, CA 92270 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | $ 39,850.00 | 0.0200624 | $ 799.49 |
| 71905 Highway 111, STE B, Rancho Mirage, CA 92270 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | $ 39,850.00 | 0.0200624 | $ 799.49 |
| 71905 Highway 111, STE B, Rancho Mirage, CA 92270 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | $ 39,850.00 | 0.0200624 | $ 799.49 |
| | | | | | Total | $ 499,990.00 | | $ 10,030.98 |


COPY VIEW

# EXHIBIT 2

# iLien Cover Page

Date Printed:  06/01/2022

Debtor:
Pirch, Inc.
2714 Loker Avenue
Carlsbad, CA  92010

lease num:  Pirch 10807-001
REF2:  Pirch 10807-001
REF3:
REF4:
Ref5:
Ref6:
Ref7:
Law Firm Bill Code:

iLien File #:  83103534
Order Confirmation #:  86840723

UserID:  324741
UserName:  KATIE MICHALEK
Number of Collateral Pages Attached:  0

Transaction Type:  Original
Jurisdiction:  CA, Secretary of State

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**Lien Solutions**
Representation of filing

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER** (optional)
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)    14994 - First Financial

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

86840723

CALI

File with: Secretary of State, CA

**This filing is Completed**
File Number : U220198341636
File Date   : 31-May-2022

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Pirch, Inc. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2714 Loker Avenue | Carlsbad | CA | 92010 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| First Financial Holdings, LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 750 The City Drive S., Ste. 300 | Orange | CA | 92868 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All equipment referenced in Equipment Schedule No. 10807-001 to Master Lease Agreement No. 10807 dated as of May 25, 2022, between First Financial Holdings, LLC, as Lessor, and Pirch, Inc. as Lessee, whether now owned or hereafter acquired, together with all substitutions, proceeds, accessions, attachments and additions thereto.  This UCC-1 financing statement is filed pursuant to Section 9-408 of the Uniform Commercial Code for informational purposes only.  The transaction covered by this UCC-1 is intended by the Lessor and Lessee to be a True Lease.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction    ☐ Manufactured-Home Transaction    ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien    ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☒ Lessee/Lessor    ☐ Consignee/Consignor    ☐ Seller/Buyer    ☐ Bailee/Bailor    ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
86840723              Pirch 10807-001                                        Pirch 10807-001

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# iLien Cover Page

Date Printed: 06/11/2022

Debtor:
Pirch, Inc.
2714 Loker Avenue
Carlsbad, CA  92010

lease num: Pirch 10807-001
REF2:  Pirch 10807-001
REF3:
REF4:
Ref5:
Ref6:
Ref7:
Law Firm Bill Code:

iLien File #:  83488540
Order Confirmation #:  87050053

UserID:  324741
UserName:  KATIE MICHALEK
Number of Collateral Pages Attached:  1

Transaction Type:  Collateral Amendment
Jurisdiction:  CA, Secretary of State

Mail Address (Please send attachments to):
CT Lien Solutions
330 N. Brand Blvd Suite 700
Glendale, CA 91203
FAX: 818-662-4141

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**Lien Solutions**
Representation of filing

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141 |

**This filing is Completed**
File Number : U220201236518
File Date   : 10-Jun-2022

| B. E-MAIL CONTACT AT FILER (optional) |
| uccfilingreturn@wolterskluwer.com |

| C. SEND ACKNOWLEDGMENT TO: (Name and Address)   14994 - First Financial |

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

87050053
CALI

File with: Secretary of State, CA

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
| U220198341636   5/31/2022   SS CA | (or recorded) in the REAL ESTATE RECORDS |
| | Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**
Check one of these two boxes:                        AND  Check one of these three boxes to:
This Change affects ☐ Debtor or ☐ Secured Party of record   ☐ CHANGE name and/or address: Complete   ☐ ADD name: Complete item   ☐ DELETE name: Give record name
                                                            item 6a or 6b; and item 7a or 7b and item 7c   7a or 7b, and item 7c   to be deleted in item 6a or 6b

| 6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b) |
| 6a. ORGANIZATION'S NAME |

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) |
| 7a. ORGANIZATION'S NAME |

OR

| 7b. INDIVIDUAL'S SURNAME |
| INDIVIDUAL'S FIRST PERSONAL NAME |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

8. ☒ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☒ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:
Equipment Schedule No. 10807-001 to Master Lease Agreement No. 10807 dated as of May 25, 2022, includes the equipment on the attached Exhibit A whether now owned or hereafter acquired, together with all substitutions, proceeds, accessions, attachments and additions thereto. This UCC-1 financing statement is filed pursuant to Section 9-408 of the Uniform Commercial Code for informational purposes only. The transaction covered by this UCC-1 is intended by the Lessor and Lessee to be a True Lease.

| 9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment) |
| If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor |
| 9a. ORGANIZATION'S NAME |
| First Financial Holdings, LLC |

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 10. OPTIONAL FILER REFERENCE DATA: Debtor Name: Pirch, Inc. |
| 87050053        Pirch 10807-001 | Pirch 10807-001 |

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

Exhibit A to UCC-3
to Equipment Schedule 10807-001

| Equipment Location | Qty | Vendor | Mfr. | Model | Equipment Descripton | Serial No. |
|---|---|---|---|---|---|---|
| 2701 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | LINDE | V15P 5215 | Order Pickers | C25215Y00323 |
| 2702 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | LINDE | V15P 5215 | Order Pickers | C25215Y00357 |
| 2703 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | LINDE | V15P 5215 | Order Pickers | C25215Y00506 |
| 2704 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100352 |
| 2705 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100353 |
| 2706 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100354 |
| 2707 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100618 |
| 2708 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100356 |
| 2709 S Harbor Boulevard, Santa Ana, CA 92704 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 231110359 |
| 77588 El Duna Court, STE  E, Palm Desert, CA 92211 | 1 | Total Warehouse | LINDE | V15P 5215 | Order Pickers | C25215Y00246 |
| 77588 El Duna Court, STE  E, Palm Desert, CA 92211 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100915 |
| 77588 El Duna Court, STE  E, Palm Desert, CA 92211 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100916 |
| 77588 El Duna Court, STE  E, Palm Desert, CA 92211 | 1 | Total Warehouse | Big Joe | Lithium ION | Sitdown LXE-44 | 2311100357 |