ANTHONY J. NAPOLITANO (SBN: 227691)
anapolitano@buchalter.com
BUCHALTER, a Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-1730
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

DENISE FIELD (SBN: 227691)
dfield@buchalter.com
BUCHALTER, a Professional Corporation
425 Market Streeet, Suite 2900
San Francisco, California 94105
Telephone: (415) 227-0900
Facsimile: (415) 227-0770

Attorneys for secured creditor
SUB-ZERO GROUP WEST, INC.

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PIRCH, INC.,<br><br>  Debtor. | Case No. 24-01376-CL7<br><br>Chapter 7<br><br>RS No. BPC-001<br><br>**SUB-ZERO GROUP'S OMNIBUS REPLY TO (I) THE TRUSTEE'S OPPOSITION TO SUB-ZERO GROUP'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY; AND (II) LOMBARDI CONSTRUCTION'S OPPOSITION TO SUB-ZERO GROUP'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>[Declaration of Anthony J. Napolitano and Request for Judicial Notice submitted concurrently herewith]<br><br>**Hearing Date:**<br>Date:     June 28, 2024<br>Time:    10:30 a.m.<br>Place:    U.S. Bankruptcy Court<br>            Department 1<br>            325 West F Street<br>            San Diego, California 92101<br>Judge:   Hon. Christopher B. Latham |

BN 83076163v4

1    Sub-Zero Group, Inc., a Wisconsin corporation, as successor by merger to Sub-Zero Group West, Inc., a California corporation, doing business as Sub-Zero Group West ("Sub-Zero"), secured creditor of Pirch, Inc. ("Pirch"), submits this reply (the "Reply") to (1) the *Trustee's Opposition to Motion for Relief from Automatic Stay* [Docket No. 176] (the "Trustee's Opposition") filed by Leslie T. Gladstone, as chapter 7 trustee of the Debtor's bankruptcy estate (the "Trustee"), and (2) the *Limited Objection to Motions for Relief from the Automatic Stay and to Allow Credit Bidding* [Docket No. 203] (the "Lombardi Opposition") filed jointly by Lombardi Construction, Inc. and Chris Sznewajs in opposition to Sub-Zero's *Motion for Relief from the Automatic Stay* [Docket No. 89] (the "Stay Relief Motion") as follows.

## I.  INTRODUCTION

The Trustee's Opposition presents a litany of arguments against granting relief from the automatic stay that are not supported by the law or facts and appear to be an attempt to support certain unsecured creditors over a secured creditor that has established the elements for relief from the automatic stay. The Trustee fails to refute or even address the substantial weight of evidence that supports granting relief from stay. In fact, the Trustee's Opposition is even devoid of any statutory discussion or case law germane to relief from stay under section 362(d). While the Trustee raises inconsequential and irrelevant arguments centered on disallowance under section 502(d) and surcharge under section 506(c), neither of these arguments overcomes the Trustee's burden under section 362(g) to demonstrate that relief from stay is not warranted.

Relief from the automatic stay is mandatory when: (1) the movant demonstrates "cause," or (2) the movant shows that the debtor has no equity in the property and that property is not necessary for an effective reorganization. Sub-Zero has met its prima facia requirements under section 362(d)(1) and (d)(2) and has satisfied its burden to establish lack of equity under section 362(g). The Trustee's Opposition, as confident as it may seem, does not overcome this showing in the least. Thus, the Court must grant Sub-Zero's Stay Relief Motion.

The Trustee's Opposition rests on three primary arguments. First, the Trustee claims that Sub-Zero did not give adequate notice of the Stay Relief Motion. The Trustee is wrong. The Proof of Service for the Stay Relief Motion unequivocally demonstrates that Sub-Zero properly served

all parties required to receive notice under applicable bankruptcy rules and even the Trustee's own order limiting notice. Second, the Trustee argues that Sub-Zero's claim is the subject of a bona fide dispute. This argument is not well taken. Whether Sub-Zero's claim is truly the subject of a bona fide dispute, or allowed in full, is immaterial to the analysis required under section 362(d). Sub-Zero is a party in interest entitled to relief from the automatic stay and, tellingly, the Trustee has cited no statute or case law to refute that point. Finally, the Trustee suggests that relief from the automatic stay cannot be granted because Sub-Zero may be the target for preference litigation at some point in the future. Again, the Trustee cites no authority for her conjecture and ultimately concludes "Sub-Zero's claim as alleged in Claim No. 60 should not be considered conclusive or allowed." These arguments do not move the proverbial needle.

Unfortunately, it seems that the Trustee conflates a number of issues related to stay relief, her pending section 363 sale and lease assignment motions, and her desire for expediency to support her opposition. The Trustee's myopic focus on "bona fide" dispute and disallowance for credit bidding has no bearing on the relief from stay analysis. For the convenience of the Court, Sub-Zero has prepared the following flowchart as a suggested order of sequence at the hearing.



Sub-Zero's 25-page Stay Relief Motion, six supporting declarations and related exhibits, and request for judicial notice, supports three very clear bases for relief from the automatic stay under section 362(d)(1) and (2). It is undisputed that the estate, with Sub-Zero's $4.2 million claim secured by at best $3.1 million in collateral, has no equity in the Inventory Collateral[1] or the Display Units. The Trustee concedes as much: "Sub-Zero's claims are significantly <u>under</u>secured." *See* Trustee's Opp., p. 5, ln. 22-23 (emphasis in original). In nine pages of briefing, the Trustee makes no mention of section 362(d) or the bases from relief from the automatic stay. Because the Trustee has not met her burden under section 362(g), relief from the automatic stay is mandatory and the Stay Relief Motion must be granted.

## II.    ARGUMENT

### A.    Sub-Zero satisfied all of the notice requirements under the applicable Bankruptcy Rules and the Trustee's Order Limiting Notice.

Not only did Sub-Zero satisfy all of the notice requirements for filing its Stay Relief Motion under the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Southern District's Local Bankruptcy Rules (the "LBRs"), it also complied with the notice requirements under the Trustee's own order limiting notice. Under Bankruptcy Rule 2002(a), parties are required to give notice to the debtor, the trustee, all creditors, and indenture trustees of nine specific filings. Motions for relief from stay are not included in those specified filings. FED. R. BANKR. P. 2002(a). Rather, Bankruptcy Rule 4001(a) governs the service of a motion for relief from the automatic stay. For chapter 7, that rule requires the motion to be served on "any committee elected pursuant to § 705 . . . and on such other entities as the court may direct." FED. R. BANKR. P. 4001(a)(1).[2]

Bankruptcy Rule 4001(a)(1) cross-references Rule 9014, which provides that notice and an opportunity to be heard for a motion in a contested matter "shall be afforded [to] the party against whom relief is sought." FED. R. BANKR. P. 9014(a). Providentially, the Local Bankruptcy Rules provide guidance for serving motions for relief from the automatic stay. LBR 4001-2 requires, in pertinent part, that motions for relief from stay must be served on

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Stay Relief Motion.
[2] When the Stay Relief Motion was filed, no chapter 7 committee had been formed. Now that a committee has been allegedly formed, see Docket No. 172, Sub-Zero will serve this reply brief on those (potential) committee members.

BN 83076163v4                                    3
**SUB-ZERO GROUP'S REPLY TO TRUSTEE'S OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

> the debtor, co-debtor, any counsel for the debtor, any counsel for the co-debtor, any counsel for the trustee, the U.S. Trustee, other Entities or Individuals entitled to receive notice of default or notice of sale under applicable non-bankruptcy law governing foreclosure of real or personal property which is the subject of the motion, and any parties entitled to service pursuant to FRBP 4001(a)(1).

L. BANKR. R. 4001-2(b).

Cognizant of the undue burden of having over 4,300 parties in interest in this chapter 7 case, the Trustee filed her *Emergency Motion for Order Establishing Notice Procedures* [Docket No. 80] (the "Notice Motion"), which sought to "streamline the preparation and service of notices in this case . . . ." Notice Motion, p. 2, ln. 1-2, a copy of which is attached as Exhibit 1 to the concurrently filed Request for Judicial Notice (the "RJN"). The Trustee further declared that:

> It would be impractical and would impose an enormous administrative and economic burden upon the estate if the Trustee were required to mail notices of every matter in this case to all 4,379 entities listed on Debtor's creditor matrix, many of whom may have been added only out of an abundance of caution and may have minimal claims against the estate.

Notice Motion, p. 3, ln. 3-6. The Court granted the Notice Motion on May 23, 2024. *See* "Order Limiting Notice" [Docket No. 86], a copy of which is attached as Exhibit 2 to the RJN. Under the procedures approved by this Court, "notices regarding all matters or proceedings other than matters or proceedings referred to in Rules 2002(a)(1), (a)(4), and (a)(7) and (f) of the Federal Rules of Bankruptcy Procedures, need be served only upon the following parties:

a) The Office of the United States Trustee . . .;
b) Debtor's counsel . . .;
c) All secured creditors;
d) The Internal Revenue Service and the California Franchise Tax Board;
e) Debtor's creditors holding the 20 largest unsecured claims in the case;
f) Any creditor or interested party that files a request for special notice with the Court and properly serves that request on Trustee's counsel; and
g) Any entity against whom direct relief is sought, such as the non-debtor party to an executory contract or unexpired lease that is being assumed or rejected or entities asserting interest in property being sold.

*See* Order Limiting Notice p. 2 at ¶ 2.

A requirement to serve all creditors does not exist in any of the rules highlighted above— or even in the Trustee's own Notice Motion. For that reason, Sub-Zero did not serve all 4,300+ creditors of the bankruptcy estate. In all honesty, Sub-Zero provided more notice than is required

1  under the rules. Sub-Zero served its Stay Relief Motion on Pirch, Pirch's counsel, the Trustee, the
2  Trustee's counsel, the U.S. Trustee, the IRS, the California FTB, the ECF notice list for this case,
3  all parties that filed a Request for Notice, all creditors listed on Pirch's *Schedule D: Creditors*
4  *Holding Secured Claims*, all parties listed on a Certified UCC Search obtained by Sub-Zero, Pirch's
5  twenty largest unsecured creditors, and the consumers that filed competing stay relief motions. *See*
6  Proof of Service [Docket No. 105], a copy of which is attached as Exhibit 3 to the RJN.

   Interestingly, the Trustee uses three "examples" of parties that were not served with the
Stay Relief Motion: Rob Goe, Brian Summerfield, CP Fixtures Holdings, LLC. *See* Trustee
Opposition, p. 3, ln. 17-18 and p. 4, ln. 22-23. These examples are not well taken as the Proof of
Service clearly indicates that these parties were served. *See* RJN Exh. 3 (Docket No. 105) at ECF
pp. 4, 7 and 9.[3] Sub-Zero properly served the Stay Relief Motion. The Trustee's Opposition should
be overruled on that issue accordingly.

     **B.**    **The Trustee's legally irrelevant and factually incorrect arguments regarding the alleged dispute of Sub-Zero's claims have no bearing on the determination of a motion for relief from the automatic stay.**

     *1.*    *There is no dispute as to Sub-Zero's interest in the Display Units.*

   The Trustee claims that CP Fixture Holdings, LLC's lien has priority over Sub-Zero's lien
because Sub-Zero does not have a purchase money security interest. Trustee Opposition, p. 4,
ln. 20-23 and p. 5, ln. 11-15. This claim is erroneous because Sub-Zero's UCC-1 financing
statements were filed in February 2019 well before CP Fixture Holdings filed its UCC-1 in June
2020, a copy of which is attached as Exhibit 3 to the concurrently filed declaration of Anthony J.
Napolitano. The purchase money distinction is not relevant. Sub-Zero is first in time as to the
inventory described in its financing statements and has priority over CP Fixture Holdings.

     *2.*    *The Court should disregard the Trustee's unsupportable argument that a potential preference claim disqualifies a creditor from obtaining relief from stay.*

   The Trustee's rash argument that Sub-Zero's claim should be deemed "disallowed" because
of an unasserted, potential preference claim does not prevent Sub-Zero from seeking and obtaining

---

[3] Mr. Goe and his law firm represent himself and his wife as well as Brian Summerfield in this case.

BN 83076163v4                                5

1  relief from the automatic stay.  Without citing to any case law to support her proposition, the Trustee
2  seemingly argues that Sub-Zero cannot seek relief from the automatic stay because the estate may
3  have a preference claim against Sub-Zero.  *See* Trustee Opposition, Part B. and C.  Contrary to the
4  Trustee's legally unsupportable assertion, relief from the automatic stay need not be filed by a
5  movant with an allowed or undisputed claim.  In fact, the Bankruptcy Code only requires that a
6  motion for relief from the automatic stay be brought by a "party in interest."  *See* 11 U.S.C. 362(d);
7  *see also In re Kronemyer*, 405 B.R. 915, 919 (B.A.P. 9th Cir. 2009) ("Section 362(d) authorizes
8  the bankruptcy court to grant relief from the automatic stay '[o]n request of a party in interest.");
9  *In re Salazar*, 448 B.R. 814, 819 (Bankr. S.D. Cal. 2011) ("If the moving party has a right to assert
10 a claim even though the claim is disputed, standing to seek stay relief may be found.").

11         Notably, the Trustee has not disputed or attempted to challenge Sub-Zero's *secured* claim.
12 In fact, the Trustee readily acknowledges that Sub-Zero holds a $4.2 million claim secured by
13 collateral valued between $2.35 million and $3.15 million.  *See* Trustee Opposition, p. 5, ln. 18-23
14 ("Accordingly, Sub-Zero's claims are significantly under secured.") (emphasis in original).  Rather,
15 the Trustee focuses solely on a potential preference claim related to $4.3 million in payments
16 received within the 90-day period preceding Pirch's petition date.  Again, this has no bearing on
17 the relief from stay analysis.  Whether Sub-Zero may be subject to preference liability, whether
18 Sub-Zero may have a claim under section 502(h) and whether such claim would be disallowed
19 under section 502(d) has no relevance to its secured claim and right to seek relief from stay as a
20 "party in interest."

21         To be clear, the Trustee's Opposition does not challenge Sub-Zero's secured claim and lien
22 that are the basis for the Stay Relief Motion.  The Trustee's Opposition is devoid of any facts or
23 law that would call the $4.2 million secured claim into question such that Sub-Zero would be
24 precluded from seeking relief from stay.  There is nothing other than an unsubstantiated allegation
25 that there may be a $4.3 million preference action in the future.  Such an argument is not sufficient
26 under the relief from stay rubric.  As a practical matter, any debtor or trustee could easily force the
27 relief from stay process in any chapter 7 or chapter 11 case to come to a grinding halt merely by
28 raising the prospects of preference liability or filing a specious or premature claim objection.

1  Neither the Bankruptcy Code, the case law developed under section 362(d), nor actual bankruptcy
2  practice support the position that the Trustee has taken.

3        **C.    The Trustee's attempt to hold the Stay Relief Motion hostage with an unalleged section 506(c) surcharge claim is similarly misguided.**

5        The Trustee presents a different parade of horribles to persuade this Court to deny the Stay
6  Relief Motion or at least condition its approval. The Trustee cites to section 506(c) and the estate's
7  right to pursue a surcharge claim in support of this creative argument. Indeed, the Trustee states:
8  "Any relief from stay for Sub-Zero must be conditioned upon payment to the Trustee of reasonable,
9  necessary costs and expenses of preserving and turning over any subject property to Sub-Zero.
10 11 U.S.C. § 506(c)." Trustee's Opp., p. 6 ,ln. 25-27 (citation in original). But, section 506(c) does
11 not support that argument. Yes, it says that the "trustee may recover from property securing an
12 allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of,
13 such property . . . ." 11 U.S.C. § 506(c). But nowhere in that section or section 362(d), or the
14 applicable case law governing relief from stay motions, is there a requirement that payment of
15 surcharge be an impediment or a condition to relief from stay.

16       The Trustee will retain her section 506(c) surcharge rights if relief from stay is granted.
17 Sub-Zero will retain its rights to oppose that motion. And if the Court finds that surcharge is
18 warranted, then Sub-Zero will write a check and pay the surcharge amounts. All of this can (and
19 always does) take place independently from the relief from the automatic stay process.

20       **D.    Sub-Zero has satisfied its burden under Section 362(d)(1) and (d)(2); therefore, the Court must grant the Stay Relief Motion.**

21       In its Stay Relief Motion, Sub-Zero has made a prima facia showing that it is entitled to
22 relief under section 362(d)(1) and (d)(2). Moreover, Sub-Zero has established irrefutably that there
23 is no equity in the Inventory Collateral or the Display Units, which the Trustee readily concedes.
24 Trustee Opposition, p. 5, ln. 22-23 ("Sub-Zero's claims are significantly <u>under</u>secured.") (emphasis
25 in original). Accordingly, Sub-Zero has satisfied its burden of proof under section 362(g)(1). The
26 burden of proof then shifts to the Trustee for all other issues under section 362(g)(2). The Trustee
27 has not and cannot meet this burden. Moreover, the Trustee cannot satisfy Sub-Zero's request for
28 adequate protection under section 363(e). *See* RJN Exh. 4. Thus, stay relief must be granted.

BN 83076163v4          7

**SUB-ZERO GROUP'S REPLY TO TRUSTEE'S OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

1. *Relief from stay is warranted under section 362(d)(1) for "cause."*

Under section 362(d)(1), there is no equity in the Inventory Collateral or the Display Units, and the Trustee and Pirch's bankruptcy estate are not able to adequately protect Sub-Zero's interest in those goods. The Trustee's belief that she can establish cause can be found in Part II.F. of the Trustee's Opposition, where she states ""the only viable, fair and equitable way to resolve the competing claims of secured creditors and customer is to sell everything and resolve claims over the sales proceeds." Trustee's Opp., p. 7, ln.4-6. But how is that "adequate protection" of Sub-Zero's interests in the collateral?

The Trustee acknowledges that she has no ability to provide adequate protection through this statement: "In this chapter 7 liquidation, however, there is no operating business, no Pirch accounting and warehouse employees to continue processing orders, and most importantly, no time to resolve all the competing claims of secured creditors and angry customers before the administrative rent/storage charges eliminate any benefit to everyone except landlords." Trustee Opp., p. 7, ln. 10-14. So, what exactly are we doing here? Pirch cannot provide periodic payments to protect Sub-Zero's interest nor can it provide an additional or replacement lien or the indubitable equivalent of its collateral due to the blanket security interest held by CP Fixture Partners, LLC. Thus, all of the potential means of providing adequate protection under section 361(a) are not available. So, again, what are we doing here?

As established in the Stay Relief Motion, there is no equity cushion as Sub-Zero's secured claim of $4.2 million greatly exceeds the value of the collateral pegged to be not more than $3.15 million based on competent and credible declarations and documentary evidence. The estate as a liquidating chapter 7 estate cannot generate any unencumbered funds or property whatsoever to provide adequate protection of Sub-Zero's interest. The Trustee's Opposition does not controvert any of these. Accordingly, the Court must grant relief from stay under section 362(d)(1).

2. *Relief from stay is warranted under section 362(d)(2) for lack of equity and lack of necessity for an effective reorganization.*

Sub-Zero also satisfies the requirements for relief under section 362(d)(2). The first element regarding lack of equity has been established as noted above. The second element, that the property

1  is necessary for an effective reorganization, cannot be met since there can be no reorganization in
2  a chapter 7 case.  For purposes of section 362(d)(2), a debtor has no equity in the property when
3  the debts secured by liens on the property exceed the value of the property.  *See Stewart v. Gurley*,
4  745 F.2d 1194, 1195 (9th Cir. 1984).  Since there is no reorganization in a liquidation case, there
5  can be no argument that the Inventory Collateral and the Display Units are needed "for an effective
6  reorganization."  *See, e.g.*, *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983) (holding §
7  362(d)(2) is applicable in reorganization cases and inapplicable in chapter 7 liquidation).

8        The Trustee states that she "seeks a fair and equitable arrangement with Sub-Zero and other
9  similarly situated creditors to consent to the Trustee's auction procedures and sale of the inventory
10 and displays."  Trustee Opp., p. 8, ln. 3-5.  But how is it "fair and equitable" to force a secured
11 creditor to accept a sale at distressed pricing when it can better monetize its collateral through its
12 own means and dealer channels?  What makes the Trustee's proposal so galling is that her hurried
13 liquidation sale will assuredly result in a below market pricing and recovery for each item of
14 inventory to be sold.  The proposed sale will be on an "As-Is, Where-Is" basis with "[a]ll sales are
15 as-is, where-is, no representations, no warranties, no contingencies."  *See* Sale Motion [Docket
16 No. 90], p. 11, ln. 7-10.  *Id.* at p. 12, ln. 23-24.  Further, all sales will be "subject to a buyer's
17 premium equal to fifteen percent (15%), and applicable sales tax."  *Id.* at p. 13, ln. 26-28.  However,
18 Onyx intends to "initially focus on soliciting bulk offers from retailers / dealers, contractors, and
19 other regional professionals."  *Id.* at p. 11, ln. 14-16.

20       The foregoing pool of buyers will expect significant discounts considering that the product
21 will be sold without a warranty, there will be a 15% commission imposed on the sale, and any bulk
22 purchaser will be looking to purchase the product at a significant discount so that they could earn
23 a worthwhile profit on their resale of the product.  All of these factors lead to a significantly below
24 market distressed auction process, where the Inventory Collateral even at manufacturer suggested
25 retail pricing (which nobody would pay without a warranty and a 15% premium) is well below
26 Sub-Zero's $4.2 million secured claim.  Again, how is the Trustee's proposal fair and equitable to
27 a secured creditor with collateral that has no equity benefits for the debtor's estate?  As the *Takeout
28 Taxi Holdings, Inc.* court astutely observed and stated,

> if the sale of the collateral will result in a deficiency, the secured creditor generally should be able to dispose of it according to the security agreement. It is of no benefit to the unsecured creditors and, if the secured lender is to suffer a loss, he should ordinarily be permitted to suffer the loss at his own hands.

307 B.R. 525, 533-34 (Bankr. E.D. Va. 2004). It would be extremely inequitable to force Sub-Zero to accept reduced proceeds at distressed prices on its collateral where there would be no benefit to the bankruptcy estate. The Trustee has not met her burden under section 362(g)(2) to preclude granting the Stay Relief Motion under section 362(d)(2). There is no equity in the Inventory Collateral or the Display Units and that property is not necessary for an effective reorganization in this chapter 7 case. Thus, the Stay Relief Motion must be granted.

### E. Lombardi Construction has not established a superior interest.

The resulting trust cases cited in the Lombardi Opposition do provide for an interest superior to Sub-Zero's interest in the Inventory Collateral. *In re Sale Guar. Corp.* deals with transfers of real property where the debtor took title to them as an accommodator for a § 1031 tax exchange prior to transferring them to the creditors who sought the resulting trust. 220 B.R. 660 (B.A.P. 9th Cir. 1998). *Lezinsky v. Mason Malt Whiskey Distilling Co.* involved a successor liability case where certain former shareholders of "Old Co" were able to impose a resulting trust on the shareholders of "New Co" where they were part of a mere continuation / successor liability scheme to transfer the assets from the old entity to the new entity. 185 Cal. 240 (Cal. 1921). And *In re Golden Triangle Capital* involved funds held by a loan servicer with a resulting trust being imposed on funds it held during a loan clearing process. 171 B.R. 79 (B.A.P. 9th Cir. 1994). None of these cases involved the sale of goods or dealt with the requirements of specific identification of goods under section 2501 and 2502 of the Commercial Code. They are not relevant to this matter.

### III. CONCLUSION

Based on the foregoing, Sub-Zero respectfully requests that the Court overrule the Trustee's Opposition and the Lombardi Opposition and grant its Stay Relief Motion.

DATED: June 14, 2024                         BUCHALTER, a Professional Corporation

                                             By:   /s/ *Anthony J. Napolitano*
                                                   ANTHONY J. NAPOLITANO
                                             Attorneys for secured creditor SUB-ZERO GROUP, INC.