Dustin P. Branch (Cal. Bar No. 174909)
Nahal Zarnighian (Cal. Bar No. 315508)
Sara Shahbazi (Cal. Bar No. 351498)
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350
E-mail: branchd@ballardspahr.com
E-mail: zarnighiann@ballardspahr.com
E-mail: shahbazis@ballardspahr.com

and

Laurel Roglen (DE No. 5759)
**BALLARD SPAHR LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Telephone: 302.252.4465
Facsimile: 302.252.4466
E-mail: roglenl@ballardspahr.com

Attorneys for Landlord Creditor
CRC SOCO, LLC

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**SAN DIEGO DIVISION**

| | |
|---|---|
| In re | ) Chapter 7 |
| PIRCH, INC., | ) Case No.: 24-01376-CL7 |
| Debtor(s). | ) **LIMITED OBJECTION OF CRC SOCO, LLC TO THE TRUSTEE'S MOTION TO (1) APPROVE AUCTION PROCEDURES; AND (2) SELL LEASEHOLD INTERESTS AND RELATED PERSONAL PROPERTY PURSUANT TO 11 U.S.C. SECTION 363, FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | ) Hearing |
| | ) Date:   July 1, 2024 |
| | ) Time:   10:30 a.m. |
| | ) Dept:   1 |
| | ) Hon. Chief Judge Christopher B. Latham |

1

**LIMITED OBJECTION TO LEASE SALE MOTION**

CRC SOCO, LLC ("**Landlord**"), by and through their undersigned counsel, hereby submit this limited objection (the "**Objection**") to the *Trustee's Motion to (1) Approve Auction Procedures; and (2) Sell Leasehold Interests and Related Personal Property Pursuant to 11 U.S.. Section 363, Free and Clear of Liens, Claims, and Interests* (Docket No. 128) (the "**Motion**"). In Support of this Objection, Landlord respectfully states as follows:

## I.   BACKGROUND FACTS

1. On April 19, 2024, (the "**Petition Date**"), Pirch, Inc. (the "**Debtor**") filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of California ("**the Bankruptcy Court**").  Leslie T. Gladstone was subsequently appointed by the U.S. Trustee as the chapter 7 Trustee for the Debtor's estate (the "**Trustee**").

2. The Debtor leases retail space located at 3303 Hyland Avenue, Costa Mesa, California 92626 (the "**Premises**") from the Landlord pursuant to an unexpired lease of nonresidential real property (individually, a "**Lease**").

3. Upon information and belief, the Debtor ceased operating at the Premises on or about March 20, 2024, but remains in possession of the Premises with Debtors property inside, and neither the Debtor nor the Trustee has not surrendered the Premises to the Landlord.

4. The Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3).  See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

5. On June 3, 2024, the Trustee filed the Motion seeking, among other things, authority to assume and assign the Lease to Ferguson Enterprises, Inc. ("**Ferguson**") or any other potential overbidder, the identity of whom are not known at this time.

6. Landlord's Lease is not one of the leases sought to be rejected pursuant to the Motion, as the Trustee asserts that she believes the Lease has value and she would like to try to sell the Lease.  However, Landlord files this Objection because it is unclear whether the requested abatement of rent for the post-petition portion of April 2024 or for any other post-petition obligations arising under the Lease until the Lease is assumed or rejected applies solely to the proposed rejected leases or also to Landlord's Lease.

2
**LIMITED OBJECTION TO LEASE SALE MOTION**

## II. CURE OBJECTION

### a. The Trustee's propose cure amount for the Lease fails to provide for the payment of all obligations due under the Lease.

7. The Motion states that as of the date thereof, the amount necessary to cure all monetary defaults in connection with the Lease was $227,948.00. As reflected on the attached **Exhibit A**, the actual amount that will be due and outstanding under the Lease by the scheduled hearing to consider the sale is $374,348.19, subject to additional costs and expenses that may become due and owing under the Lease.[1]

8. In addition to the current outstanding rent and other monthly charges due under the Lease, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid by the Debtors, either as cure or when properly billed under the Leases.

### i. Year-end Adjustments and Reconciliations

9. In addition to rent and related monthly charges, attorneys' fees, costs and interest, some charges for which the Debtor bears responsibility under the Lease may have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. By way of example, the Debtor occupies retail space at the pursuant to a triple-net lease, where they typically pay rent and related lease charges in advance for each month. The Debtor pays fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like. Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred at the center. To the extent the estimated payments exceed actual charges, the result is a credit to the tenant. To the extent these estimated payments do not cover

---

[1] The Landlord's cure does not include charges that are billed or come due after the filing of this Objection or charges that are billed directly to the Debtor, including in some cases, real estate taxes. To the extent Landlord is later billed for any amount due to the Debtor's failure to pay, Landlord reserves the right to amend the Objection to include such amounts. The Trustee must timely pay all rent and other lease charges as they come due under the Lease, and the Landlord reserves the right to payment (and to amend this Objection to the extent necessary) for any amounts that come due under the Lease through the date of any cure payment.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

actual charges incurred under the Lease, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e., year-end reconciliations and adjustments that accrued through 2023 may not yet have been billed under the Lease, and such charges that are accruing for 2024 will not be billed until 2025). In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end. Since these accrued, but unbilled, charges are not yet due under the Lease, they do not create a current default that gives rise to a requirement of cure by the Trustee at this time.

### ii.  Attorneys' Fees, Costs, and Interest

10. The Lease contains provisions for recovery of attorneys' fees, costs, and interest in the event the Landlord is required to take legal action to protect its interests. The Trustee is obligated to cure all defaults under the Lease, and compensate the Landlord for their actual pecuniary losses as a result of defaults under the Lease. See 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. In re LCO Enterprises, 12 F.3d 938, 941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*).

11. The any assignee takes the Lease *cum onere* – subject to existing burdens. The Trustee cannot assume the favorable portions, and reject the unfavorable provisions, of the Debtor's Leases. In re Washington Capital Aviation & Leasing, 156 B.R. 167,172 (Banks. E.D. Va. 1993). If forced to continue in the performance of the Lease, the Landlord is entitled to the full benefit of the bargain under its Lease with the Debtor. See Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996). The "full benefit of the bargain" principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." In re Entm't, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%). Interest

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

4

**LIMITED OBJECTION TO LEASE SALE MOTION**

on pre-petition lease charges continues to run from the filing of the Debtor's petition and must be paid as a condition of the assumption of the Lease. See In re Skylark Travel, Inc., 120 B.R. 352-55 (Bankr. S.D.N.Y. 1990). Interest calculations are therefore not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlord for the Debtor's default under the Lease, and thus to properly assume the Lease. Finally, post-petition interest is allowable where such interest is provided for under the terms of the Lease. Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

12. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the any assignee must satisfy these lease charges as part of the assumption or assumption and assignment of the Lease. In re Entm't, Inc., 223 B.R. at 152 (citation omitted). There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Id. 154. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). Id., see also In re Crown Books Corp., 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Properties v. Loews Cineplex Entm't Corp., et al., 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.), 167 F.3d 843, 850 (4th Cir. 1999). The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law. Travelers Casualty & Surety Co. Of America v. Pacific Gas & Electric, 127 S. Ct. 1199, 1206 (2007).

5
**LIMITED OBJECTION TO LEASE SALE MOTION**

### iii. The Cure Amount Serves Only as an Estimate

13. Landlord can only provide the information presently available regarding amounts that the Debtors owe, while reserving the right to amend this limited objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations. There is no basis to impose upon the Landlord the equivalent of an administrative bar date, limiting its recourse to recover charges to which they are entitled under the Lease.

### iv. The Trustee or Any Assignee Must Pay Undisputed Cure Amounts Immediately

14. Section 365(b)(1)(A) requires that the Trustee promptly cure outstanding balances due under the Lease upon assumption or assumption and assignment. To the extent there is a dispute over the total cure obligation for the Lease, all undisputed cure amounts should be paid immediately. Trustee should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption or assumption and assignment of the Lease to deal with any disputes that remain unresolved after such period.

## III. LIMITED OBJECTION TO SALE AND ASSUMPTION AND ASSIGNMENT AND RESERVATION OF RIGHTS

### a. The Trustee must demonstrate adequate assurance of future performance to assume and assign the Lease to any proposed purchaser.

15. Landlord recently received adequate assurance information from Ferguson, which they are presently evaluating. Should there be any issues with the information provided, Landlord hopes to resolve those issues prior to the Sale Hearing. Nonetheless, in the event that any issues cannot be resolved, Landlord files this limited objection to reserve its rights to raise any of the issues herein or other or further objections at the Sale Hearing, in addition to any issues pertaining to an overbidder other than Ferguson.

16. The Trustee may not assume and assign the Lease unless they demonstrate adequate assurance of future performance. 11 U.S.C. § 365(b)(1)(C); see also 11 U.S.C. § 365(f)(2). The provision of adequate assurance of future performance is an affirmative duty of the Trustee, and the Trustee bears the ultimate burden of persuasion as to issues under Section

6
**LIMITED OBJECTION TO LEASE SALE MOTION**

365. See In re Rachels Industries, Inc., 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); see also Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985). The obligation to comply with Section 365(b) and Section 365(f) is unaffected by the assumption and assignment process taking place through a sale under Section 363. Courts require a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. See e.g., Matter of Haute Cuisine, Inc., 58 B.R. 390 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented).

17.  In this case, the Lease is a shopping center lease and, as such, the Bankruptcy Code requires more than the basic adequate assurance of future performance of the Lease under Section 365(b)(1)(C). In re Sun TV and Appliances, Inc., 234 B.R. 356, 359 (Bankr. D. Del. 1999). In order to assume and assign shopping center leases, the Trustee must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A) - (D). See Joshua Slocum, 922 F.2d at 1086; see also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.), 209 F.3d 291, 299 (3d Cir. 2000). The heightened adequate assurance requirements that the Trustee must satisfy under Section 365(b)(3) include the following:

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. See 11 U.S.C. § 365(b)(3)(A);

- that any percentage rent due under the lease will not decline substantially. See 11 U.S.C. § 365(b)(3)(B);

- that assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. See 11 U.S.C. § 365(b)(3)(C); and

- that assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. See 11 U.S.C. § 365(b)(3)(D).

18.  This heightened adequate assurance of future performance determination must be satisfied in connection with an assumption and assignment under Section 365(f)(2)(B). Sun TV and Appliances, Inc., 234 B.R. at 370. In connection with the heightened adequate assurance

7
**LIMITED OBJECTION TO LEASE SALE MOTION**

requirement for shopping center leases, courts also require a specific factual showing through competent evidence to determine whether the Trustee has provided adequate assurance of future performance. Matter of Haute Cuisine, Inc., 58 B.R. at 394.

19. As stated, Landlord is still reviewing the adequate assurance information provided by Ferguson to determine whether it adequately demonstrates Ferguson's ability to perform under the Lease and complies with BankruptcyCode requirements. Strict proof is demanded. Thus, Landlord files this limited objection to reserve its rights to raise any adequate assurance issues concerning Ferguson at the Sale Hearing following its review. Landlord also reserves all such rights in the event that a different overbidder is successful at the auction.

**b. Any assumption and assignment must comply with the terms of the Lease.**

20. Through the BAPCPA amendments, "Section 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code does not override Section 365(b)." Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005). In explaining the change to Section 365(f)(1), Senator Hatch stated:

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center. When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored. Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

21. The changes embodied in the BAPCPA specifically preserve a landlords' right to enforce use and other lease provisions. Again, Senator Hatch's remarks in the Congressional Record clarify the intent behind Section 365(b) and 365(f):

> A shopping center operator . . . must be given broad leeway to determine the mix of retail tenants it leases to. Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy. It is my understanding that some bankruptcy judges have not followed this mandate. Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the assignment of a lease even though terms of the lease are not being followed. (emphasis added).

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

22. BAPCPA clarified Section 365 to reflect the Congressional intent that debtors cannot use Section 365(f)(1) to void lease provisions, and to overrule those prior court decisions that did not strictly enforce lease terms. The predicate to the limited ability to assign a lease over a landlord's objection under Section 365(f) is that such assignment must be subject to the protections of Section 365(b)(1) and (3).

23. Section 365(f)(1) does not modify or override Section 365(b). <u>Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.)</u>, 367 F.3d 237, 243-44 (4th Cir. 2004) (bankruptcy courts could not use the general anti-assignment provision of Section 365(f)(1) to trump the specific protections granted to landlords in Section 365(b)(3)(C)). Any assignment must remain subject to all provisions of the Lease, including those provisions concerning use, radius, exclusivity, tenant mix and balance. To the extent that Ferguson does not intend to comply with use or other provisions of the Lease, or to the extent that another successful bidder prevails, Landlord reserves its rights to object to any such issues at the Sale Hearing.

  **c. Any sale must not be free and clear of obligations to pay all charges due under the Lease, including unbilled year-end adjustments and reconciliations, and any indemnification obligations.**

24. Any sale "free and clear" must exclude all obligations to satisfy unbilled taxes, reconciliations, percentage rent, or other year-end adjustments or unbilled charges that may have accrued under the Lease prior to the assignment of the Lease, or are accruing, but which have not yet been billed. The Trustee and/or any proposed purchaser continue to be responsible for <u>all</u> unbilled charges as they come due under the Lease, and the Trustee and/or the purchaser must continue to satisfy all charges due under the Lease, including charges which have not yet been billed, reconciled and/or adjusted from pre-petition (or even post-petition) periods. Any assumption and assignment of the Lease cannot cut off Landlord's rights to recover unbilled charges that have accrued, or are accruing, under the Leases. This is impermissible in the context of the assumption and assignment of the Leases, and the Landlords request that any final sale or assumption and assignment order ensure that their right to payment of these charges is preserved.

25. Moreover, the Lease requires the Debtor to indemnify and hold the Landlord harmless with respect to any existing claims which may not become known until after the

9
**LIMITED OBJECTION TO LEASE SALE MOTION**

assumption and assignment of the Lease, examples of which may include such claims as personal injuries at the Premises and damage to the Premises by the Debtor or its agents. Any final order must provide that the assumption and assignment is pursuant to the terms of the Lease, including that any assignee continues to be responsible for all such indemnification obligations, regardless of when they arose. In the alternative, the Trustee must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Lease for any such claims that relate to the period prior to any assumption and assignment of the Lease. These charges and obligations must survive the assumption and assignment of the Lease, and any order should be clear that the purchaser will inherit the responsibility for all unbilled charges that may come due under the Lease, as well as the indemnity obligations existing under the Lease.

### d. Additional security.

26.     If the proposed purchaser following the auction does not possess sufficient operating experience or capitalization to satisfy the Landlord's requirements, the assignee should provide some type of credit enhancement as part of its adequate assurance of future performance demonstration, such as: (i) a guaranty of future performance from a financially capable parent entity; (ii) a letter of credit; or (iii) a cash security deposit. Pursuant to Section 365(l), the Landlord may require a security deposit or letter of credit as security for the performance of the assignee's obligations under the Lease in the event that the assignee fails to perform on a going-forward basis. This is a reasonable condition of demonstrating adequate assurance of future performance under these circumstances.

### e. Assumption and Amendment Agreement.

27.     Landlord requests that, as a condition to any order approving assumption and assignment of Landlord's Lease, any assignee shall be required to enter into a short form Assumption and Amendment Agreement whereby the assignee shall become directly obligated to Landlord under the provisions of Landlord's Lease. A form of Assumption and Amendment Agreement will be made available upon request.

### IV. JOINDER

28. To the extent consistent with the objections expressed herein, Landlord also joins in the objections of other shopping center lessors to the Trustee's proposed relief.

### V. CONCLUSION

The Landlord respectfully requests that any sale or assumption and assignment order (i) allow the cure amounts (subject to adjustment by the Landlord) in the amounts set forth herein, (ii) order payment of all undisputed cure amounts, with an escrow established that is sufficient to pay any remaining disputed cure amounts, when resolved by the parties or this Court, (iii) order compliance with all Lease provisions, additional security to Landlord, as necessary, to satisfy adequate assurance requirements, and that any assignee enter into a short form Assumption and Amendment Agreement; and (iv) grant the other relief requested herein.

Dated: June 17, 2024

**BALLARD SPAHR LLP**

By: /s/Sara Shahbazi
Dustin P. Branch (Cal. Bar No. 174909)
Nahal Zarnighian (Cal. Bar No. 315508)
Sara Shahbazi (Cal. Bar No. 351498)
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350
E-mail: branchd@ballardspahr.com
E-mail: zarnighiann@ballardspahr.com
E-mail: shahbazis@ballardspahr.com

and

Laurel Roglen (DE No. 5759)
**BALLARD SPAHR LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Telephone: 302.252.4465
Facsimile: 302.252.4466
E-mail: roglenl@ballardspahr.com

Attorneys for Landlord Creditor
CRC SOCO, LLC