ANTHONY J. NAPOLITANO (SBN: 227691)
    anapolitano@buchalter.com
BUCHALTER, a Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-1730
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

DENISE FIELD (SBN: 111532)
    dfield@buchalter.com
BUCHALTER, a Professional Corporation
425 Market Streeet, Suite 2900
San Francisco, California 94105
Telephone: (415) 227-0900
Facsimile: (415) 227-0770

Attorneys for secured creditor
SUB-ZERO GROUP, INC.

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PIRCH, INC.,<br><br>        Debtor.<br><br>LESLIE T. GLADSTONE, as CHAPTER 7 TRUSTEE,<br><br>        Moving Party<br><br>SUB-ZERO GROUP, INC.,<br><br>        Respondent | Case No. 24-01376-CL7<br><br>Chapter 7<br><br>**SUB-ZERO GROUP'S OPPOSITION TO THE CHAPTER 7 TRUSTEE'S MOTION TO (1) APPROVE AUCTION PROCEDURES; AND (2) SELL LEASEHOLD INTERESTS AND RELATED PERSONAL PROPERTY PURSUANT TO 11 U.S.C. § 363, FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS**<br><br>[Request for Judicial Notice, Appendix of Unpublished Authorities, and Declarations of Mark Zavras, Kelly Ciulla, Barry Bredvik, Mark Marshall, Keene Kohrt, and Anthony Napolitano concurrently filed]<br><br>**Hearing:**<br>Date: July 1, 2024<br>Time: 10:30 a.m. PDT<br>Place: U.S. Bankruptcy Court<br>       Department 1<br>       325 West F Street<br>       San Diego, California 92101<br>Judge: Hon. Christopher B. Latham |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS .................................................................................... 3

    A.    Pirch enters into a series of agreements to sell Sub-Zero's products and to obtain such inventory under credit ................................................................ 3

        1.    Sub-Zero holds a senior, perfected purchase money security interest in its inventory held by Pirch for sale. ......................................................... 3

        2.    Sub-Zero either owns the Display Units outright or holds a senior, perfected security interest in all of the Display Units held by Pirch. .......... 4

        3.    Pirch's defaults to Sub-Zero under the Credit Agreement, the Security Agreement and the Display Unit Agreement. ............................................. 5

    B.    The value of Sub-Zero's Inventory Collateral and Display Units is less than the amount of Sub-Zero's secured claim. ...................................................... 5

        1.    Sub-Zero conducted an audit of the inventory held by the Debtor at its primary and a secondary distribution centers. ........................................... 5

        2.    The actual value of Sub-Zero's Inventory Collateral is well below the amount of the secured claim. .......................................................... 8

        3.    The estimated value of the Display Units located at Pirch's retail Showrooms. ........................................................................................ 8

        4.    The Display Units were generally available at many other retail locations. ......................................................................................... 10

    C.    Following the abrupt cessation of Pirch's business, Pirch commenced its chapter 7 bankruptcy case. ............................................................. 11

    D.    The Trustee files the Lease Motion seeking to sell locations (including the Display Units) to Ferguson. ............................................................ 12

III.  ARGUMENT ...................................................................................................... 12

    A.    The Trustee cannot sell the Property free and clear under Section 363(f)(4) as there is no bona fide dispute as to Sub-Zero's lien. ......................................... 13

    B.    The Trustee cannot sell the Display Units free and clear under Section 363(f)(5) as there is no benefit to the estate given the substantial amount of Sub-Zero's secured claim. ............................................................. 15

    C.    Sub-Zero holds a right to credit bid under section 363(k) and is entitled to adequate protection under section 363(e). ................................................. 17

IV.   CONCLUSION ................................................................................................... 18

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 83115636v4

i

**SUB-ZERO GROUP'S OPPOSITION TO THE TRUSTEE'S MOTION TO SELL LEASEHOLD INTERESTS AND RELATED PERSONAL PROPERTY 11 U.S.C. § 363 FREE AND CLEAR OF LIENS AND INTERESTS**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Austein v. Schwartz (In re Gerwer),*
   898 F. 2d 730 (9th Cir. 1990) ........................................................................................14

*Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC),*
   391 B.R. 25 (B.A.P. 9th Cir. 2008)............................................................................ 15, 16

*Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.),*
   432 F.3d 448 (3d Cir. 2006) ........................................................................................18

*Darby v. Zimmerman (In re Popp),*
   323 B.R. 260 (B.A.P. 9th Cir. 2005)..............................................................................12

*In re Daufuskie Island Properties, LLC,*
   431 B.R. 626 (Bankr. D.S.C. 2010) ..............................................................................16

*Moldo v. Clark (In re Clark),*
   266 B.R. 163 (B.A.P. 9th Cir. 2001) ..............................................................................14

*In re Ricco, Inc.,*
   2014 Bankr. LEXIS 1265 (Bankr. N.D.W. Va. Apr. 1, 2014) .............................................16

*Richardson v. Pitt County (In re Stroud Wholesale, Inc.),*
   47 B.R. 999 (E.D.N.C. 1985), *aff'd*, 983 F.2d 1057 (4th Cir. 1993) (per curiam)..................16

*In re Riverside Inv. P'ship,*
   674 F.2d 634 (7th Cir. 1982) ........................................................................................15

*Scherer v. Federal Nat'l Mortg. Ass'n (In re Terrace Chalet Apartments),*
   159 B.R. 821 (N.D. Ill. 1993) ......................................................................................13

*In re Silver,*
   338 B.R. 277 (Bankr. E.D. Va. 2004) ............................................................................16

**Federal Statutes**

11 U.S.C. ................................................................................................................2

11 U.S.C. § 363................................................................................................................1

11 U.S.C. § 363(b) ....................................................................................................14, 17

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 83115636v4

ii

**SUB-ZERO GROUP'S OPPOSITION TO THE TRUSTEE'S MOTION TO SELL LEASEHOLD INTERESTS AND
RELATED PERSONAL PROPERTY 11 U.S.C. § 363 FREE AND CLEAR OF LIENS AND INTERESTS**

11 U.S.C. § 363(b)(1) ................................................................................................ 12

11 U.S.C. § 363(e) ............................................................................................. *passim*

11 U.S.C.§ 363(f) ........................................................................................... 12, 14

11 U.S.C. § 363(f)(2) ................................................................................... 12, 13

11 U.S.C. § 363(f)(3) ........................................................................................ 2, 15

11 U.S.C. § 363(f)(4) ................................................................... 2, 12, 13, 14

11 U.S.C. § 363(f)(5) ........................................................................... *passim*

11 U.S.C. § 363(k) ............................................................... 2, 13, 17, 18

**Other Authorities**

3 COLLIER ON BANKRUPTCY ¶ 363.06 (16th ed. rev. 2024) ........................... 13, 17, 18

*Display Unit Bailment and Resale Agreemen*
    (the "Display Unit Agreement") ................................................................. 2

Sub-Zero Group, Inc., a Wisconsin corporation, as successor by merger to Sub-Zero Group West, Inc., a California corporation, doing business as Sub-Zero Group West ("Sub-Zero"), secured creditor of Pirch, Inc., the debtor in the above-captioned chapter 7 bankruptcy case ("Pirch"), respectfully submits this opposition to the *Trustee's Motion to (1) Approve Auction Procedures; And (2) Sell Leasehold Interests And Related Personal Property Pursuant To 11 U.S.C. Section 363, Free And Clear Of Liens, Claims, And Interests* [Docket No. 128] (the "Lease Motion") filed by Leslie T. Gladstone, chapter 7 trustee (the "Trustee") appointed in Pirch's bankruptcy case,  as follows.

## I.    INTRODUCTION

Sub-Zero manufactures and sells high-end consumer appliances, which consist of ranges, ovens, grills, dishwashers, built-in refrigerators and wine refrigerators, among other appliances, under its three brands:  Sub-Zero, Wolf and Cove.  Pirch purchased this inventory from Sub-Zero on credit to sell to its consumers through its retail locations (as defined below, the "Inventory Collateral").  Sub-Zero also provided Pirch with recently released appliances to display in Pirch's showrooms (as defined below, the "Display Units"), which are the subject of the Trustee's Lease Motion.  In late March 2024, Pirch abruptly ceased doing business, shuttered its retail locations, and never reopened them.  On April 19, 2024, Pirch filed its bankruptcy petition commencing this case.

The current amount of Sub-Zero's secured claim totals approximately $4.2 million.  The current value of Sub-Zero's boxed Inventory Collateral held by Pirch is between $2.0 million and $2.8 million as explained in Part II.B.2., *infra*.  The value of Sub-Zero's Display Units if liquidated is believed to be no more than $350,000 as explained in Part II.B.2, *infra*.  Given that Sub-Zero's secured claim ($4.2 million) greatly exceeds the value of Sub-Zero's collateral ($3.15 million at best), Sub-Zero has sought relief from the automatic stay (see Docket No. 89), which will be heard prior to the Trustee's Lease Motion.  Sub-Zero has also opposed the Trustee's *Motion to (1) Approve Auction Procedures; and (2) Sell Personal Property Pursuant to 11 U.S.C. § 363, Free and Clear of Liens, Claims, and Interests* [Docket No. 90] (the "Sale Motion"), which seeks to sell Sub-Zero's Inventory Collateral.  *See* Docket No. 181.  The Sale Motion and Sub-Zero's opposition are also scheduled to be heard before the hearing on this Lease Motion.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 83115636v4

1

SUB-ZERO GROUP'S OPPOSITION TO THE TRUSTEE'S MOTION TO SELL LEASEHOLD INTERESTS AND RELATED PERSONAL PROPERTY 11 U.S.C. § 363 FREE AND CLEAR OF LIENS AND INTERESTS

Many of the arguments respecting the sale of the Inventory Collateral and the sale of the Display Units are the same. First, certain of the Display Units are not property of Pirch's bankruptcy estate and the Trustee does not have the rights to sell those specific units as they remain Sub-Zero's property under the *Display Unit Bailment and Resale Agreement* (the "Display Unit Agreement"). Second, as to those Display Units in which the estate holds an interest, the Trustee has failed to satisfy the free and clear sale requirements under section 363(f)(3), (4) and (5) of the Bankruptcy Code.[1] Further, since Sub-Zero is a grossly undersecured creditor, Sub-Zero objects to the Trustee's efforts to sell its Display Units at bargain prices through a sale to Ferguson. Sub-Zero does not consent to the sale and will not agree to provide a carve-out to the Trustee for the bankruptcy estate. Hence, there is no benefit to the estate and no justification for allowing the Trustee to sell these high-end consumer products at distressed prices.

The solution here is simple. Ferguson proposes to pay cash consideration to the estate in the amount of $5.0 million plus any amount necessary to cure the lease assumption defaults. Some of that $5.0 million purchase price consideration will be allocated to the value of Sub-Zero's Display Units, some of which are not property of the estate. Understandably, Ferguson will want to obtain as much of the display units at the locations intact. Given Sub-Zero's position and interest in the Display Units, the solution would be to have Ferguson reduce the $5.0 million purchase price by the amount of the Display Units—estimated to be $452,196.55—and pay that amount to Sub-Zero on account of its ownership interest / security interest in the Display Units.

Additionally, Sub-Zero objects to the proposed auction procedures set forth in the Lease Motion. Sub-Zero has a right to credit bid the full amount of its secured claim on its Display Units under section 363(k). The Lease Motion does not provide for this right to credit bid. Finally, Sub-Zero also demands that the Trustee provide adequate protection of its interests under section 363(e) to the extent that Sub-Zero suffers any loss if the Lease Motion is granted and Sub-Zero is forced to realize proceeds at a distressed value from the sale of its collateral.

---

[1] All statutory references are to title 11 of the United States Code (the "Bankruptcy Code") unless otherwise noted.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN.83115636v4
2
SUB-ZERO GROUP'S OPPOSITION TO THE TRUSTEE'S MOTION TO SELL LEASEHOLD INTERESTS AND
RELATED PERSONAL PROPERTY 11 U.S.C. § 363 FREE AND CLEAR OF LIENS AND INTERESTS

## II.    STATEMENT OF FACTS

**A.    Pirch enters into a series of agreements to sell Sub-Zero's products and to obtain such inventory under credit.**

Sub-Zero manufactures and sells high-end consumer appliances, which consist of ranges, ovens, grills, dishwashers, built-in refrigerators and wine refrigerators, among other appliances, under its three brands: Sub-Zero, Wolf and Cove. Declaration of Mark Zavras (the "Zavras Decl."), ¶ 6. At the time it ceased doing business as a retailer, Pirch sold high-end kitchen appliances, including Sub-Zero's product, at six retail showrooms in La Jolla, Rancho Mirage, Mission Viejo, Costa Mesa, Glendale, and Solana Beach, California. Zavras Decl., ¶ 7. Sub-Zero provided display units to these retail showrooms in order to market and exhibit their high end products. *Id.* Pirch also utilized five distribution centers to conduct its business located in Vista (two locations), Oceanside, Santa Fe Springs, and Palm Desert, California. Zavras Decl., ¶ 8.

### 1.    *Sub-Zero holds a senior, perfected purchase money security interest in its inventory held by Pirch for sale.*

On January 29, 2019, Sub-Zero and Pirch entered into a written *Credit Application and Agreement* (the "Credit Agreement"), under which Sub-Zero agreed to sell its inventory to Pirch on credit and Pirch agreed to make payments as required therein. Zavras Decl., ¶ 9 and Exh. 1. To secure the prompt performance and payment in full of Pirch's obligations to Sub-Zero arising under the Credit Agreement (the "Obligations"), Pirch and Sub-Zero entered into a *Purchase Money Security Interest Agreement* dated January 29, 2019 (the "Security Agreement"). Zavras Decl., ¶ 10 and Exh. 2. Under the Security Agreement, Pirch granted Sub-Zero a purchase money security interest in all of Pirch's right, title and interest in and to the collateral as defined in the Security Agreement. *Id.* The Security Agreement defined "collateral" as:

> (a) all Inventory purchased by Debtor from Secured Party on or after the date hereof consisting of Sub-Zero Wolf, Cove, and Asko; (b) all accounts, accounts receivable, payment intangibles, general intangibles, documents, instruments and chattel paper related thereto, (c) all accessions thereto, (d) all substitutions, replacements or modifications thereof, and (e) all proceeds (including cash proceeds and insurance proceeds) and products thereof, whether now owned or existing or at any time hereafter arising or acquired.

(collectively, the "Inventory Collateral"). Zavras Decl., Exh. 2 at p. 16 of 130.

On February 21, 2019, Sub-Zero perfected its security interest in the Inventory Collateral by filing a UCC-1 Financing Statement designated as Document No. 19-7698422533 with the California Secretary of State's Office.  Zavras Decl., ¶ 11 and Exh. 3.  On December 28, 2023, Sub-Zero filed another UCC-3 Financing Statement Amendment designated as Document No. 23-009105622 noting a change affecting the name and address of Pirch.  Zavras Decl., ¶ 12 and Exh. 4.  Finally, on December 29, 2023, Sub-Zero filed its UCC-3 Continuation Statement designated as Document No. 23-0091349534 thereby continuing its security interest in the Inventory Collateral under the initial 2019 UCC-1 Financing Statement.  Zavras Decl., ¶ 13 and Exh. 5.

> 2. *Sub-Zero either owns the Display Units outright or holds a senior, perfected security interest in all of the Display Units held by Pirch.*

In addition to the Inventory Collateral held by Pirch, Sub-Zero either owns outright most of the Sub-Zero display units located in each of Pirch's retail showrooms (the "Display Units") or, at least, holds a security interest in those Display Units.  On January 29, 2019, Pirch and Sub-Zero entered into a *Display Unit Bailment and Resale Agreement* (the "Display Unit Agreement") in which Sub-Zero provided to Pirch to display at its showrooms various Sub-Zero kitchen appliances.  Zavras Decl., ¶ 14 and Exh. 6.  Under Section 1(b) of the Display Unit Agreement, the Display Units **"will remain the sole and exclusive property of Sub-Zero**, and Sub-Zero will hold all right, title and interest therein and thereto, unless ownership of such Display Unit is transferred pursuant to Section 2 or 7(c) of this Agreement."  Zavras Decl., Exh. 6, ¶ 1(b) at p. 31 of 130 (emphasis added).

The Debtor has not complied with the purchase requirements set forth in Section 2 of the Display Unit Agreement for a substantial number of the Display Units.  Zavras Decl., ¶ 15.  Also, the Display Unit Agreement provides Sub-Zero with a "continuing security interest in all Appliance Dealer's deposit accounts and all property of Appliance Dealer now or hereafter in the possession of Sub-Zero (including goods purchased from Sub-Zero but not delivered, whether or not paid for by Appliance dealer), together with all Appliance Dealer's Sub-Zero, Wolf and Best inventory."  Zavras Decl., Exh. 6, ¶ 4(a) at p. 33 of 130.  The Display Unit Agreement authorized Sub-Zero to file a UCC-1 financing statement for the Display Units.  Zavras Decl., Exh. 6, ¶ 1(b) at p. 31.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 83115636v4

4

SUB-ZERO GROUP'S OPPOSITION TO THE TRUSTEE'S MOTION TO SELL LEASEHOLD INTERESTS AND RELATED PERSONAL PROPERTY 11 U.S.C. § 363 FREE AND CLEAR OF LIENS AND INTERESTS

On February 21, 2019, Sub-Zero perfected its security interest in the Display Units by filing a UCC-1 Financing Statement designated as Document No. 19-197698418578 with the California Secretary of State's Office.  Zavras Decl., ¶ 16 and Exh. 7.  On December 21, 2023, Sub-Zero filed a UCC-1 Financing Statement designated as Document No. 230089736229 noting a change affecting the name and address of Pirch.  Zavras Decl., ¶ 17 and Exh. 8. On December 22, 2023, Sub-Zero filed a UCC-1 Continuation Statement designated as Document No. 230089945232 thereby continuing its security interest in the Display Units under the initial 2019 UCC-1 Financing Statement.  Zavras Decl., ¶ 18 and Exh. 9.

> ### 3. Pirch's defaults to Sub-Zero under the Credit Agreement, the Security Agreement and the Display Unit Agreement.

On March 21, 2024, Pirch posted a notice on its website stating that Pirch is "temporarily closing all of our showrooms through this weekend.  This is a pause of business to give management the opportunity to complete a go-forward plan[.]"[2]  At this time, Pirch had defaulted on its obligations under the Credit Agreement by failing to (a) make payments for inventory delivered by Sub-Zero when due and (b) notify Sub-Zero of the significant changes in its financial condition including the cessation of operations.  Zavras Decl., ¶ 19.  Sub-Zero has performed all covenants, conditions and promises required on its part under the terms of the Credit Agreement.  Zavras Decl., ¶ 20.  Pirch has not.  *Id.*  As a result of Pirch's defaults, there is currently due, owing and unpaid the principal sum of $4,200,798.29, plus interest at the rate of 1.5% per month, together with late fees, expenses and attorneys' fees and costs.  Zavras Decl., ¶ 21.

### B.   The value of Sub-Zero's Inventory Collateral and Display Units is less than the amount of Sub-Zero's secured claim.

> ### 1. Sub-Zero conducted an audit of the inventory held by the Debtor at its primary and a secondary distribution centers.

Sub-Zero's Inventory Collateral is located at various distribution centers and showrooms.  Zavras Decl., ¶ 23.  Pirch's utilizes the facility located at 1445 Engineer Street, Vista, California 92081 (the "Engineer Facility") as its primary distribution center.  *Id.*  Pirch has also utilized the

---

[2]   *See PIRCH, luxury home appliance merchant in Southern California, abruptly closes 6 stores*, THE ORANGE COUNTY REGISTER, Mar. 21, 2024 available at https://www.ocregister.com/2024/03/21/pirch-luxury-home-appliance-merchant-in-southern-california-abruptly-closes-6-stores/ (last visited May 15, 2024).

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 83115636v4

5

SUB-ZERO GROUP'S OPPOSITION TO THE TRUSTEE'S MOTION TO SELL LEASEHOLD INTERESTS AND RELATED PERSONAL PROPERTY 11 U.S.C. § 363 FREE AND CLEAR OF LIENS AND INTERESTS

following ancillary distribution centers from time to time:  (1) 2450 Business Park Drive, Vista, California 92081 (the "Business Park Facility"); (2)77-588 El Duna Court, Suite E, Palm Desert, California (the "Palm Desert Facility"); (3) 1322 Rocky Point Drive, Oceanside, California 92056 (the "Oceanside Facility"); and (4) 12740 E. Florence Ave, Santa Fe Springs, California 92081 (the "Santa Fe Springs Facility") (collectively with Engineer Facility, the "Distribution Centers").  *Id.*

Pirch's seven retail showrooms are located at:  (1) 3303 Hyland Avenue, Suite D, Costa Mesa, California 92626; (2) 101 S. Brand Blvd., Glendale, California 91210; (3) 4545 La Jolla Village Drive, Suite E 1, San Diego, California 92122; (4) 71905 Hwy 111, Suite B, Rancho Mirage, California 92270; (5) 202 N. Cedros Ave., Solana Beach, California 92075 (the "Solana Beach Location"); (6) 2381 Aliso Creek Road, Suites 155 and 159, Laguna Niguel, California 92677 (the "Laguna Location")  and  (7) 28341 Marguerite Parkway, Mission Viejo, California 92692 (collectively the "Showrooms"). Zavras Decl., ¶ 24.

Sub-Zero had installed Display Units at each of the Showrooms.  Zavras Decl., ¶ 25. However, Sub-Zero has learned that prior to filing this case, Pirch cannibalized certain of its Showrooms and sold substantially all of the installed display units of all manufacturers at the Solana Beach Location and possibly others.  *Id.*  Indeed, the Trustee disclosed in her *Second Supplemental Declaration* [Docket No. 59] (the "Second Declaration") that the Laguna Location had no personal property at that location as well.  *See* Second Declaration, p. 2 attached as Exhibit 1 to the concurrently filed Request for Judicial Notice ("RJN").

In order to ascertain the extent of its Inventory Collateral, Sub-Zero requested on numerous occasions after the shutdown, but prior to the commencement of this case, that Pirch provide an inventory report of Sub-Zero's Inventory Collateral.  Zavras Decl., ¶ 26.  On April 4, 2024, Pirch provided Sub-Zero a report disclosing the extent of Sub-Zero's inventory which Pirch had valued at $3,650,475.20.  Zavras Decl., ¶ 27 and Exh. 10.  Having expected a higher inventory count and concerned over the alleged value and condition of the inventory, Sub-Zero demanded that Pirch allow its auditors to inspect and record the boxed inventory located at Pirch's Distribution Centers. Zavras Decl., ¶ 28.

On April 15, 2024, Sub-Zero dispatched two auditors, Mark Marshall and Keene Kohrt, to inspect the Distribution Centers located in Vista, Palm Desert, and Santa Fe, California. Zavras Decl., ¶ 29; *see also* Declaration of Keene Kohrt (the "Kohrt Decl."), ¶ 5 and Declaration of Mark Marshall (the "Marshall Decl."), ¶ 5. The auditors inspected each unit of boxed inventory at those distribution centers and scanned each inspected unit's bar code into Sub-Zero's audit tracking system. Zavras Decl., ¶ 30; Marshall Decl., ¶ 5; Kohrt Decl., ¶ 8. Pirch stored the vast majority of Sub-Zero's Inventory Collateral at the Engineer Facility. Zavras Decl., ¶ 31; Kohrt Decl., ¶ 8; Marshall Decl., ¶ 6. Pirch stored the remainder of Sub-Zero's Collateral at the Santa Fe Springs Facility and the Palm Desert Facility. *Id.* Pirch no longer utilized the Business Park Facility or the Oceanside Facility as a distribution center for Sub-Zero's product. *Id.*

In preparation for the audit, Pirch segregated all Sub-Zero product and sales accessories into a staging area so that the auditors could scan each item and serial number details and note product damage. Kohrt Decl., ¶ 6; Marshall Decl., ¶ 7. The auditors observed that the Sub-Zero products were in their original packaging and most items were packaged in good condition. Kohrt Decl., ¶ 7; Marshall Decl., ¶ 8. There were some customer return units at the Engineer Facility, which the auditors did not review or track as they were deemed to be "opened units" previously installed or delivered to a customer's home. Kohrt Decl., ¶ 7; Marshall Decl., ¶ 8. One of the auditors estimated that there were approximately 10 to 20 units in this customer return status or "B Goods" condition at the Engineer Facility. Kohrt Decl., ¶ 8.

While conducting the audit, the auditors did not observe any Pirch customer information on the individual units or sales accessories that comprised the inventory. Kohrt Decl., ¶ 10; Marshall Decl., ¶ 11. The auditors observed that the only labels they saw on the boxed inventory were from Sub-Zero's factory or distribution center and Sub-Zero's shipping labels to send the units to Pirch. Kohrt Decl., ¶ 10; Marshall Decl., ¶ 11. As a result of the audit and the auditor's scanning of each boxed inventory item, Sub-Zero has compiled the auditor's data into a comprehensive audit report depicting the item number, Pirch purchase order number, model number, serial number, brand, description, status, delivery date, dealer price and suggested retail price (the "Sub-Zero Audit Report"). Zavras Decl., ¶ 32, Exh. 11.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 83115636v4

7

SUB-ZERO GROUP'S OPPOSITION TO THE TRUSTEE'S MOTION TO SELL LEASEHOLD INTERESTS AND RELATED PERSONAL PROPERTY 11 U.S.C. § 363 FREE AND CLEAR OF LIENS AND INTERESTS

*2.      The actual value of Sub-Zero's Inventory Collateral is well below the amount of the secured claim.*

The aggregate value of the Inventory Collateral reflected on the Sub-Zero Audit Report is approximately $3.1 million at the dealer price and $4.1 million at the manufacturer suggested retail price ("MSRP").  Zavras Decl., ¶ 33, Exh. 11.  However, this is not the true value of the Inventory Collateral.  Zavras Decl., ¶ 33.  The Inventory Collateral reflected on the Sub-Zero Audit Report is also classified as either "Current" or "OBS," which stands for obsolete.  Zavras Decl., ¶ 34.  In the ordinary course of business, a Sub-Zero retailer would sell a particular "current" product somewhere between the dealer price and the MSRP.  Declaration of Kelly Ciulla (the "Ciulla Decl."), ¶ 5.  Obsolete product, also known as "B Goods," would be sold at either 25% of dealer price or 50% of MSRP.  Ciulla Decl., ¶ 5.

For the obsolete products, the Sub-Zero Audit Report reflects an aggregate dealer price of $1,022,525.00 and an MSRP of $1,378,582.00, which after applying the anticipated obsolete product realization percentages, the value of those goods on resale would be in the range of $689,291.00 to $766,893.75.  Zavras Decl., ¶ 35, Exh. 11; Ciulla Decl., ¶ 9.  For current products, the Sub-Zero Audit Report reflects an aggregate dealer price of $2,101,889.00 and an MSRP of $2,712,635.70.  Zavras Decl., ¶ 36, Exh. 11.  Given that Pirch has ceased doing business as a going concern, Sub-Zero anticipates that these goods would net no more than 50 to 75% of MSRP through an orderly liquidation process depending on the good sold.  Ciulla Decl., ¶ 8.  That would result in a range of $1,356,317.85 to $2,034,476.78.  Ciulla Decl., ¶ 8.

Taking the highest realizable value of the "current" inventory and the "obsolete" inventory as reflected on the Sub-Zero Audit Report yields an Inventory Collateral value in the range of $2,045,608.85 to $2,801,370.53.  Ciulla Decl., ¶ 7, 8.

*3.      The estimated value of the Display Units located at Pirch's retail Showrooms.*

Sub-Zero has prepared a Display Unit inventory report indicating the dealer location, the brand, product description, model number, sku number, serial number, dealer price, display unit price, sold to Pirch amount, sale date, and comments columns (the "Display Unit Report").  Zavras Decl., ¶ 37 and Exh. 12.  The "Comments" column indicates whether the particular display unit is a

"consignment" unit, which means that the display unit is available for purchase by Pirch or by a consumer at the end of its useful display unit lifecycle. Zavras Decl., ¶ 38. About half of the units reflected on this Display Unit Report are "consignment" units, which means that particular Display Unit is still owned by Sub-Zero. *Id.* For the convenience of the Court, Sub-Zero prepared a report summarizing the pricing of all display units, the consignment units, and the non-consignment units at each location (the "Display Unit Summary Report"). Zavras Decl., ¶ 38 and Exh. 13.

The Display Unit Summary Report reflects a total dealer price of $1,396,761.00 and a total display unit price of $907,894.64 for both consignment and non-consignment goods. Zavras Decl., ¶ 39 and Exh. 13. The Display Unit Summary Report reflects that the consignment goods, which are still owned by Sub-Zero, have a total dealer price of $686,349.00 and a total display unit price of $446,126.85, which leaves a balance for the non-consignment goods of $710,412.00 at the dealer price and $461,767.80 at the display unit price. *Id.* However, this is not the true value of the Display Units. Zavras Decl., ¶ 39.

Similar to the closed-box, obsolete "B Goods" discussed above, the open-box, display units would be sold for a significant discount. Ciulla Decl., ¶ 10. Given that these are open-stock products that have been used (for up to three years) in Pirch's showrooms, Sub-Zero anticipates that these goods would net no more than 50% of the dealer price. Ciulla Decl., ¶ 10. Applying that percentage to the non-consignment display unit goods to which Sub-Zero's lien would likely attach leads to a resale value of approximately $355,206.00. Zavras Decl., ¶ 40; Ciulla Decl., ¶ 11.

Worse yet, Sub-Zero understands that only three Showrooms largely have their display units for all manufacturers, and those are the Showrooms for which the Trustee desires to sell the leasehold interests, fixtures and display units to a third-party appliance retailer. Zavras Decl., ¶ 41; *see also* Docket 48-2 (Schedule A/B) at p. 18-25, attached as Exhibit 2 to the RJN. Accordingly, Sub-Zero has been advised that substantially all of its Display Units and Inventory at those locations remain largely intact. Zavras Decl., ¶ 41. Those locations are Costa Mesa, Mission Viejo, and Rancho Mirage.[3] *Id.*

---

[3] Pirch disclosed that the Santa Monica location may also be subject to a lease assignment transaction. *See* Docket No. 48-1 (Schedule A/B) at ECF 34 of 101 attached as Exhibit 2 to the RJN. However, there are no Sub-Zero products believed to be at that location. Zavras Decl., ¶ 41 n.2.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN.83115636v4

9

**SUB-ZERO GROUP'S OPPOSITION TO THE TRUSTEE'S MOTION TO SELL LEASEHOLD INTERESTS AND RELATED PERSONAL PROPERTY 11 U.S.C. § 363 FREE AND CLEAR OF LIENS AND INTERESTS**

For the Costa Mesa, Mission Viejo and Rancho Mirage locations, the Display Unit Report reflects an aggregate dealer price of $695,687.00 and a display unit price of $452,196.55. Zavras Decl., ¶ 42; Exh. 12. When the consignment goods are removed from the totals, the list dealer price falls to $290,998.00 and the list display price falls to $189,148.70. Applying the 50% realization percentage to dealer price would result in a resale value of approximately $145,499.00. Zavras Decl., ¶ 42. Adding these low and high range amounts for non-consignment Display Units to the Inventory Collateral value of $2,045,608.85 to $2,801,370.53 results in a total collateral value in the range of $2,191,107.85 to $3,156,576.63. Zavras Decl., ¶ 43.

Additionally, Sub-Zero discovered that prior to the Petition Date, Pirch decided to liquidate the vast majority of the Display Units and inventory at the other Showrooms. Zavras Decl., ¶ 44. Sub-Zero learned from design professionals that Pirch had been selling display units from the Solana Beach locations at approximately 10% of suggested retail value. *Id.*

As it relates to the Lease Motion and what remains as Display Units at the Rancho Mirage, Costa Mesa and Mission Viejo locations (the "Lease Motion Display Units"), Sub-Zero believes that the amount of the units at "Display Cost" is no more than $452,196.55. Zavras Decl., Exh. 12. While some of the Lease Motion Display Units are designated as "Sold to Pirch" in the total amount of $112,697.40, those particular units remain subject to the security interest granted by Pirch under the Display Unit Agreement and the Credit Agreement.

### 4. The Display Units were generally available at many other retail locations.

Pirch was one of many dealers and retailers that sold appliances to consumers on behalf of Sub-Zero. Ciula Decl., ¶ 14. Consumers are able to buy the products consisting of the Inventory Collateral and the Display Units from any of the retailers that operate within the Southern California region and sub-markets where Pirch operated its Showrooms. Ciula Decl., ¶ 14. For instance, Pacific Sales and Fergusons operate showrooms in proximity to the Pirch showrooms. *Id.* Additionally, Universal Appliance and Kitchen Center (Costa Mesa, Los Angeles and San Fernando Valley), Aztec Appliance (San Diego) and WDC Kitchen and Bath Centers (Los Angeles, San Fernando Valley and Palm Springs) also operate showrooms near certain of the Pirch locations. *Id.*

Finally, none of the Inventory Collateral or Display Units constituted unique or customizable goods. Ciulia Decl., ¶ 16.  Sub-Zero does not offer customization of its products.  *Id.*  Thus, any product sold by Pirch would be readily available from another dealer or retailer.

### C.    Following the abrupt cessation of Pirch's business, Pirch commenced its chapter 7 bankruptcy case.

On April 19, 2024 (the "Petition Date"), Pirch filed its bankruptcy petition commencing this chapter 7 bankruptcy case.  On May 3, 2024, Pirch filed its schedules to its bankruptcy petition.  *See* Docket No. 48-1, a copy of which is attached as Exhibit 2 to RJN.  Pirch did not separately list its inventory on *Schedule A/B: Assets – Real and Personal Property*.  RJN Exh. 2 at p. 5.  Rather, Pirch aggregated its inventory and supplied a value of $31.8 million in the aggregate.  RJN Exh. 2 at p. 5. The Debtor's Chief Financial Officer, Mekall Kaltenbach, testified at the 341(a) meeting of creditors that the $31.8 million value was based on "[c]ost plus normal margin for a brand."  *See* 341(a) Transcript, p.23, ln. 22, a copy of which is attached as Exhibit 2 to the Napolitano Declaration.  This was based on a book value of the inventory, which the CFO described as "the extended cost of the inventory."  *Compare* RJN Exh. 2 (Schedule A/B), p.5 *with* 341(a) Transcript, p. 23, ln. 8 to 19.

The value of the inventory is vastly overstated.  The Trustee has stated in the Lease Motion that "[t]he Trustee is also advised that the Debtor's 'expected resale' value of the Assets is grossly inflated."  *See* Lease Motion, ECF p.7, ln. 1 and 2.  True to this point, the Trustee confirmed at the 341(a) meeting of creditors that "as I understand that the inventory that's on hand is more like $15 million, 'one-five,'" or about half of Pirch's scheduled value.  341(a) Transcript, p. 9 at ln. 7-8.  On June 7, 2024, Sub-Zero filed its Notice of Non-Consent to Use of Cash Collateral [Docket No. 191], which included its demand for adequate protection under section 363(e).  RJN, Exh. 4.

Finally, Sub-Zero established a rebate program for any of its consumers impacted by the Pirch bankruptcy case to help mitigate the damages that they have incurred due to Pirch's abrupt shutdown and failure to deliver product.  Ciulla Decl., ¶ 17.  Sub-Zero estimates that this program will cost the company approximately $3 to $4 million.  Ciulla, ¶ 17.  Ascertaining the universe of affected consumers and the extent of their claims will help Sub-Zero facilitate a program to provide relief to these customers.  Ciulla Decl., ¶ 18.  Sub-Zero will have greater ability to assist its

consumers if it is able to recover its inventory rather than have it sold at distressed prices to fund the bankruptcy estate.  Ciulla Decl., ¶ 18.

**D.      The Trustee files the Lease Motion seeking to sell locations (including the Display Units) to Ferguson.**

The Trustee seeks to assign the leases and sell the associated personal property (including Sub-Zero's Display Units) located at the Costa Mesa, Mission Viejo and Ranch Mirage showrooms likely at distressed pricing.  For the Trustee's liquidation plan, the Lease Motion states:  "The Trustee intends to sell the Assets – by assumption and assignment – all right, title and interest of Debtor and/or the Estate, as tenant under the Leases, together with all fixtures, assignable leasehold improvements, and inventory located at the Lease Locations that is property of the Estate at closing." Lease Motion, p. 7, ln. 20-23.  The Lease Motion does not include any allocation of the purchase price as between the goods to be sold and the value of the leases to be assumed.

## III.    ARGUMENT

The Trustee desires to sell substantially all of Pirch's inventory (including the Display Units) outside of the ordinary course of business through a liquidation sale under section 363(b)(1) of the Bankruptcy Code to Ferguson.  In order to do so, the Trustee must first establish that the inventory is property of the estate.  *Darby v. Zimmerman (In re Popp)*, 323 B.R. 260, 266 (B.A.P. 9th Cir. 2005) (holding that the trustee must "establish that the property to be sold is 'property of the estate' before invoking Section 363(f)'s extraordinary power to strip liens.").  The Lease Motion hardly addresses this issue other than conclusory statements, from the Trustee's personal property motion, that there exists a bona fide dispute of ownership with consumers for purposes of section 363(f)(4) and that any such ownership claim would be an avoidable preference under section 547.  To be clear, Sub-Zero takes the position that (1) the majority of the Display Units are not property of the estate as they belong to Sub-Zero under the terms of the Display Unit Agreement, and (2) for those Display Units that are property of the estate, they are subject to Sub-Zero's lien for purposes of the Lease Motion as well as Sub-Zero's related motion for relief from the automatic stay.

The Trustee then relies on section 363(f) to support her argument that the Display Units can be sold free and clear of Sub-Zero's interest.  In particular, section 363(f)(2) allows for such "free

and clear" sale to occur if "such entity consents."  11 U.S.C. § 363(f)(2).  To be clear, Sub-Zero does NOT consent to the sale of its Display Units.  Section 363(f)(4) allows for a free and clear sale only if "such interest is in bona fide dispute."  *Id.* § 363(f)(4).  Part III.A., *infra*, shows that the Trustee has failed to establish that there is a bona fide dispute as to Sub-Zero's interest.  Finally, section 363(f)(5) permits a "free and clear" sale only if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."  *Id.* § 363(f)(5).  Here, the Trustee has failed to establish as a matter of law or fact that this condition has been satisfied as discussed in Part III.B., *infra*.  Additionally, Part III.C, *infra*, discusses Sub-Zero's right to adequate protection under section 363(e) and to credit bid under section 363(k).

### A.    The Trustee cannot sell the Property free and clear under Section 363(f)(4) as there is no bona fide dispute as to Sub-Zero's lien.

The Trustee fails to establish a bona fide dispute as to Sub-Zero's interest and, therefore, cannot sell the Display Units free and clear of Sub-Zero's lien.  Under section 363(f)(4), "[t]he trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if . . . (4) such interest is in bona fide dispute."  11 U.S.C. § 363(f)(4).  The trustee bears the burden of establishing the existence of a bona fide dispute.  *Scherer v. Federal Nat'l Mortg. Ass'n (In re Terrace Chalet Apartments)*, 159 B.R. 821, 828 (N.D. Ill. 1993).  "To meet this burden the trustee must establish that there is an objective basis for either a factual or legal dispute as to the validity of the debt."  3 COLLIER ON BANKRUPTCY ¶ 363.06 (16th ed. rev. 2024) (citing *In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991)).

In addressing the sale of the Display Units free and clear of liens, claims, and interests, the Trustee incorporates the arguments from her Sale Motion.  *See* Lease Motion, p. 18, ln.15-18.  The primary argument of the Personal Property Sale Motion, as it pertains to section 363(f)(4), focuses on the alleged dispute of ownership of the Inventory Collateral between the consumers and the bankruptcy estate.  This argument is misplaced as consumers are not asserting interests in the Display Units or the other items of personal property being sold under the Lease Motion.

To the extent consumers are asserting an interest in the Display Units, Section 363(f)(4) clearly states that "the trustee may sell property . . . free and clear of any interest in such property . . . only if . . . such interest is in bona fide dispute." 11 U.S.C. § 363(f)(4). There is no bona fide dispute as to the validity of Sub-Zero's ownership interest or security interest in the Display Units as the case may be. That is the only interest that matters for purposes of section 363(f)(4) and the Trustee's proposed sale. The Display Unit Report indicates that the vast majority of the units are owned by Sub-Zero by virtue of the Display Unit Agreement. And for those owned by the estate, Sub-Zero filed its Proof of Claim on May 24, 2024, which provides irrefutable evidence as to the validity, extent, and priority of Sub-Zero's interest in the Display Units. *See* Proof of Claim No. 60. There is no bona fide dispute and, therefore, no basis for a "free and clear" sale under section 363(f)(4).

The Trustee spills much ink in the Sale Motion on the "bona fide" dispute arising from the claims of the customers. But this is not a section 363(f)(4) issue. Rather, this is a gating issue under section 363(b). *See Moldo v. Clark (In re Clark)*, 266 B.R. 163, 172 (B.A.P. 9th Cir. 2001) (holding that the threshold question of whether the property is property of the estate must be decided before it can be sold free and clear under section 363(f)). Interestingly, the Trustee cited in her Sale Motion *Moldo* for the general proposition relating to bona fide sales under section 363(f)(4), but neglected to review the full case, and this nuance of the necessity to determine if the property is even property capable of being sold under section 363(b). *See* Sale Motion, p. 18, ln. 18-26.

The Trustee then cites in her Sale Motion the Ninth Circuit's decision in *Austein v. Schwartz (In re Gerwer)*, 898 F. 2d 730 (9th Cir. 1990), for the proposition that the dispute can be between parties other than the trustee and the lienholder. *Id.* at 732-33. While the dispute in *Gerwer* was not between the trustee and the lienholder, the actual dispute in that case related to the lien that was secured by property of the estate. *Id.* at 733. Put differently, the bona fide dispute related to the security interest in the collateral that the *Gerwer* trustee sought to sell free and clear.

Finally, the Trustee has alleged in other briefing before this Court that CP Fixtures Holdings, LLC has priority in the Display Units senior to Sub-Zero's interest because Sub-Zero does not have a purchase money security interest. *See* Trustee's Opposition to Sub-Zero's Motion for Relief from

Stay [Docket No. 176], p. 4, ln. 20-23 and p. 5, ln. 11-15. Putting aside that Sub-Zero owns the vast majority of the Display Units, this claim is further erroneous because Sub-Zero's UCC-1 financing statements were filed in February 2019 well before CP Fixture Holdings filed its UCC-1 in June 2020, a copy of which is attached as Exhibit 6 to the concurrently filed declaration of Anthony J. Napolitano. The purchase money distinction is not relevant. To the extent certain of the Display Units are owned by the estate and not Sub-Zero, Sub-Zero is first in time and has priority over CP Fixtures Holdings.

Here, nobody has alleged a dispute as to the validity or extent of Sub-Zero's security interest. Accordingly, the Trustee has not established that she can sell the Display Units free and clear of Sub-Zero's lien. Hence, the Lease Motion should be denied.

## B. The Trustee cannot sell the Display Units free and clear under Section 363(f)(5) as there is no benefit to the estate given the substantial amount of Sub-Zero's secured claim.

The Trustee has not met her burden to establish that Sub-Zero can be compelled to accept a money satisfaction of its interest to justify relief under section 363(f)(5). But first, section 363(f)(3) provides for a sale free and clear of an interest if "such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property . . . ." 11 U.S.C. § 363(f)(3). It is well-settled under section 363(f)(3) that a trustee cannot sell property of an undersecured creditor since that sale will not generate any proceeds to benefit the estate. *See In re Riverside Inv. P'ship*, 674 F.2d 634, 640 (7th Cir. 1982) ("As a general rule, the bankruptcy court should not order property sold 'free and clear' of liens unless the court is satisfied that the sale proceeds will fully compensate secured lienholders and produce some equity for the benefit of the bankrupt's estate."); *see also Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 40 (B.A.P. 9th Cir. 2008) (section 363(f)(3) permits sales free and clear only when "the price at which such property is to be sold is greater than the aggregate value of all liens") (citations omitted). This is why the Trustee cannot rely on section 363(f)(3).

Under section 363(f)(5), a sale may be made free and clear of a lien or interest if the holder "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 83115636v4

15

SUB-ZERO GROUP'S OPPOSITION TO THE TRUSTEE'S MOTION TO SELL LEASEHOLD INTERESTS AND
RELATED PERSONAL PROPERTY 11 U.S.C. § 363 FREE AND CLEAR OF LIENS AND INTERESTS

interest." 11 U.S.C. § 363(f)(5). Similarly, some courts permit a proposed sale to be free and clear of liens and interests under § 363(f)(5) **only if** the lien or interest holder will be paid in full. *See Richardson v. Pitt County (In re Stroud Wholesale, Inc.)*, 47 B.R. 999, 1003 (E.D.N.C. 1985), *aff'd*, 983 F.2d 1057 (4th Cir. 1993) (per curiam); *see also In re Silver*, 338 B.R. 277, 282 (Bankr. E.D. Va. 2004) (agreeing with the analysis in *Stroud*). However, some courts have taken the position that section 363(f)(5) permits a debtor or trustee to sell collateral where the proceeds will not be sufficient to pay the secured creditor in full. For example, the Ninth Circuit Bankruptcy Appellate Panel's decision in *Clear Channel* permitted a sale for less than the lienholder's claim under section 363(f)(5) based on the fact that the lienholder could be compelled to accept a money satisfaction in a foreclosure proceeding. *Clear Channel*, 391 B.R. at 42-45.

However, this oft-cited case involved the secured claim of a junior lienholder and the BAP found that the bankruptcy court failed to make any "finding of the existence of such a mechanism [under section 363(f)(5)] and the trustee must demonstrate how satisfaction of the lien 'could be compelled.'" *Id.* at 45. The BAP went on to state that "Paragraph (5) requires that there be, or that there be the possibility of, some proceeding, either at law or at equity, in which the nondebtor could be forced to accept money in satisfaction of its interest.." *Id.* Therefore, under section 363(f)(5), "the 'legal or equitable proceeding' offered by the sale proponent should be one that is **specifically identified**; **that actually could be brought** by the debtor or trustee against the holder of the interest from which the sale seeks to be free; **and that plausibly could provide the postulated relief**." *In re In re Ricco, Inc.*, 2014 Bankr. LEXIS 1265, at *11-12 (Bankr. N.D.W. Va. Apr. 1, 2014) (emphasis added). Thus, the burden is on the sale proponent to demonstrate "that one of the provisions of § 363(f)(1)-(5) is applicable to each lien or interest from which the sale is to be free and clear." *In re Daufuskie Island Properties, LLC*, 431 B.R. 626, 637 (Bankr. D.S.C. 2010).

Here, the Trustee has failed to meet that burden. The Trustee merely and generally argues, through incorporation of the arguments from the Sale Motion, that "[u]nder California law, a junior lienholder (either in a foreclosure of real property or of collateral under the Uniform Commercial Code) is entitled to nothing more than the surplus cash generated in a sale." Sale Motion, p. 19, ln. 20-24 (citations omitted). Hence, the Trustee believes that she satisfied the requirements for a

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 83115636v4

16

SUB-ZERO GROUP'S OPPOSITION TO THE TRUSTEE'S MOTION TO SELL LEASEHOLD INTERESTS AND RELATED PERSONAL PROPERTY 11 U.S.C. § 363 FREE AND CLEAR OF LIENS AND INTERESTS

sale under section 363(f)(5).  She has not.  The interest that must be analyzed is the interest from which the trustee seeks to sell the property free and clear.  Sub-Zero is not a junior creditor.  Sub-Zero holds a senior, perfected security interest in the Display Units.  It is entirely possible that junior lienholders may have their liens extinguished in legal or equitable proceedings under California law, but this does not allow for the sale of the Display Units free and clear of Sub-Zero's interest.  Having articulated no cognizable theory for applying section 363(f)(5) to Sub-Zero's *interest*, the Lease Motion should be denied as to Sub-Zero and its Display Units.

Even assuming a sale of the Display Units free and clear under section 363(f)(5) were proper, that sale presents no legitimate benefit to the estate.  In any case, Sub-Zero will recover 100% of the proceeds of the sale of its collateral.  Absent a carve-out granted by Sub-Zero, which it is not willing to entertain, the estate stands to receive $0 on account of the Display Units—all while accruing additional administrative expenses for the Trustee and the estate's professionals.  In the alternative, Sub-Zero can take the Display Units and dispose of it in the ordinary course of business.  The sale of the Display Units outside of the confines of bankruptcy is likely to net a much higher return than the sale contemplated by the Trustee.  This is clearly the more sensible path forward, and the most likely to result in a greater full satisfaction of Sub-Zero's claim against the estate, and a greater ability for Sub-Zero to fund its rebate program for its customers affected by this bankruptcy case.

### C.   Sub-Zero holds a right to credit bid under section 363(k) and is entitled to adequate protection under section 363(e).

The Trustee's Lease Motion and its contemplated procedures completely ignore the fact that Sub-Zero may elect to credit bid its secured claim under section 363(k) in order to recover its collateral.  The Lease Motion also ignores that Sub-Zero is entitled to adequate protection of its interest to the extent that its collateral is unjustifiably disposed of by the Trustee at distressed prices.

Section 363(k) provides that at a sale under section 363(b) "of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale . . . ."  11 U.S.C. § 363(k).  "The right to credit bid its claim is an important protection for a secured party whose collateral is being liquidated in a bankruptcy sale." 3 COLLIER ON BANKRUPTCY ¶ 363.06 (16th ed. rev. 2024) (citing the Supreme Court's decision in

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 83115636v4
17
SUB-ZERO GROUP'S OPPOSITION TO THE TRUSTEE'S MOTION TO SELL LEASEHOLD INTERESTS AND
RELATED PERSONAL PROPERTY 11 U.S.C. § 363 FREE AND CLEAR OF LIENS AND INTERESTS

1    *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 132 S. Ct. 2065, 182 L. Ed. 2d

2    967 (2012) (describing importance to secured creditor of right to credit bid)).  Even though credit

3    bidding may chill the willingness of third parties to bid at the sale, "the right to credit bid enables a

4    creditor, particularly an undersecured creditor, in essence to retake the property when it believes that

5    the price bid at the sale does not sufficiently reflect the value of the collateral." *Id.*

6           Here, if the Court is inclined to allow the sale of the Display Units to proceed, Sub-Zero

7    hereby (and in its companion motion to allow secured claim) seeks confirmation of its right to credit

8    bid on each item of Display Units offered to be sold by the Trustee or her liquidators.  There should

9    be no impediment to credit bidding either in bulk or as to each individual item.  *See generally Cohen*

10   *v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.)*, 432 F.3d 448, 459 (3d Cir. 2006)

11   (authorizing credit bid under section 363(k) with respect to liens secured by mixed personal property

12   collateral including inventory, equipment, accounts, and general intangibles.  Further, Sub-Zero

13   hereby demands that Pirch provide adequate protection of its interests under section 363(e).

14   **IV.    CONCLUSION**

15          For the reasons set forth in this opposition, Sub-Zero respectfully requests that the Court

16   deny the Lease Motion and order such other and further relief that it deems just and proper.

17   DATED:  June 17, 2024                    BUCHALTER, a Professional Corporation

18                                           By:   */s/ Anthony J. Napolitano*
19                                                 ANTHONY J. NAPOLITANO
                                                   Attorneys for SUB-ZERO GROUP, INC.

20

21

22

23

24

25

26

27

28

**SUB-ZERO GROUP'S OPPOSITION TO THE TRUSTEE'S MOTION TO SELL LEASEHOLD INTERESTS AND
RELATED PERSONAL PROPERTY 11 U.S.C. § 363 FREE AND CLEAR OF LIENS AND INTERESTS**