Leslie T. Gladstone, Esq.  (SBN 144615)
Christin A. Batt, Esq.  (SBN 222584)
FINANCIAL LAW GROUP
5656 La Jolla Blvd.
La Jolla, CA 92037
Telephone:  (858) 454-9887
Facsimile:  (858) 454-9596
E-mail:  ChristinB@flgsd.com

Attorneys for Leslie T. Gladstone, Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

In re:

PIRCH, INC.,

Debtor.

Case No.: 24-03176-CL

**TRUSTEE'S REPLY TO MCFARLANE'S LIMITED OBJECTION TO TRUSTEE'S MOTION TO (1) APPROVE AUCTION PROCEDURES; AND (2) SELL <u>PERSONAL PROPERTY</u> PURSUANT TO 11 U.S.C. § 363, FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS**

Date:   June 28, 2024
Time:   10:30 a.m.
Dept:   One (1)
Honorable Christopher B. Latham

LESLIE T. GLADSTONE, the chapter 7 trustee (the "**Trustee**"), submits this Reply to Limited Objection of Scott and Janet McFarlane (collectively, "**McFarlane**") to the Trustee's Motion to (1) Approve Auction Procedures; and (2) Sell Personal Property Pursuant to 11 U.S.C. § 363, Free and Clear of Liens, Claims, and Interests (the "**Objection**").  This Reply is supported by the Declarations of Leslie T. Gladstone filed at ECF Nos 130-1 and 225-1, and the record before the Court.

/ / /

/ / /

## I.

## INTRODUCTION

McFarlane objects to the Trustee's proposed sale of inventory and other personal property because McFarlane wants special treatment in this bankruptcy case. With creditor deposit claims totaling more than $95 million, McFarlane argues that their claim must be paid *in full* ahead of secured creditors and all other customer creditors who ordered products for which they also paid in full and had not received delivery before the bankruptcy filing.

## II.

## REPLY

**A.   Conflicting Evidence and Legal Arguments over the Same Inventory Require Time and Evidentiary Hearings to Resolve; Time the Estate Does Not Have.**

McFarlane claims an ownership interest in more than 100 products, among which are two U-Line refrigerators, a U-Line beverage center, Fisher & Paykel dishwasher, and Fisher & Paykel integrated dish drawer. (Zimmerman Dec., Ex. 4)  The Trustee mentions these items in particular because secured creditors Purcell-Murry, Inc. claims a security interest in all U-Line products, and Fisher & Paykel Appliances, Inc. claims a security interest in all Fisher & Paykel products. (ECF No. 90, at 4–5)  And there are no doubt other customers who ordered and paid for the same 100 or more products on McFarlane's lists.

Many—perhaps thousands—of other customers have similar stories, some more and some less compelling than McFarlane's story, and they all want to pick up the products they ordered and paid for.

McFarlane has not filed and served a motion for relief from stay with respect to the products they claim an interest in that are in the estate's possession.  McFarlane has not named or put any of the secured creditors or approximately 4,355 other Pirch customers on notice of their claims to such products. (Objection & ECF Nos. 244-2)

Several other customers (for example, Goe, Summerfield, Reilly, Lombardi Construction, Ostoich, and Merlin Contracting) have also claimed ownership interests in perhaps the same products as those listed by McFarlane.  None of these customers have named

1 or served notice on each other or the other Pirch customers of their alleged interest in these products.

Debtor's Chief Financial Officer Mekall Kaltenbach testified that Debtor allocated, unallocated, and reallocated products among waiting customers based on the demands of the moment.[1]  Customers have alleged that Debtor took customer deposits virtually up to the day that Debtor shut down its showrooms.

All these competing claims, with evidence and supporting legal theories and authorities, require time and evidentiary hearings.  McFarlane suggests that an adversary proceeding is necessary.  With administrative rent/storage expenses accruing at the rate of $277,194.82 per month, the estate is out of time to resolve these competing claims before selling the inventory and moving out of the warehouses.

The only viable, fair, and equitable solution is to complete the auction and have all claims by customers and secured creditors **attach to the sale proceeds** with the same validity, scope, priority, and perfection as they had on the personal property immediately prior to the sale.  The disputes regarding alleged lien priority and alleged ownership of any inventory will be decided after the sale, and the result will apply to the funds held by the Trustee in her segregated account.

**B.      At this Point in Time All Customer Claims for Undelivered Property Should Be Treated the Same.**

McFarlane is a creditor in this case, who ordered and paid for products from Debtor and those products were not delivered to the creditor at the time of the bankruptcy filing.  The Trustee believes the best course of action for all creditors in this albeit unfortunate position is to be treated equally, and none should be preferred at this point in time.

As explained in the Trustee's Personal Property Sale Motion (ECF No. 90), Debtor may have perhaps operated its business in a Ponzi-like manner.  As shown by

---

[1] Due to allegations that Debtor took customer deposits so close to the business shutting down, Ms. Kaltenbach's testimony may possibly be questionable given the likelihood of fraud investigations.

Ms. Kaltenbach's testimony above, even after products were ordered pursuant to a particular customer's sale order, products in the warehouse were moved to other warehouses for delivery to other customers. Products in the warehouses were reallocated to other orders, and new deposits were taken in almost right up to the date of shutting down with no corresponding product orders, and the deposit money used for other purposes.

Before the Petition Date, Debtor accepted more than $95 million in deposits from about 4,355 customers.[2] The Trustee has been told that most customers were required to pay in full for merchandise at the time of ordering. As of the Petition Date, however, Debtor held inventory valued at far less than $32 million.[3] This at-least-$63-million discrepancy shows that customer deposits were not converted into corresponding inventory for delivery to the depositing customer. From the Trustee's investigation, it appears that Debtor's financial condition and operation was such that (i) recent deposits were not used, as assumed by customers, to order specific items to fulfill the depositing customer's sales order, and (ii) customer deposits were instead commingled in Debtor's general account and used for operating expenses and to purchase items to fulfill previous sales orders that were coming due for delivery. In other words, Debtor's business appears to have operated somewhat like a Ponzi scheme in which there was no actual connection between the deposit received from a customer and the inventory in the Distribution Centers. CFO Kaltenbach's testimony supports this.

Of course, this bankruptcy case is very young and significant records and data have yet to be analyzed. McFarlane and other customers may well need to engage in discovery and/or an evidentiary hearing in order to determine what happened to their money and whether their ownership claims are senior to the manufacturing creditors' security interest and/or the estate's interest. However, the estate cannot withstand the onslaught of discovery and evidentiary hearings before the sale of the inventory. Practically speaking, this case will get eaten alive by the landlord creditors with any resulting delay.

---

[2] See amounts owed for customer deposits at ECF No. 48-1, Sched. E/F ¶ 2.1, Attachment E.
[3] See ECF No. 48-1, Sched. A/B ¶ 21. The Trustee is advised that the value is far less than as stated by Debtor.

       The only practical solution is the one proposed by the Trustee: All customer creditors who paid deposits for merchandise that was not delivered as of the Petition Date must be treated equally at least for now. In fact, such equitable treatment is the very foundation of U.S. bankruptcy law.

       The individual claims analysis absolutely must be delayed or stopped in order for the Trustee's sale efforts to be successful. First, the Trustee is informed that at least **3,768 customers** have filed disputes with American Express and/or Worldpay on customer purchases with Debtor for total disputed purchases of at least **$53.6 million**[4] with apparently more coming in daily. Evidence supporting any customer claim must include assessing whether the applicable customer requested a chargeback regarding their payment.

       Furthermore, at least one creditor has already commenced an adversary proceeding against the Trustee and Debtor, which appears to violate the automatic stay. And, three creditors (all represented by Mr. Goe's law firm) have filed motions for relief from stay. The Trustee is very concerned about copycat motions that hinder and delay the Trustee from maximizing the value of the estate for creditors. McFarlane and such similar creditors seek preferential treatment from the estate. The Trustee is already embroiled in document production requests and now litigation while the landlord claims dramatically increase. There are approximately 4,355 customer claims. The Trustee simply cannot resolve all these claims––in order to equally treat similarly situated creditors—before the inventory must be sold.

       In Debtor's apparent Ponzi-like operation, the only equitable response must be to treat all similarly situated creditors the same. "While we appreciate [customer's] plight as a victim, we are also mindful of our obligation to secure an equitable distribution of [debtor's] assets among all its creditors." *In re Bullion Reserve,* 836 F.2d at 1217.

---

[4] At least 1,800 customer disputes have been filed to date, for no less than $44 million in the aggregate, on customer purchases with Pirch that were processed by American Express. At least 1,968 customer disputes have been filed to date, for no less than $20.6 million in the aggregate, on customer purchases with Pirch that were processed by Worldpay.

### C. **Adversary Proceedings May Be Needed.**

McFarlane is correct that, any improvement in McFarlane's or any other customer's interest that occurred within the 90 days before the bankruptcy filing may constitute an avoidable preference that, if not consensually resolved, requires an adversary proceeding. Again, the Trustee does not at this time have the records from Debtor to bring such actions and the estate cannot afford the time to resolve all applicable adversary proceedings before the inventory must be sold.

### D. **McFarlane Is Welcome to Bid on Items at Auction.**

McFarlane also desires to require the Trustee to locate and bundle the more than 100 products listed in their Opposition into a single lot for their convenience in bidding on the products. (Opposition at 12) To do so would be to acknowledge that McFarlane has a right to such products superior to all other customers and secured creditors. This the Trustee cannot do. Those other customers and creditors have not received notice of McFarlane's claims, and have not had an opportunity to assert their own claims to the same products.

Furthermore, the Trustee does not have the resources to attempt to fill every customer's sales order and bundle the products into a separate, single lot for the benefit of such customer. There are more than four thousand customers and not enough inventory to fill all the orders.

Fortunately, McFarlane knows the precise products they want to purchase at the auction. The Trustee welcomes them to do so.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

IN RE PIRCH, INC,
CASE NO. 24-01376-CL7

6

TRUSTEE'S REPLY TO MCFARLANE LIMITED
OBJECTION TO PERSONAL PROPERTY SALE MOTION

### III.

### **CONCLUSION**

Based on all of the above and the record before the Court, the Trustee requests that her Personal Property Sale Motion be approved.

Dated: June 21, 2024         FINANCIAL LAW GROUP

By:   /s/ Christin A. Batt
      Christin A. Batt, Esq.
      Attorneys for Leslie T. Gladstone, Trustee

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

IN RE PIRCH, INC,
CASE NO. 24-01376-CL7

7

TRUSTEE'S REPLY TO MCFARLANE LIMITED
OBJECTION TO PERSONAL PROPERTY SALE MOTION